Kevin Mahoney (SBN: 235367)
kmahoney@mahoney-law.net
Katherine J. Odenbreit (SBN: 184619)
kodenbreit@mahoney-law.net
Atoy H. Wilson (SBN: 305259)
awilson@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 East Ocean Blvd., Suite 814
Long Beach, CA  90802
Telephone: (562) 590-5550
Facsimile: (562) 590-8400

Attorneys for Plaintiff DONEYDA PEREZ as an individual and on behalf of all others similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| DONEYDA PEREZ as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTV GROUP HOLDINGS, LLC, a Delaware Corporation, LONSTEIN LAW OFFICES, P.C., a New York Professional Corporation; JULIE COHEN LONSTEIN; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:<br><br>[Assigned for All Purposes to The Honorable _____; Dept. _____]<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>Complaint Filed:<br>Trial Date:<br><br>**REQUEST FOR JURY TRIAL** |

Plaintiff DONEYDA PEREZ (hereinafter "Ms. Perez" or "Plaintiff") on behalf of herself and all others similarly situated, complain and alleges as follows:

## **NATURE OF THE CASE**

1.      This is a putative class action brought on behalf of Plaintiff Doneyda Perez and all others similarly situated which arises from the conduct and business practices of Defendants DIRECTV GROUP HOLDINGS, LLC, LONSTEIN LAW OFFICES, P.C. and JULIE COHEN LONSTEIN (hereinafter collectively referred to as "Defendants").

2.      Defendants have, and continue to, engage in a scheme and course of conduct in which the owners of small businesses in the State of California (often minorities based upon their race, ethnicity and/or national-origin) are the focus of unsolicited sales campaigns to sell satellite cable television services provided by Defendants for use in their small businesses.  Defendants do not provide the owners with any written contracts, agreements, notices or other documents regarding the satellite cable television services which they have purchased.

3.      The business owners do not solicit, request or direct that the satellite cable television services which they have purchased be provided under a residential account; rather, they rely upon Defendants to provide the satellite cable television services which they have purchased for their business under the proper type of commercial accounts.

4.      Without the business owners being made aware, Defendants designate the accounts as "residential," despite the fact that Defendants solicited Ms. Perez and those similarly situated because they were small business owners.

5.      After the satellite cable television services have been installed by Defendants, and the owners have used those services in their businesses, Defendants send "independent" auditors to the businesses where they clandestinely obtain photographs and/or video recordings which purport to show that the businesses are using the satellite cable television services in an unauthorized manner as those services are provided under a residential, rather than commercial, account.

CLASS ACTION COMPLAINT

6.     Using the results of these audits, Defendants then send legal correspondence to the business owners alleging that they have "pirated" or stolen satellite cable television services, and threaten legal action unless the owners agree to pay thousands of dollars and/or become "business subscribers."  Occasionally, Defendants file lawsuits against the small business owners resulting in civil judgments.  Defendants do not confine themselves to minority small business owners, however they target minority small business owners with the belief that such owners are less likely to dispute or challenge the allegations.

7.     Thus, in addition to the monthly fees already paid by the small businesses for the satellite cable television services, Defendants have obtained thousands of dollars in additional money which have been paid to Defendants as "settlements," civil judgments, and/or attorney's fees and costs, from threatened and/or actual litigation against the small business owners who have been their victims.

8.     Due to their course of conduct, Defendants have violated California Business and Professions Code § 17200 ("Unfair Competition Law" or "UCL") and the Racketeer Influenced and Corrupt Organizations Act ("RICO").

9.     Ms. Perez therefore seeks declaratory, injunctive and monetary damages under the UCL and RICO, on behalf of herself and all others similarly situated within the State of California.

## THE PARTIES

10.     Plaintiff Doneyda Perez is an individual residing in Anaheim, California.  Ms. Perez is the sole owner of Oneida's Beauty and Barber Salon, a beauty salon located at 12342 Harbor Boulevard, Garden Grove, California 92840.

11.     Defendant DirecTV Group Holdings, LLC ("DirecTV") is a limited liability company organized under the laws of the State of Delaware, which operates nationwide and maintains its principal executive offices in El Segundo, California.  At all times relevant hereto, Defendant DirecTV was and is engaged in

the business of acquiring, promoting, selling and distributing digital entertainment (*i.e.*, broadcast and premium television programming) primarily through satellite transmission to residential and commercial subscribers.

12.   Defendant Lonstein Law Office, P.C. ("Defendant LLO") is a professional corporation organized under the laws of the State of New York.  At all times relevant hereto, the Lonstein Law Office, P.C. was and is a law firm retained by DirecTV to, *inter* alia, prosecute alleged thefts by small businesses in California of the satellite cable television services of DirecTV.

13.   Defendant Julie Cohen Lonstein ("Defendant Lonstein") is an individual who is licensed to practice law in the State of New York, and is a partner with the Lonstein Law Office, P.C.  She is not admitted to practice law in the State of California.  At all times relevant hereto, Defendant Lonstein was and is an attorney retained by DirecTV to, *inter alia*, prosecute alleged thefts by small businesses in California of the satellite cable television services of DirecTV.

14.   DOES 1-10 are fictitiously named businesses which may have liability under this action and should be made parties hereto, but whose identities are not known at this time.  DOES 1-10 are engaged in the business of selling, installing, maintaining, providing, auditing and/or are otherwise involved in the satellite cable television services provided by DirecTV to small businesses in California.

## JURISDICTION AND VENUE

15.   This action arises under the laws of the United States.  This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under the RICO Statute, 18 U.S.C. § 1962.

16.   This Court has personal jurisdiction over Defendants because they have significant minimum contacts with this State, and intentionally availed themselves of the laws of California by transacting a substantial amount of business throughout the State and this District, including but not limited to, the

promotion, marketing, advertising, and sale of cable television services by DirecTV throughout the Central District of California, Southern Division.

17.    Venue is proper in this Court under 28 U.S.C. § 1391(b).  Plaintiff resides in the Central District of California, Southern Division, and Defendants are located in and do business in, the Central District of California, Southern Division.  All of the events that are the subject of this Complaint took place in the Central District of California, Southern Division.

## FACTUAL ALLEGATIONS

18.    Plaintiff Doneyda Perez ("Ms. Perez") is the owner of Oneida's Beauty and Barber Salon, a beauty salon located at 12342 Harbor Boulevard, Garden Grove, California 92840.

19.    In or around 2014, Defendants' authorized representative entered the beauty salon and spoke with Ms. Perez.  The individual represented that he was acting on behalf of DirecTV and told Ms. Perez that DirecTV was offering a promotional deal which would provide her business with satellite cable television services for Twenty Seven Dollars and Fifty Cents ($27.50) a month for two (2) years.  Defendants had not been solicited by Ms. Perez, nor had she made a request or inquiries to DirecTV regarding satellite cable television services.

20.    As a result of Defendants' representation, Ms. Perez was interested in purchasing the DirecTV promotional deal – which included Spanish-language channels – for her business because she wanted something for her customers to watch on television while they were in the beauty salon.  Ms. Perez thought that the deal offered by Defendants was a good one, and therefore agreed to purchase the DirecTV promotional deal to provide her business with satellite cable television services from DirecTV for Twenty Seven Dollars and Fifty Cents ($27.50) a month for two (2) years.

21.    Defendants never advised Ms. Perez that the satellite cable television services from DirecTV would be provided to her business under a residential

account; nor did Ms. Perez ever attempt to solicit, request or direct that the satellite cable television services from DirecTV would be provided to her business under a residential account.  Instead, based upon the representations from Defendants and the fact that those discussions had taken place inside the beauty salon, Ms. Perez relied upon DirecTV to provide her business with satellite cable television services from DirecTV under the correct type of account.

22.   Ms. Perez was not provided with – nor did she sign – a contract, agreement, notice or any other documents related to the DirecTV promotional deal to provide her business with satellite cable television from DirecTV for Twenty Seven Dollars and Fifty Cents ($27.50) a month for two (2) years at the time she agreed to purchase the DirecTV promotional deal. Ms. Perez was only asked to provide her personal information and her bank account information to Defendants.

23.   Ms. Perez was never advised that the satellite cable television services from DirecTV would be provided to her business under a residential account. Similarly, Ms. Perez never attempted to solicit, request or direct that the satellite cable television services from DirecTV would be provided to her business under a residential account.  Based upon the representations of Defendants and the fact the installation was inside the beauty salon, Ms. Perez relied upon Defendants to provide her business with satellite cable television services from DirecTV under the correct type of account.  This reliance is what induced Ms. Perez to provide Defendants with her personal information and bank information.

24.   Moreover, Ms. Perez was not provided with – nor did she sign – a contract, agreement, notice or any other documents related to the DirecTV promotional deal at the time of the installation of the satellite cable television services from DirecTV.

25.   Thereafter, the only documents related to the DirecTV promotional deal which Ms. Perez ever received were the monthly invoices from DirecTV, which were sent to "2127 West Dogwood Avenue, Anaheim, California 92801."

The monthly invoices did not state whether the account was commercial or residential. *See, e.g., the copy of the June 6, 2014 invoice from DirecTV attached hereto as* **Exhibit A**.

26.     Defendants' authorized representative, with whom Ms. Perez spoke, did not advise her that the satellite cable television services from DirecTV would be (or had been) provided to her business under a residential account; nor did Ms. Perez ever attempt to solicit, request or direct that the satellite cable television services from DirecTV would be provided to her business under a residential account. Instead, based upon the fact that DirecTV had provided satellite cable television services to the salon for nearly two years, Ms. Perez continued to rely upon DirecTV to provide her business with satellite cable television services from DirecTV under the correct type of account.

27.     It was therefore much to Ms. Perez's surprise that she received a phone call in May 2016 from DirecTV, advising her that the Lonstein Law Office had been retained by DirecTV "regarding the unauthorized reception and commercial display of DIRECTV programming at your establishment in violation of the Federal Communications Act and DIRECTV customer agreements." During the May 2015 phone call with Ms. Perez, DirecTV alleged that on April 8, 2015, an "independent auditor" had "observed and recorded your exhibition of DIRECTV programming" without authorization, and threatened prosecution and/or litigation if Ms. Perez did not contact the Lonstein Defendants within seven (7) days to resolve the matter.

28.     Ms. Perez received a letter, dated June 26, 2015, (the "June 26, 2015 letter") on the letterhead of the Lonstein Law Office, P.C. with an attached proposed settlement agreement. In the proposed settlement agreement, Ms. Lonstein alleged that Ms. Perez's business had used the satellite cable television services of DirecTV without authorization and threatened prosecution and/or

litigation if Ms. Perez did not pay $5,000.00. *See copy of the June 26, 2015 letter and proposed settlement agreement attached hereto as* **Exhibit B**.

29.     As a result of being misled and fraudulently induced into agreeing to pay $5,000.00 in order to resolve her alleged outstanding balance with DirecTV, Ms. Perez began making monthly payments of $500.00 to DirecTV. *See July 2, 2015 credit card receipt; August 7, 2015 letter; August 7, 2015 credit card receipt; American Express Authorization Form; and June 1, 2016 statement attached hereto as* **Exhibit C.**

30.     As such, there was no formation of a contract or agreement; moreover, since Ms. Perez was not provided with an agreement to arbitrate her claims, or other form of waiver and/or release of her right to file a lawsuit and/or class action, contemporaneously with her agreeing to purchase the satellite cable television services from DirecTV, there is no binding or effective agreement to arbitrate her claims or waiver and/or release of her right to file a lawsuit and/or class action.

31.     The above-described conduct by Defendants in their transactions with Ms. Perez are the same and/or substantially similar to the course of conduct engaged in by Defendants in their transactions with numerous other small business owners in California who are similarly situated to Ms. Perez.

## RICO ALLEGATIONS

32.     Defendant Lonstein has never been licensed to practice law in the State of California.

33.     DirecTV maintained sales representatives in California.

34.     At all times relevant hereto, Defendants conducted substantial business throughout the State of California, including marketing, advertising, and providing cable television services in Orange County.

35.     At all times relevant hereto, Defendants Lonstein and LLO acted for or on behalf of DirecTV in undertaking the acts and/or omissions alleged herein.

CLASS ACTION COMPLAINT

36.   DirecTV is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), which conducted the pattern of racketeering activity described herein. Defendants engaged in, and their activities affected interstate commerce because it involved commercial activities across state lines, including national marketing campaigns, and the solicitation and receipt of money from victims located throughout the country.

37.   Defendants were knowingly and willing participants in the Scheme, and reaped revenues and/or profits therefrom.

38.   Defendants knowingly, willfully, and unlawfully conducted or participated, directly or indirectly, in a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c). The racketeering activity was made possible by the regular and repeated use of the services and distribution channels of DirecTV.

39.   Defendants Lonstein and LLO committed multiple "Racketeering Acts," as described below, including aiding and abetting such acts.

40.   The Racketeering Acts were not isolated, but rather were related in that they had the same or similar purposes and results, participants, victims, and methods of commission.

41.   In devising and executing the Scheme, Defendants committed acts constituting indictable offenses under 18 U.S.C. §§ 1341 and 1343, in that they devised and knowingly carried out a material scheme or artifice to defraud or to obtain money by means of materially false or fraudulent pretenses, representations, promises, or omissions of material facts. For the purpose of executing the Scheme, Defendants committed these Racketeering Acts, intentionally and knowingly, with the specific intent to advance the Illegal Scheme.

42.   Defendants used numerous authorized representatives to create and perpetuate the Scheme through virtually uniform misrepresentations, concealments and material omissions.

## CLASS ALLEGATIONS

43.     This action is brought and may properly proceed as a class action, pursuant to the provisions of Rule 3.765 of the California Rules of Court.

44.     Plaintiff seeks certification of a Class and Subclasses pursuant to California Civil Code of Procedure § 382, which is composed of and defined as follows:

      a. **CLASS:**  All small business owners in the United States who, at any time on or after the day four years prior to the date on which this Complaint is filed, were solicited by Defendants, jointly and/or severally, to purchase satellite cable television services provided by DirecTV for use in connection with their business and who (a) purchased such satellite cable television services and (b) were subsequently sent correspondence which was the same or similar to the June 26, 2016 letters and proposed settlement agreement sent to Plaintiff by the Lonstein Defendants regarding allegedly unauthorized use by the business of those satellite cable television services.

      b. **SUBCLASS:**  All members of the Class who are members of a racial, ethnic and/or national origin minority.

      c. **SUBCLASS:**  All small business owners in the State of California who, at any time on or after the day four years prior to the date on which this Complaint is filed, were solicited by Defendants, jointly and/or severally, to purchase satellite cable television services provided by DirecTV for use in connection with their business and who (a) purchased such satellite cable television services and (b) were subsequently sent correspondence which was the same or similar to the May DATE and/or June 26, 2016 letters and proposed settlement agreement sent to Plaintiff by the Lonstein Defendants regarding allegedly unauthorized use by the business of those satellite cable television services.

45.     The members of the Class and Subclasses for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

46.   There are questions of law and fact common to the members of the Class and Subclasses that predominate over questions affecting only individuals. These common questions include:

A.   Whether Defendants' actions, as set forth herein, were unconscionable commercial practices, deception, fraud, false pretenses, and/or misrepresentations in violation of the UCL;

B.   Whether the targeting of minority small business owners, such as Plaintiff, by Defendants constitutes an unconscionable business practice which violates the UCL;

C.   Whether Plaintiff and the members of the Class and/or Subclasses suffered an ascertainable loss as a result of Defendants' violation(s) of the UCL;

D.   Whether Defendants' actions constituted a violation of RICO;

E.   Whether Plaintiff and the members of the Class and/or Subclasses suffered damages as a result of Defendants' violation(s) of RICO; and

F.   What relief are Plaintiff and the members of the Class and/or Subclasses entitled to under the UCL and RICO.

47.   Plaintiff's claims are typical of the claims of the members of the Class and Subclasses which she represents because all such claims arise out of the same policies, practices, and conduct, and the same or similar documents used by Defendants in their dealings with Plaintiff.

48.   Plaintiff has no interests antagonistic to those of the Class and Subclasses.

49.   The Class and Subclasses, of which Plaintiff is a member, are readily identifiable.

50.   Plaintiff will fairly and adequately protect the interests of the Class and Subclasses, and has retained competent counsel experienced in the prosecution

of consumer litigation. Proposed Class Counsel has investigated and identified potential claims in the action. Proposed Class Counsel has a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

51. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. While the economic damages suffered by the individual members of the Class and Subclasses are significant, the amount is modest compared to the expense and burden of individual litigation.

52. The questions of law or fact common to the members of the Class and Subclasses predominate over any questions affecting only individual members.

53. The prosecution of separate actions by individual members of the Class and Subclasses would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action, or the prosecution of separate actions by individual members of the Class and Subclasses would create the risk that adjudications with respect to individual members of the Class and Subclasses would as a practical matter be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

54. Defendants have acted, or refused to act, on grounds generally applicable to Plaintiff and all class members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class and Subclasses as a whole.

55. A class action will cause an orderly and expeditious administration of the claims of the Class and Subclasses, and will foster economies of time, effort and expense.

/ / /

56.     Plaintiff does not anticipate any difficulty in the management of this litigation.

## FIRST COUNT

### (Unfair Competition Law)

57.     Plaintiff re-asserts and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth at length herein.

58.     California Business and Professions Code § 17200 et seq. (also referred to herein as the "Unfair Business Practices Act" or "Unfair Competition Law") prohibits unfair competition in the form of any unlawful, unfair or fraudulent business act or practice.

59.     Plaintiff is a "person" within the meaning of California Business and Professions Code § 17204 which allows "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to prosecute a civil action for violation of the Unfair Competition Law ("UCL").

60.     Defendants, jointly and/or severally, engaged in unconscionable commercial practices, deception, fraud, false pretenses, and/or misrepresentations and violated the UCL by (1) targeting and soliciting Plaintiff to purchase satellite cable television services from DirecTV at a "special" price or rate; (2) installing residential satellite cable television services in Plaintiff's business although Defendants knew or should have known that Plaintiff intended to use those services in her business; (3) providing satellite cable television to Plaintiff's business under a residential account although Plaintiff relied upon Defendants to provide those services to her business under the proper type of account so that she could use those services in her business; (4) deliberately and specifically targeting Plaintiff for a "signal audit" with a resulting manufactured and pre-determined finding that Plaintiff had "pirated" or "stolen" satellite cable television services from DirecTV by using residential satellite cable television services which were not authorized for commercial use; and (5) based upon the manufactured and pre-

CLASS ACTION COMPLAINT

determined results of that signal audit, threatening Plaintiff with prosecution and/or costly legal action for the purported theft of the satellite cable television services in order to extort an unreasonable and unconscionable "settlement" from Plaintiff.

61.     Defendants engaged in the same conduct in their transactions with small business owners similarly situated to Plaintiff. Defendants filed lawsuits and/or obtained civil judgments against some of those small business owners.

62.     Defendants especially targeted minority small business owners, such as Plaintiff, because of Defendants' apparent belief that minority small business owners would be less likely to dispute or contest their unconscionable business practices. The targeting of minority small business owners such as Plaintiff by Defendants is itself an unconscionable business practice which violates the UCL.

**A.** ***Violation of the Digital Infrastructure and Video Competition Act of 2006 and Cable Television and Video Provider Customer Service and Information Act Violates the UCL***

63.     California's legislature passed the Digital Infrastructure and Video Competition Act of 2006, Public Utilities Code § 5800, et seq. ("DIVCA") because the "increasing competition for video and broadband services is a matter of statewide concern" as "video and cable services provide numerous benefits to all Californians including access to a variety of news, public information, education, and entertainment programming." DIVCA § 5810(1)(A).

64.     The regulations, promulgated under DIVCA are meant to "promote the widespread access to the most technologically advanced cable and video services to all California communities in a nondiscriminatory manner regardless of socioeconomic status" and to "require market participants to comply with all applicable consumer protection laws." DIVCA § 5810(2)(B) and (D).

65.     Similarly, California's legislature passed the Cable Television and Video Provider Customer Service and Information Act (the "Cable Act") because "customers of cable and video providers should get their money's worth for the

service they subscribe to, and the one way to ensure this is to encourage that customer service standards be established and that customers be informed to those standards." California Government Code § 53054.1(a).

66.   Defendant DirecTV is a cable television company providing residential cable television services within the State of California and is therefore subject to DIVCA and/or its enacting regulations and the Cable Act and/or its enacting regulations.

67.   The Cable Act § 53055.1(b)(1) requires that notice be given to new customers which includes "a listing of the services offered by the cable television operator or video provider which clearly describes all levels of service, and including the rates for each level of service, provided that, if the information concerning levels of service and rates is otherwise distributed to new customers upon installation by the cable television operator or video provider, the information need not be included in the notice to new customers required by this section."

68.   The Cable Act § 53055.1(a) requires that "each cable television operator or video provider shall annually distribute to employees, to each customer, and to the city, county, or city and county in which the cable television operator or video provider furnishes service to customers, a notice describing these customer service standards."

69.   Plaintiff never received a listing of the services offered by Defendants which clearly described all levels of service including the rates for each level of service (residential/commercial), as required by the Cable Act in the selection of the schedule of prices, rates, terms and conditions most favorable for her individual requirements.

70.   Plaintiff never received the annual notice required by the Cable Act which would have advised her of the customer monthly service packages and corresponding rates available according to her billing classification, nor was she

even advised of her billing classification for the satellite cable television services from DirecTV.

71.    Defendants therefore violated DIVCA and the Cable Act and/or their enacting regulations by failing to (1) provide Plaintiff with the listing of services required by the Cable Act in the selection of the schedule of prices, rates, terms and conditions most favorable for her individual requirements; and/or (2) provide Plaintiff with the annual notice required by Cable Act § 53055.1(a), which would have advised her of the monthly service packages and corresponding rates available according to her billing classification.

72.    By failing to provide Plaintiff with the required listing of services, reasonable efforts and/or timely notice of her billing classification, Defendants caused her to face potential liability for alleged unauthorized use of satellite cable television services from DirecTV, as she had no ability to have a purportedly incorrect billing classification corrected. Without the alleged unauthorized use, Defendants would have had no basis to threaten prosecution and/or litigation. Without the threatened prosecution and/or litigation, Defendants would have no basis to coerce Plaintiff into paying thousands of dollars. In other words, Plaintiff would not have "failed" the audit, but for the failure by Defendant to comply with the Cable Act.

73.    The violation of other statutes, particularly statutes that provide specific protections to consumers such as DIVCA and the Cable Act, is evidence of and constitutes an unconscionable commercial practice in violation of the UCL.

74.    The failure by Defendants to comply with DIVCA and the Cable Act was in furtherance of their scheme to improperly threaten Plaintiff with prosecution and/or litigation for purportedly unauthorized use of the satellite cable television services from DirecTV, and thereby receive money, in addition to the monthly fees already collected, in the form of, including but not limited to, settlement payments, civil judgments and/or attorney's fees and costs. Defendants,

jointly and/or severally, therefore engaged in unconscionable commercial practices, deception, fraud, false pretenses, and/or misrepresentations and violated § 17200 of the UCL.

75. Defendants engaged in the same conduct in their transactions with small business owners similarly situated to Plaintiff. Defendants filed lawsuits and/or obtained civil judgments against some of those small business owners.

76. Defendants especially targeted minority small business owners, such as Plaintiff, because of Defendants' apparent belief that minority small business owners would be less likely to dispute or contest their unconscionable business practices. The targeting of minority small business owners such as Plaintiff by Defendants is itself an unconscionable business practice which violates the UCL.

77. As the result of Defendants' violation of the UCL, Plaintiff has suffered an ascertainable loss, including but not limited to the monthly fees which she already paid for the satellite cable television services from DirecTV, the indebtedness incurred in the amount of $5,000.00 as demanded in the June 26, 2015 letter and proposed settlement agreement from the Lonstein Defendants, and/or the attorney's fees incurred as a result.

78. As the result of Defendants' violations of the UCL, those similarly situated to Plaintiff also suffered ascertainable losses, including but not limited to the monthly fees which they already paid for the satellite cable television services from DirecTV, the indebtedness incurred in the amount demanded in the legal correspondence sent by the Lonstein Defendants, the settlement payments and/or civil judgments they paid, and/or the attorney's fees and costs which they incurred as a result.

79. Plaintiff and all others similarly situated are thus entitled to all appropriate legal and equitable relief, an award of treble their ascertainable losses and damages, plus actual damages, attorney's fees, and costs pursuant to the Business and Professions Code.

CLASS ACTION COMPLAINT

## **SECOND COUNT**

### **(Racketeer Influenced and Corrupt Organizations Act)**

80.    Plaintiff re-asserts and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth at length herein.

81.    RICO provides that  "It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of Section 2, Title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).

82.    RICO also provides that "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b).

83.    RICO further provides that "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

84.    RICO also provides that "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

85.    At all relevant times, Defendants were "persons" within the meaning of 18 U.S.C. § 1961(3), because they were individuals and/or entities capable of holding a legal or beneficial interest in property.

CLASS ACTION COMPLAINT

86.     Defendants' scheme to defraud by improperly threatening Plaintiff and others similarly situated to her with prosecution and/or litigation for purportedly unauthorized use of satellite cable television services from DirecTV, and thereby receive money, in addition to the monthly fees which they already collected, including but not limited to, indebtedness, settlement payments, civil judgments and/or attorney's fees and costs either paid or to be paid, is a fraudulent practice, and is therefore a "racketeering activity" subject to RICO.

87.     Defendants have engaged in a pattern of racketeering activity, and therefore have violated 18 U.S.C. § 1962(a), by receiving income from unlawful debt, in the form of monthly fees, indebtedness, settlement payments, civil judgments and/or attorney's fees and costs either paid or to be paid, in the operation of an enterprise which is engaged in or the activities of which affect trade or commerce.

88.     Defendants violated 18 U.S.C. § 1962(b) by acquiring or maintaining, directly or indirectly, an interest in or control of enterprises which were engaged in trade or commerce, through a pattern of racketeering activity or through collection of an unlawful debt in the form of monthly fees, indebtedness, settlement payments, civil judgments and/or attorney's fees and costs either paid or to be paid.

89.     Defendants violated 18 U.S.C. § 1962(c) by conducting or participating, directly or indirectly, in the conduct of the affairs of an enterprise engaged in trade or commerce through a pattern of racketeering activity or collection of unlawful debt in the form of monthly fees, indebtedness, settlement payments, civil judgments and/or attorney's fees and costs either paid or to be paid.

90.     Defendants violated 18 U.S.C. § 1962(d) by conspiring to engage in racketeering activity.

91.     Defendants were used as a tool to carry out the scheme and pattern of racketeering activity.

/ / /

92.    Defendants, individually and jointly, as part of an enterprise agreed to commit more than two racketeering acts, with knowledge that the objective was unlawful and intended to further that unlawful objective. The multiple acts of racketeering activity that they committed and/or conspired to, or aided and abetted in the commission of, were related to each other, pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity."

93.    Defendants' predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1) include targeting and soliciting small business owners to purchase satellite cable television services from DirecTV at a "special" price or rate; installing residential satellite cable television services in the small businesses although Defendants knew or should have known that the small business owners intended to use those services in their businesses; providing satellite cable television to small businesses under residential accounts although the small business owners relied upon Defendants to provide those services to their businesses under the proper type of account so that they could use those services in their businesses; deliberately and specifically targeting small business owners for a "signal audit" with a resulting manufactured and pre-determined finding that the small business owners had "pirated" or "stolen" satellite cable television services from DirecTV by using residential satellite cable television services which were not authorized for commercial use; and threatening the small business owners with prosecution and/or costly legal action for the purported theft of the satellite cable television services in order to extort an unreasonable and unconscionable "settlement" from them.

94.    Defendants' predicate acts of racketeering amount to a material scheme to defraud and to obtain money on false pretenses, misrepresentations, promises, and/or omissions.

95.    Defendants knowingly and intentionally made these misrepresentations, acts of concealment and failures to disclose. Defendants either

- 20 -
CLASS ACTION COMPLAINT

knew or recklessly disregarded that these were material representations and omissions.

96.     Plaintiff and those similarly situated to her have suffered harm from Defendants' violations of RICO in the amount of the monthly fees, indebtedness, settlement payments, civil judgments and/or attorney's fees and costs either paid or to be paid. In the absence of Defendants' violations of 18 U.S.C. § 1962, Plaintiff and the Class would not have incurred these losses.

97.     Plaintiff's and the Class's injuries were directly and proximately caused by Defendants' racketeering activity.

98.     Defendants knew and intended that Plaintiff and the Class would rely on the scheme's fraudulent representations and omissions. Defendants knew and intended Plaintiff and the Class would pay fees as a result of same.

99.     Plaintiff and all others similarly situated are thus entitled to all appropriate legal and equitable relief, an award of treble their damages, plus attorney's fees, and costs pursuant to 18 U.S.C. § 1964(c).

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, demands judgment against Defendants as follows:

a. An order certifying the Class and Subclasses for declaratory and injunctive relief and for money damages under Federal Rules of Civil Procedure Rule 23 , and appointing Plaintiff as Class and Subclasses Representative and appointing her attorneys as Class Counsel;

b. A declaratory judgment that Defendants violated the UCL and/or RICO;

c. A judgment for injunctive relief enjoining Defendants from engaging in future violations of the UCL and/or RICO;

d. A judgment for injunctive relief enjoining the Lonstein Defendants from engaging in future violations of the UCL and/or RICO;

CLASS ACTION COMPLAINT

e.  An accounting of all amounts that Defendants collected from Plaintiff and those similarly situated for the satellite cable television services provided by DirecTV;

f.  An accounting of all amounts that Defendants collected from Plaintiff and those similarly situated for alleged unauthorized use of the satellite cable television services provided by DirecTV;

g.  A judgment for actual damages;

h.  A judgment for compensatory damages;

i.  A judgment for disgorgement of profits under the UCL;

j.  A judgment for treble damages under RICO;

k.  A judgment for reasonable attorney fees and costs of suit in connection with this action, pursuant to the UCL and/or RICO, California Civil Code 1021.5 and any other applicable statute;

l.  A judgment for pre-judgment and post-judgment interest; and/or

m.  (As an alternative to a judgment for damages) A judgment for injunctive relief requiring Defendants to send formal notice to all Class and Subclasses members, advising them of the declaratory ruling and of their right to seek remedies under the UCL and/or RICO, on their own and independent of this action; and

n.  A judgment for all such other and further relief as the Court deems equitable and just.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

CLASS ACTION COMPLAINT

## JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial.

Dated: August 3, 2016            **MAHONEY LAW GROUP, APC**


                                 */s/Kevin Mahoney*
                                 Kevin Mahoney
                                 Katherine J. Odenbreit
                                 Atoy H. Wilson
                                 Attorneys for Plaintiff, DONEYDA PEREZ, and
                                 on behalf of all others similarly situated

CLASS ACTION COMPLAINT