MATTHEW H. MARMOLEJO (SBN 242964)
  *mmarmolejo@mayerbrown.com*
MAYER BROWN LLP
350 South Grand Avenue, 25th Floor
Los Angeles, California 90071-1503
Telephone:  (213) 229-9500
Facsimile:   (213) 625-0248

ARCHIS A. PARASHARAMI (SBN 321661)
  *aparasharami@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone:  (202) 263-3328
Facsimile:   (202) 263-5328

Attorneys for Defendants
DIRECTV, LLC, DIRECTV Group Holdings, LLC, and DIRECTV Holdings, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| DONEYDA PEREZ as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DIRECTV GROUP HOLDINGS, LLC, a Delaware Corporation, LONSTEIN LAW OFFICES, P.C., a New York Professional Corporation; SIGNAL AUDITING, INC., a New York Corporation, JULIE COHEN LONSTEIN; and WAYNE M. LONSTEIN,<br><br>Defendants. | Case No. 8:16-cv-01440-JLS-DFM<br><br>**DEFENDANT DIRECTV, LLC'S REPLY MEMORANDUM IN SUPPORT OF BRIEF REGARDING FORENSIC ANALYSIS OF PLAINTIFF'S PHONE**<br><br>Honorable Douglas F. McCormick<br>Dept.: 6B, 6th Floor<br><br>Third Amended Complaint Filed: January 16, 2020<br><br>Hearing Date: December 4, 2020 at 10:00 a.m.<br><br>[*Declaration of Julian Ackert filed concurrently herewith*] |

# **TABLE OF CONTENTS**

Page(s)

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................... 2

I. PLAINTIFF REPEATS HER FLAWED ARGUMENTS FROM THE PARTIES' OCTOBER 23, 2020 MEET-AND-CONFER DISCUSSION ................................................................................................ 2

    A. The Photographs that Plaintiff Has Produced From Her Phone Are Not the Deleted Images She Must Produce Under Court Order ................................................................................................. 3

    B. The Parties Agree That Deletion Date Ranges Can Be Determined from Carved Files ........................................................... 4

    C. Plaintiff Significantly Overestimates the Purported Burden of Analyzing Carved Files After They Are Recovered ........................ 6

II. NONE OF PLAINTIFF'S NEW ARGUMENTS ARE AVAILING ............. 7

    A. Plaintiff Wrongly Claims that the Proposed Carving Was Expressly Excluded from the SOW ..................................................... 8

    B. Plaintiff Wrongly Suggests that the Lack of Attribution for Carved Files Is Dispositive ............................................................... 10

    C. DIRECTV Is Entitled to the Deleted Images Described in the Joint Inspection Report Regardless of Whether They Are Relevant to the Merits of the Case ..................................................... 11

CONCLUSION ...................................................................................................... 12

# INTRODUCTION

Plaintiff's opposition makes several arguments against a process known as carving—a push-button function within the software tool Meridian Discovery is already using for its analysis that would allow the parties to recover the underlying files that Ms. Perez deleted from her phone, *which would otherwise be unrecoverable*. None of Plaintiff's arguments is availing:

- As the Court has already recognized, DIRECTV is entitled to all deleted materials from Plaintiff's phone within a specific timeframe, regardless of whether Plaintiff believes they are relevant to the merits of this case. Thus, that Plaintiff considers both the (non-deleted) photographs already produced from Plaintiff's phone and the deleted images described in the Joint Inspection Report ("JIR") to be irrelevant has no bearing on this analysis.

- Despite Plaintiff's inaccurate accusations against DIRECTV, all parties and experts agree that a deletion date range may be determined from carved files, allowing the parties to determine whether carved files should be produced pursuant to the Court's March 19, 2020 Order (Dkt. 251).

- The purported burden that Plaintiff claims will be incurred through Meridian Discovery's post-carving analysis is inconsistent with her own expert's testimony about the volume of files recoverable through carving, and belied by the fact that any such analysis does not require a manual process.

- Plaintiff's claim that carving is excluded from the parties' Statement of Work ("SOW") with Meridian Discovery is contradicted by the language of the SOW itself, which contains no such limitation and, in fact, provides for the production of recovered files through the

1
DIRECTV, LLC'S REPLY REGARDING FORENSIC ANALYSIS OF PLAINTIFF'S PHONE, CASE NO. 8:16-CV-01440-JLS-DFM

> Cellebrite Physical Analyzer tool that Meridian Discovery would use to carve for files.

- Plaintiff's complaint that carved files cannot be attributed to their originating program is a concern about the potential evidentiary inferences that DIRECTV may draw from those files, and is not relevant to whether those files should be produced in the first place pursuant to the Court's Order.

And none of these arguments rebut the foundational facts supporting carving that should be dispositive: that carving potentially recovers deleted files that would not otherwise be recovered from Plaintiff's phone; that without carving, the parties could not recover *any* of the underlying files that Ms. Perez deleted; that those files could be carved with the push of a button and then analyzed with minimal effort and cost; and that, after carving, those files could be assigned deletion date ranges to determine whether they fall within the scope of the Court's Order. Given that the core purpose of Meridian Discovery's analysis is to recover deleted images from Plaintiff's phone, the value and efficacy of allowing Meridian Discovery to proceed with carving is self-evident. Tellingly, now that Plaintiff's proposed forensic analysis firm, Meridian Discovery, has confirmed these foundational facts, Plaintiff complains of its supposedly "[i]mproper [a]ctions as a [n]eutral." Opp. at 10. The Court should not countenance Plaintiff's attempt to undermine her own proposed forensic expert. Meridian Discovery should be permitted to push the button that allows it to recover the material that Plaintiff deleted from her phone.

## ARGUMENT

### I. PLAINTIFF REPEATS HER FLAWED ARGUMENTS FROM THE PARTIES' OCTOBER 23, 2020 MEET-AND-CONFER DISCUSSION.

In her opposition, Plaintiff repeats her arguments from the parties' October 23, 2020 meet-and-confer discussion regarding the carving issue, which have already

been refuted both at that discussion, and in DIRECTV's opening brief. *See* Dkt. 472 ("Br.") at 13-15.[1] DIRECTV briefly addresses Plaintiff's repeated arguments below.

### A. The Photographs that Plaintiff Has Produced From Her Phone Are Not the Deleted Images She Must Produce Under Court Order.

Plaintiff once again suggests that DIRECTV should be satisfied with Plaintiff's August 14, 2020 production of photographs from her phone in response to the Court's July 23, 2020 Order requiring Plaintiff to "supplement her prior production to include all photographs of the exterior of her Residence and of the exterior and interior of her Business from 2009 to the present." Dkt. 477 ("Opp.") at 4-5; July 23, 2020 Order (Dkt. 363) at 16. Plaintiff intimates that because these photographs "had nothing whatsoever to do with [the merits of] this case," DIRECTV should not seek further photographs *deleted* from Ms. Perez's phone. Opp. at 5. But as DIRECTV has repeatedly explained (*see, e.g.*, Br. at 6-7), in ruling on what materials Plaintiff must produce to DIRECTV from the Meridian Discovery analysis, the Court has already ordered that:

> DirecTV . . . is entitled to review all the deleted materials [from Plaintiff's phone]. ***Apart from whether the material is relevant to the merits of the lawsuit***, Plaintiff's deletion itself raise independent questions concerning spoliation of evidence and her adequacy as a class representative . . . . Plaintiff is thus ORDERED to produce all non-privileged material deleted from Plaintiff's phone from February 26, 2020 until the taking of a forensic image of the device.

March 19, 2020 Order (Dkt. 251) at 2 (emphasis added). Plaintiff cannot point to her production of photographs in response to the Court's July 23, 2020 Order as evidence of her compliance with the March 19, 2020 Order. DIRECTV is separately entitled

---

[1] Unless otherwise noted, all page number references to filed documents refer to the page number assigned by the ECF system.

to all deleted materials from Plaintiff's phone, regardless of Plaintiff's view of their relevance to this lawsuit.

### B. The Parties Agree That Deletion Date Ranges Can Be Determined from Carved Files.

Despite the fact that the parties and all three experts agree that deletion date *ranges*—but not exact deletion dates—can often be determined from carved files, Plaintiff nonetheless takes issue with DIRECTV's discussion of this issue. First, Plaintiff disingenuously accuses DIRECTV of claiming "without citation" on page 1 lines 15-16 of its brief that "the deletion date range of any files recovered by carving often can be determined." Opp. at 8, citing Br. at 1. But this is merely a line from DIRECTV's introductory paragraph—DIRECTV discusses this point later in the body of the brief, with citations to both Mr. Gungor and Mr. Ackert's explanations of this issue during the parties' October 23, 2020 meet-and-confer. *See* Br. at 13-14. To the extent there is any ambiguity about this, Mr. Ackert's declaration confirms that while an exact deletion date may not be recoverable from carved images, it is often possible to determine a deletion date range from the metadata that accompanies recovered carved files. Declaration of Julian Ackert ("Ackert Decl.") ¶ 9.

Plaintiff further accuses DIRECTV of "attempting . . . to mislead the Court into believing . . . that deleted dates are somehow accessible but that Plaintiff is preventing DIRECTV from obtaining them." Opp. at 8. DIRECTV never did this—in fact, it claimed the opposite, stating that "while the internal metadata that typically accompanies files recovered through carving may not have 'a definitive' deletion date, it could have internal metadata that indicates 'a range of when it was deleted.'" Br. at 13. With that data, Meridian Discovery may be able to attribute a date range to the deletion of the image—***as Plaintiff and her expert have conceded***. Opp. at 9-10; Declaration of Andrew Garrett in Support of Opp. (Dkt. 477-3) ("Garret Decl.") at ¶ 10 (providing example); *see also* Ackert Decl. ¶ 9 (providing similar example).

Plaintiff's discussion of the deletion date range issue also ignores that the SOW does not require that the deletions included in Meridian Discovery's two outstanding reports—which are implicated by the carved files at issue—be dated. Specifically, having completed the JIR under the SOW, Meridian Discovery is now tasked with providing (1) an Undated Deletion Report, to include "all [recovered] data [from Ms. Perez's phone] with a deleted indicator *without a deleted date*," and (2) a Summary Undated Deletion Report, to include a summary of certain data fields regarding the data produced in the Undated Deletion Report. Declaration of Jennifer M. Chang (Dkt. 472-3) ("Chang Decl."), Ex. B at 2 (emphasis added); *see also* Br. at 7-8 (discussing same). Thus, the fact that carved files may not include a deletion date or even a deletion date range is not dispositive—the parties have already contemplated this very possibility and addressed it in the SOW.

Finally, Plaintiff selectively quotes from DIRECTV's brief to take issue with its supposed statement that Meridian Discovery and Mr. Ackert "advised DIRECTV that the Cellebrite Physical Analyzer tool that the parties agreed to use would be unable to definitely date many of the files." Opp. at 9. DIRECTV's full statement instead reads, "Meridian Discovery and iDiscovery Solutions [Mr. Ackert's firm] both . . . advised DIRECTV that the Cellebrite Physical Analyzer tool that the parties agreed to use would be unable to definitely date many of the files *deleted by Ms. Perez to the February 25, 2020-present timeframe specified by the Court's Order*." Br. at 8 (emphasis added). This is precisely the issue the parties are now briefing—*i.e.*, whether the underlying deleted files will accurately reflect deletion dates or date ranges, and whether the absence of any information on the date of deletion should preclude discovery of that deleted material. It is this technical reality that spurred the parties to include the Undated Deletion and Summary Undated Deletion Reports in the SOW in the first place. *See* Br. at 7-8 (discussing same).

## C. Plaintiff Significantly Overestimates the Purported Burden of Analyzing Carved Files After They Are Recovered.

Plaintiff next incorrectly argues that the burden she will incur if Meridian Discovery recovers files through carving is significantly more than the $175 cost Mr. Gungor quoted at the parties' October 23, 2020 discussion. Chang Decl., Ex. F at 25:3-11 (Oct. 23 Tr.). Plaintiff inaccurately accuses DIRECTV of suggesting "that the 'downstream' cost of Plaintiff's review of the recovered images would be one-hundred, seventy-five dollars ($175.00) and that the cost only related to a review for privilege." Opp. at 12. DIRECTV did not suggest this, and in fact, differentiated between Meridian Discovery's quoted cost of $175 for carving and Plaintiff's downstream cost of reviewing the carved files. *See* Br. at 15. And contrary to Plaintiff's suggestion, it is true that the only review of the Undated Deletion and Summary Undated Deletion Reports by Plaintiff allowed by the SOW is her review of the reports for privileged material—consistent with the Court's March 19, 2020 Order that all "non-privileged [deleted] material" be produced to DIRECTV. Chang Decl., Ex. B at 2; March 19, 2020 Order (Dkt. 251) at 2.

But Plaintiff's opposition appears to be discussing another review entirely—that of Meridian Discovery after it pushes the button that allows for the recovery of the carved files. Opp. at 12-14; Chang Decl., Ex. F at 10:15-11:21 (Mr. Gungor describing the Cellebrite push-button function for carving). DIRECTV does not dispute that it will take *some* analysis to assess, where possible, a date deletion range of the recovered files to determine whether they are within the scope of the Court's Order. But this analysis can be limited so as to minimize its burden. First, DIRECTV would only be interested in assessing the deletion date ranges for images that can be fully recovered from carving (as opposed to partially-recovered images)—which both DIRECTV and Plaintiff's experts agree would comprise, at most, a small subset of the files potentially recovered through carving. Opp. at 14 ("the probability that carving . . . will locate producible photos is essentially zero"); Garrett Decl. ¶ 29;

Ackert Decl. ¶ 8. Second, determining which of the recovered files (a) are full images and (b) contain internal metadata that would allow a deletion date range to be calculated is an automated—not manual—process. Ackert Decl. ¶¶ 9-10. With these reasonable limitations, the effort to identify a deletion date range for fully recovered images would only take a few hours of forensic investigator time (*id.* ¶ 10), and should therefore cost significantly less than the $50,000 to $67,000 quoted by Mr. Garrett. Garrett Decl. ¶ 30; Opp. at 13.

Finally, DIRECTV agrees that the *exact* burden associated with this analysis cannot be determined without first allowing Meridian Discovery to push the button within Cellebrite that allows for file recovery through carving. This possibility was discussed extensively at the parties' October 23rd meet-and-confer conference. To address Plaintiff's concerns that the burden of her "downstream" review of carved files might be significant, Mr. Gungor explained that he could simply push the button to retrieve those files and their metadata, which would then allow the parties to "see what kind of count [of recovered files] . . . we're getting" and then "decide if that's a reasonable undertaking." Chang Decl., Ex. F at 25:12-19; Br. at 15 (discussing same). But Plaintiff refused to allow even this threshold exercise. *See* Chang Decl., Ex. F at 48:19-21. Having prevented the parties from determining—**at a $175 cost**—how many files can be recovered from carving, and what subset of these files (if any) might be appropriate for further analysis, Plaintiff cannot now credibly claim that the burden of Meridian Discovery's post-carving analysis will be $50,000-$67,000. And if Plaintiff's expert is correct that the likelihood of recovering a full image from carving is "zero" or "essentially zero," the cost of reviewing those images should be minimal indeed. Opp. at 14; Garrett Decl. ¶ 29.

## II. NONE OF PLAINTIFF'S NEW ARGUMENTS ARE AVAILING.

In addition to the same arguments that Plaintiff already presented—and Meridian Discovery already refuted—at the parties' October 23rd meet-and-confer

discussion, Plaintiff introduces new arguments against DIRECTV's requested carving, none of which are availing.

### A. Plaintiff Wrongly Claims that the Proposed Carving Was Expressly Excluded from the SOW.

Plaintiff falsely argues that the carving DIRECTV now requests is inconsistent with the parties' SOW and understanding of Meridian Discovery's work under the same. First, Plaintiff lobs yet another accusation against DIRECTV, claiming that it has misrepresented the parties' SOW negotiations because "Plaintiff and her experts all believe that Plaintiff and her expert made it clear in those negotiations that Plaintiff had no intention, and would not agree to the use, of manual processes (i.e. carving) and that the SOW would only use Cellebrite's automated processes that would attribute files, which by definition excludes carving." Opp. at 5. But even if this characterization of the parties' understanding were correct, and it is not, the proposed carving already essentially fits into these parameters. As Meridian Discovery explained to the parties, the carving that DIRECTV requests (1) requires only the push of a button (2) within Cellebrite Physical Analyzer. *Id.*, Ex. F at 10:15-11:21. And, as Mr. Ackert explains, the post-carving review of any fully recovered images can be automated, and does not require a manual process. Ackert Decl. ¶ 9. Plaintiff's final purported limitation on Meridian Discovery's work—that Meridian Discovery should only use Cellebrite's automated process "that would attribute files"—is belied by the text of the SOW itself. There is no such limitation in the SOW; instead, the parties agreed that "Meridian will utilize Cellebrite's Physical Analyzer as described to process the evidence in a manner that will recover data deleted after the date of February 25, 2020 . . . ." Chang Decl., Ex. B at 1.

Plaintiff next focuses on DIRECTV's use of the word "complement" in describing Mr. Gungor's October 23rd explanation of carving to the parties to argue that "carving was never considered part of the JIR." Opp. at 7. But DIRECTV has never argued that carving should be part of the JIR, for the simple reason that the JIR

8
DIRECTV, LLC'S REPLY REGARDING FORENSIC ANALYSIS OF PLAINTIFF'S PHONE, CASE NO. 8:16-CV-01440-JLS-DFM

has already been completed and produced to both parties. *See* Chang Decl., Ex. C (email chain reflecting Meridian Discovery producing the JIR to the parties). But the JIR is not the end of the process. As Mr. Gungor's originating email to the parties on carving makes clear, the issue is whether to include carved files in the Undated Deletion and Summary Undated Deletion Reports—which are yet to be completed by Meridian Discovery. *Id.*, Ex. D at 3-4. In the passage at issue from the parties' October 23rd discussion, Mr. Gungor explains that carving is part and parcel of a standard forensic review for deleted files, because it complements other types of data and file recovery—just as the data and files to be produced in the Undated Deletion and Summary Undated Deletion Reports are meant to complement the Joint Inspection Report under the SOW. Chang Decl., Ex. F at 12:13-13:10; Br. at 10 (quoting and discussing same); Chang Decl., Ex. B at 2. Specifically, Mr. Gungor explained that while the JIR contains metadata that definitively identifies deletions within the relevant timeframe, the proposed carving recovers the actual underlying files themselves—files that under the SOW are to be produced as part of Meridian Discovery's analysis. Chang Decl., Ex. F at 12:13-13:10; *id.*, Ex. B at 1 ("Meridian will utilize Cellebrite's Physical Analyzer as described to process the evidence *in a manner that will recover data deleted after the date of February 25, 2020*") (emphasis added).

The carving DIRECTV requests is thus wholly consistent with the parties' SOW. More importantly, as Mr. Gungor has explained, without carving, the parties will not recover any of the underlying files that Ms. Perez deleted. *Id.*, Ex. F at 12:13-13:20 ("it's fundamentally important to balance [the analysis in the JIR] with carving, so that through carving we can actually find those files [that] you can't really get through file system deletion recovery."). Plaintiff's attempt to prevent the parties from recovering *any* of the underlying files that Ms. Perez deleted thwarts the very purpose for which the parties engaged Meridian Discovery and embarked on this months-long forensic process.

### B. Plaintiff Wrongly Suggests that the Lack of Attribution for Carved Files Is Dispositive.

Plaintiff next claims that the recovery of files through carving would be problematic because those files cannot be "attributed," or assigned, to their "originating program[s]." Garrett Decl. ¶ 10; Opp. at 6 (describing attribution as "categorizing the data by program"). Plaintiff argues that "[t]he potential prejudice to Plaintiff in the absence of attribution given DIRECTV's purposes (a spoliation inference) cannot be overstated," and that "[g]iven that any files recovered are going to be used by DIRECTV to accuse Plaintiff of spoliation, the necessity of attribution must be emphasized again." Opp. at 5, 8. But Plaintiff does not explain why a deleted file must be attributed to a specific originating program to determine whether it is within the scope of the Court's Order that "all the deleted materials" recovered from Plaintiff's phone within a certain timeframe be produced to DIRECTV. March 19, 2020 Order at 2.

Plaintiff's concern appears to be that DIRECTV will draw an incorrect or unfounded evidentiary inference from the recovered files. *See* Garrett Decl. ¶ 10. Plaintiff's expert asks the Court to "[c]onsider a very real example: if Plaintiff had been sent a photo from her attorneys that she viewed and then deleted, - say for instance the photo Plaintiff was shown at her deposition – Defendants might use the carved version of that document, which the inspector is unlikely to be able to attribute to its originating source, to Plaintiff, and that attribution would no doubt be used to accuse Ms. Perez of having destroyed evidence." *Id.* This is the quintessential example of putting the cart before the horse. Assuming for the sake of argument that this scenario could feasibly occur *and* should be avoided,[2] allowing a concern about

---

[2] Among other issues, such a photograph would presumably be withheld as privileged under Plaintiff's privilege review contemplated by the SOW. Chang Decl., Ex. B at 2. Further, it is unclear from the example why the inference that Mr. Garrett seeks to avoid—that Ms. Perez would have deleted that photograph—is factually inaccurate.

future, *potential* evidentiary inferences—an issue on which the parties will have ample opportunity to brief to and seek guidance of the Court—to determine whether that evidence is *produced in the case at all* is not a reason to stifle discovery on this critical issue. The relevant question is whether the evidence to be recovered through carving is within the scope of the Court's March 19, 2020 Order. Files recovered through carving whose deletion date ranges can be determined to be within the February 26, 2020-to-present timeframe must be produced, regardless of their originating program. Indeed, the hypothetical photograph deleted by Ms. Perez in Mr. Garrett's example would have to be produced pursuant to that Order. Attribution is simply not relevant at this juncture.

### C. DIRECTV Is Entitled to the Deleted Images Described in the Joint Inspection Report Regardless of Whether They Are Relevant to the Merits of the Case.

Finally, Plaintiff argues that because none of the photographs that Ms. Perez deleted in the evening between her first and second days of deposition were created in the 2014-2015 timeframe, as reflected in the JIR, they are not relevant to the merits of this action and thus should not be produced to DIRECTV. Opp. at 11-12 ("It strains credulity to suggest that a profile picture created in 2019 would be an image of a DIRECTV satellite dish, an installation document or service invoice, or something else with any conceivable relevance to this matter."). This is a rehash of Plaintiff's previously rejected argument that because the photographs produced from her phone in August were not relevant to the merits to the lawsuit, no further *deleted* photographs should be produced to DIRECTV—and it is no more successful in repetition. *See supra* at I.A. As explained above and in DIRECTV's opening brief, the Court has already considered and rejected Plaintiff's argument that the only images worth recovering from Meridian Discovery's forensic analysis are those that are relevant to the lawsuit. *See id.*; Br. at 14. As the Court has already ruled, "[a]part from whether the material is relevant to the merits of the lawsuit, Plaintiff's deletion

itself raises independent questions . . . . Plaintiff is thus ORDERED to produce all non-privileged material deleted from Plaintiff's phone from February 26, 2020 until the taking of a forensic image of the device." March 19, 2020 Order at 2. Plaintiff continues to choose to ignore this ruling.[3]

## CONCLUSION

None of Plaintiff's arguments refutes the core facts supporting recovering files through carving: (1) that carving could recover deleted images from Ms. Perez's phone that would otherwise not be recovered, (2) that a deletion date range for those images could potentially be determined so as to assess whether the images must be produced pursuant to the Court's March 19, 2020 Order, and (3) that the burden of undertaking this analysis is minimal. The Court should allow Meridian Discovery to proceed with the proposed carving as part of the Undated Deletion and Summary Undated Deletion Reports.

Dated: December 1, 2020            Respectfully submitted,

                                                          MAYER BROWN LLP
                                                          Matthew H. Marmolejo
                                                          Archis A. Parasharami

                                                          By: */s/Matthew H. Marmolejo*

                                                          Matthew H. Marmolejo
                                                          Attorneys for Defendant DIRECTV, LLC

---

[3] Plaintiff also ignores that the photographs she objects to producing are from one evening within the broader timeframe specified in the Court's Order, and that other images deleted within that timeframe may have been created in the 2014-2015 period that Plaintiff wrongly characterizes as the only relevant period for Ms. Perez's allegations. *See* Opp. at 11.