Kevin Mahoney (SBN: 235367)
kmahoney@mahoney-law.net
Katherine J. Odenbreit (SBN: 184619)
kodenbreit@mahoney-law.net
Kate Nicole G. Blanco (SBN: 331344)
kblanco@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 East Ocean Blvd., Suite 814
Long Beach, CA 90802
Telephone: (562) 590-5550
Facsimile: (562) 590-8400

Attorneys for Plaintiffs DONEYDA PEREZ, DANNY NISSEN, MARLYS NISSEN, JOSEPH ANGELO, GREGORY LAPLANTE and PAUL HOLT, individually and on behalf of their respective businesses, and on behalf of all others similarly situated

Additional Counsel on Next Page

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| DONEYDA PEREZ as an individual and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DIRECTV GROUP HOLDINGS, LLC, a Delaware Corporation, LONSTEIN LAW OFFICES, P.C., a New York Professional Corporation; SIGNAL AUDITING, INC., a New York Corporation, JULIE COHEN LONSTEIN and WAYNE M. LONSTEIN, <br><br> Defendants. | Case No.: 8:16-CV-01440-JLS-DFM <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND SETTING OF FINAL APPROVAL HEARING** <br><br> Fourth Amended Complaint Filed: December 17, 2020 <br><br> [*Declarations of Katherine J. Odenbreit, Kevin Mahoney, Lisa L. Clay, Named Plaintiffs and Proposed Order filed concurrently herewith*] |

Lisa L. Clay (*Pro Hac Vice*)
lisa@clayatlaw.com
**LISA L. CLAY, ATTORNEY AT LAW**
2100 Manchester Road, Suite 1612
Wheaton, IL 60187
Telephone: (630) 456-4818

Attorneys for Plaintiffs DONEYDA PEREZ, DANNY NISSEN, MARLYS NISSEN, JOSEPH ANGELO, GREGORY LAPLANTE and PAUL HOLT, individually and on behalf of their respective businesses, and on behalf of all others similarly situated

- 2 -

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND ...............................2

III. SUMMARY OF THE SETTLEMENT TERMS ...................................6

A. The Proposed Class ......................................................................6

B. Monetary Terms ..........................................................................6

C. Non-Monetary Terms ...................................................................7

D. Identification of Class Members ....................................................8

E. Allocation of the Net Settlement Fund ..........................................8

F. Notice to Class Members and Opt-Out/Objection Procedure ..........9

  1. Notice by Email .....................................................................9

  2. Notice by Mail ......................................................................10

  3. Settlement Administrator Website ..........................................10

  4. Procedures for Class Members to Opt-Out of Settlement ..........11

  5. Procedures for Class Members to Object to Settlement .............11

G. Settlement's Released Claims ......................................................12

  1. Claims Released by Class Members .........................................12

  2. Claims Released by Named Plaintiffs .......................................13

  3. Claims Released by DIRECTV .................................................13

H. Administration of Settlement ......................................................13

IV. THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES .......................................................................................14

A. The Proposed Class Meets the Requirements Under Rule 23(a).............14

  1. Numerosity ...........................................................................14

  2. Commonality.........................................................................14

TABLE OF CONTENTS AND AUTHORITIES

3.   The Claims or Defenses of the Plaintiffs are Typical of Those of the Class .................................................................................................15

4.   Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of Class Members .............................................................17

   i.   Class Counsel Is Adequate ...............................................18

B.   The Proposed Class Meets the Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(b)(3) Requirements .........................................................19

1.   Common Questions of Law and Fact Predominate ...............................19

2.   Class Action is the Superior Method for Resolving the Claims in this Action .......................................................................................20

3.   Class Counsel is Adequate ...........................................21

V.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ..................................................................................22

1.   Strength of Plaintiffs' Case and Risk, Complexity, and Likely Duration of Further Litigation ........................................................24

2.   Risk of Maintaining Class Certification .......................................26

3.   Amount Offered in Settlement is Fair and Reasonable.........................27

4.   Stage of the Proceedings and Extent of Discovery Completed ................29

5.   Experience and Views of Counsel ..........................................30

6.   Reaction of Class Members to Proposed Settlement .......................31

7.   The Settlement Was the Product of Serious, Non-Collusive Negotiations 32

8.   Representative Plaintiff Incentive Awards ...................................33

   i.   Plaintiff Perez ...........................................................34

TABLE OF CONTENTS AND AUTHORITIES

**ii. Plaintiffs Marlys Nissen, Danny Nissen, Paul Holt, Gregory Laplante, and Joseph Angelo** ........................................................................................35

**iii. Proportion of Incentive Awards Relative to Settlement Amount and Class Member Payments** ..............................................................................36

**9. The Proposed Settlement Administrator Will Competently Carry Out its Duties** ......................................................................................................37

**VI. THE PROPOSED NOTICE IS APPROPRIATE AND SATISFIES DUE PROCESS** ....................................................................................................37

**VII. A FINAL APPROVAL HEARING SHOULD BE SCHEDULED** ............39

**VIII. CONCLUSION** .......................................................................................39

TABLE OF CONTENTS AND AUTHORITIES

# TABLE OF AUTHORITIES

Page(s)

Cases

21, 2015, No. 13CV2337 DMS (KSC)),
  2015 WL 13651284 ........................................................................................ 36

*Abdullah v. U.S. Sec. Associates, Inc.,*
  (9th Cir. 2013) 731 F.3d 952 ......................................................................... 23

*Acosta v. Trans Union, LLC,*
  (C.D. Cal. 2007) 243 F.R.D. 377 .................................................................. 27

*Amchem Products, Inc. v. Windsor,*
  (1997) 521 U.S. 591 ......................................................................................... 22

*Arnold v. United Artists Theatre Circuit, Inc.,*
  (N.D. Cal. 1994) 158 F.R.D. 439 .................................................................. 17

*Cohen v. Trump,*
  (S.D. Cal. 2014) 303 F.R.D. 376 ......................................................... 18, 19, 20

*Comcast Corp. v. Behrend,*
  (2013) 569 U.S. 27 ........................................................................................... 23

*D.Light Design, Inc. v. Boxin Solar Co., Ltd.,*
  (N.D. Cal., Feb. 6, 2015, No. C-13-5988 EMC) 2015 WL 526835 .................. 41

*Dukes v. Wal-Mart Stores, Inc.* (9th Cir. 2010),
  603 F.3d 571 (en banc) .................................................................................. 19

*Earl v. Boeing Company,*
  (E.D. Tex. 2021) 339 F.R.D. 391 .................................................................. 18

*General Telephone Co. of Southwest v. Falcon,*
  (1982) 457 U.S. 147 ......................................................................................... 19

*Guido v. L'Oreal, USA, Inc.,*
  (C.D. Cal. 2012) 284 F.R.D. 468 .................................................................. 18

*Hanlon v. Chrysler Corp.,*
  (9th Cir. 1998) 150 F.3d 1011 ............................................................... Passim

- 5 -

*Hanon v. Dataproducts Corp.*,
 (9th Cir. 1992) 976 F.2d 497............................................................................. 19

*In re Bluetooth Headset Products Liability Litigation*,
 (9th Cir. 2011) 654 F.3d 935....................................................................... 26, 35

*In re Immune Response Securities Litigation*,
 (S.D. Cal. 2007) 497 F.Supp.2d 1166............................................................. 33

*In re Linkedin User Privacy Litigation*,
 (N.D. Cal. 2015) 309 F.R.D. 573 ......................................................... 30, 31, 32

*In re Mego Financial Corp. Securities Litigation*,
 (9th Cir. 2000) 213 F.3d 454............................................................................. 32

*In re Omnivision Technologies, Inc.*,
 (N.D. Cal. 2008) 559 F.Supp.2d 1036 ........................................................ 33, 34

*In re Tableware Antitrust Litigation*,
 (N.D. Cal. 2007) 484 F.Supp.2d 1078 ........................................................ 27, 30

*In re Vizio, Inc., Consumer Privacy Litigation*,
 (C.D. Cal., Jan. 4, 2019, No. 816ML02693JLSKES) 2019 WL 12966639 ........ 21

*In re Wells Fargo & Company Shareholder Derivative Litigation*,
 (N.D. Cal. 2020) 445 F.Supp.3d 508 ............................................................... 39

*Linney v. Cellular Alaska Partnership*,
 (9th Cir. 1998) 151 F.3d 1234........................................................................... 33

*Linney v. Cellular Alaska Partnership*,
 (N.D. Cal., July 18, 1997, No. C-96-3008 DLJ) 1997 WL 450064 ................... 34

*Low v. Trump University, LLC*,
 (S.D. Cal., Dec. 20, 2016, No. 310CV00940GPCWVG) 2016 WL 7387292 .... 32

*McGhee v. Bank of America*,
 (1976) 60 Cal.App.3d 442................................................................................. 20

*Monterrubio v. Best Buy Stores, L.P.*,
 (E.D. Cal. 2013) 291 F.R.D. 443 ................................................................. 36, 39

TABLE OF CONTENTS AND AUTHORITIES

*Mullane v. Central Hanover Bank & Trust Co.*,
  (1950) 339 U.S. 306 ............................................................................ 41

*Munday v. Navy Federal Credit Union*,
  (C.D. Cal., Sept. 15, 2016, No. SACV151629JLSKESX) 2016 WL 7655807 ... 26

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
  (C.D. Cal. 2004) 221 F.R.D. 523 ...................................................... 29, 34

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
  (9th Cir. 1982) 688 F.2d 615 ............................................................. 26

*Optima Tax Relief, LLC v. Channel Clarity, Inc.*,
  (C.D. Cal., Jan. 21, 2016, No. SACV141902JLSJCGX) 2016 WL 6821108 ..... 32

*Radcliffe v. Experian Information Solutions Inc.*,
  (9th Cir. 2013) 715 F.3d 1157 .......................................................... 36

*Retta v. Millennium Products, Inc.*,
  (C.D. Cal., Aug. 22, 2017, No. CV15-1801 PSG AJWX) 2017 WL 5479637 ... 32

*Rodriguez v. West Publishing Corp.*,
  (9th Cir. 2009) 563 F.3d 948 ............................................................ 36

*Schuchardt v. Law Office of Rory W. Clark*,
  (N.D. Cal., Jan. 20, 2016, No. 15-CV-01329-JSC) 2016 WL 232435 ............... 30

Shelly CLARK, Plaintiff, v. PEKIN INSURANCE, Defendant.,
  2016 WL 1178509 ............................................................................ 41

*Silber v. Mabon*,
  (9th Cir. 1994) 18 F.3d 1449 ............................................................. 40

*Staton v. Boeing Co.*,
  (9th Cir. 2003) 327 F.3d 938 ................................................... 26, 36, 39

*Vinole v. Countrywide Home Loans, Inc.*,
  (9th Cir. 2009) 571 F.3d 935 ............................................................ 24

*Wal-Mart Stores, Inc. v. Dukes*,

- 7 -

(2011) 564 U.S. 338 ............................................................................ 17, 18

*Weeks v. Kellogg Co.*,
    (C.D. Cal., Nov. 23, 2013, No. CV 09-08102 MMM RZX) 2013 WL 6531177 32

*Wolin v. Jaguar Land Rover North America, LLC*,
    (9th Cir. 2010) 617 F.3d 1168........................................................... 24

Rules

Fed. Rules Civ.Proc., rule 23, 28 .....................................................Passim
Rule 23(b)(3)........................................................................................ 25

Other Authorities

2019 WL at p. at *9............................................................................. 31
Federal Judicial Center, *Manual for Complex Litigation*, § 21.632 (4th ed. 2004) 25

TABLE OF CONTENTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

# I.   INTRODUCTION

Plaintiffs DONEYDA PEREZ, DANNY NISSEN, MARLYS NISSEN, JOSEPH ANGELO, GREGORY LAPLANTE, and PAUL HOLT ("Plaintiffs") seek preliminary approval of a settlement reached between Plaintiffs and DIRECTV Group Holdings, LLC, DIRECTV, LLC, and DIRECTV Holdings, LLC ("DIRECTV" or "DIRECTV Defendants") (collectively "Signing Parties") providing monetary and non-monetary recovery for all businesses and business owners in the United States who had DIRECTV services installed in their commercial establishment; who were subsequently audited by Defendant Signal Auditing, Inc. ("Signal"); and who at any time on or after the day four years prior to the date on which the original Complaint was filed (August 4, 2012) through the date the Court grants preliminary approval of the settlement, received communications from the Lonstein Law Offices, P.C., Wayne Lonstein and/or Julie Cohen Lonstein ("Lonstein Defendants") on behalf of DIRECTV seeking money for allegedly unauthorized use of DIRECTV licensed programming, including NFL Sunday Ticket or any other DIRECTV-related programming (DIRECTV Defendants, Signal, and the Lonstein Defendants are collectively the "Defendants"). The settlement has been memorialized by the Signing Parties in the Class Action Settlement Agreement ("Settlement Agreement" or "Settlement"). (Declaration of Katherine J. Odenbreit ("Odenbreit Decl."), ¶ 21, Ex. 1.) The nationwide relief, negotiated at arm's length and under the supervision of a retired state court judge for over a year, would end this litigation on the following terms:

First, DIRECTV will establish a non-reversionary $9,400,000.00 fund for proportional monetary payments for Settlement Class Members. No claim form is required for a Settlement Class Member to receive payment from the Settlement. The fund will cover any court-approved expenses, costs, attorney's fees and the Class Representatives' Incentive Awards.

Second, DIRECTV has agreed to the following non-monetary relief: (1) DIRECTV will agree not to retain the Lonstein Law Office or Julie Cohen Lonstein or Wayne M. Lonstein (collectively "the Lonstein Defendants") in any capacity at any time; and (2) DIRECTV will agree to include a statement in its order confirmation documentation to customers that highlights the distinction between residential and commercial services provided by DIRECTV.

Plaintiffs and Class Counsel are proud to present this Settlement Agreement to the Court. The Settlement Class will receive compensation comfortably within the range of reasonableness for class settlement of these RICO claims, and the Class and thousands of non-class consumers will benefit from DIRECTV's improved customer disclosures and the termination of their attorney client relationship with the Lonstein Defendants.

Given the settlement's strengths and the real risk of achieving far less after trial, the Court should grant this motion to begin the settlement approval process.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Doneyda Perez filed this class action on August 4, 2016, alleging a RICO scheme on behalf of a class of business owners who were purchased DIRECTV services for their business which were designated by DIRECTV as "residential" accounts, and were subsequently "shaken down" by DIRECTV's lawyers, the Lonstein Law Office ("LLO") for "settlement" of alleged commercial misuse claims, causing them damages. (Dkt. No. 1, Odenbreit Decl., ¶ 5.)

DIRECTV appealed the Court's denial of its Motion to Compel arbitration (Dkt. No. 40) in May 2017. (Dkt. No. 43.) The remaining Defendants sought stays of proceedings and extensions to file the Amended Complaint Plaintiff filed on September 1, 2017. (Dkt. Nos. 48-50, 51, 62-65, 69) and continued to seek extensions throughout 2017. (Dkt. Nos. 73-76) After the Ninth Circuit upheld the District Court's order (Dkt. No. 84), Defendants continued to seek stays and extensions (Dkt. Nos. 86, 88, 94) until the Plaintiffs and Defendants ("Parties")

- 2 -

stipulated to the filing of a Second Amended Complaint on January 28, 2019. (Dkt. No. 101.)

DIRECTV answered the Complaint (Dkt. No. 105), and the Lonstein Defendants and Signal filed Motions to Dismiss in March 2019. (Dkt. Nos. 106, 108.) The case remained stayed until the Court denied the Motions to Dismiss (Dkt. No. 133) on July 23, 2019, and formally vacated the stay on July 24, 2019. (Dkt. No. 135.)

The Parties commenced written discovery in the summer and fall of 2019. Plaintiff filed a Motion for Leave to File Third Amended Complaint on November 4, 2019. (Dkt. No. 146.) After extensive meet and confer efforts, Plaintiffs filed motions to compel directed to each of the Defendants on December 19, 2019. (Odenbreit Decl., ¶ 11; Dkt. Nos. 155 – 158.) The Court granted Plaintiff's Motion over Defendants' objections on January 15, 2020. (Dkt. No. 179.)

Between January 2020 until April 2021, Magistrate Judge McCormick navigated a dizzying array of discovery disputes including, but not limited to, the following:

- garden variety production disputes (Dkt. Nos. 155-58, 391, 392, 441 – 44, 452);
- concerns relating to various privacy statutes and requested protective orders (Dkt. Nos. 162, 164, 167, 183, 305);
- STELA (privacy) notice to potential class members after resolution of issues relating to that notice (Dkt. No. 217, 301, 302);
- requests for forensic inspection of the Plaintiff's phone and countless motions related to the eventual inspection ordered by the Court (Dkt. Nos. 242, 243, 247, 326, 472, 477);
- various disputes regarding third-party subpoenas (Dkt. Nos. 376, 381);
- privilege claims asserted by DIRECTV and LLO's and substantial briefing regarding the crime-fraud exception, privilege log requirements and in-

- 3 -

camera inspection requests (Dkt. Nos. 223, 229, 230, 231, 239, 324, 327, 328, 345, 346, 351, 352, 354, 355, 427, 460, 469);

- Defendant's efforts to obtain social media accounts from Plaintiff (Dkt. No. 330, 347, 356, 357, 429);

- A Motion for Sanctions against LLO to obtain the class contact list. (Dkt. Nos. 461, 518, 561, 576) (Hereinafter the class list is referred to as the "Lonstein List").

On May 4, 2020, the DIRECTV Defendants filed a Motion to Deny Class Certification seeking a finding that Plaintiff Perez was not an adequate class representative and her claims are not typical. (Dkt. No. 278). On July 29, 2020, Plaintiff filed a Motion for Leave to Amend the Scheduling Order, to Add Additional Parties (five (5) new Class Representatives) and for Leave to File a Fourth Amended Complaint (Dkt. No. 368), a request objected to by all Defendants (483-485) but granted by the Court on December 16, 2020. (Dkt. No. 496.)

In August and September of 2020, the Lonstein Defendants' counsel sought to withdraw, then sought *ex parte* relief, further slowing progress on pending discovery issues. (Dkt. Nos. 394, 415, 417, 420, 430 – 36.) The court denied the first *ex parte* request on August 26, 2020 (Dkt. No. 420) and the second request on September 9, 2020. (Dkt. No. 437.) This withdrawal coincided with Plaintiff's attempts to commence depositions, beginning with the deposition of third-party DIRECTV retailer/installer scheduled for August 27, 2020, and continuing with various current and former LLO and SAI employees. (Odenbreit Decl., ¶ 13.)

One issue that permeated the entirety of discovery was the Lonstein Defendant's refusal to produce a class list ("Lonstein List") that was compliant with the Court's orders. (*See, e.g*., Dkt. Nos. 273, 274, 275, 276, 283, 285, 289). This issue remained unresolved as of September 2020, and threatened to thwart nascent settlement discussions. (Odenbreit Decl., ¶ 11.) After the Parties began discussing mediation in mid-September 2020, LLO continued to promise it would provide a

corrected Lonstein List, but would not give Plaintiff a timeframe for it to be produced. (Odenbreit Decl. ¶ 11.) After months and months of counterproductive meet and confers, Plaintiff finally filed her Motion for Sanctions on October 19, 2021. (Dkt. No. 461.) Magistrate Judge McCormick appointed a neutral database expert, Charles Platt, to extract LLO's database and put together a list of cases handled by LLO on behalf of DIRECTV. (Dkt. Nos. 518, 561, 576.)

Shortly thereafter, the Parties sought a stay of the case excepting certain discovery issues for resolution. (Dkt. No. 468.) The Parties attended the first of two scheduled mediation sessions with the Honorable Carl J. West (Ret.) on November 30, 2021. (Odenbreit Decl., ¶ 17.) The session did not result in a settlement but all Parties agreed to attend the second scheduled session. (Odenbreit Decl., ¶ 17.)

After extensive briefing on Plaintiff's Motion for Sanctions against LLO, (Dkt. Nos. 463, 471, 473, 476, 478, 479, 480, 481, 505) the Court granted the Motion in part (denying monetary sanctions) and ordered appointment of a neutral ESI liaison on January 25, 2021. (Dkt. 518.) It took nearly six more months and multiple additional orders (Dkt. Nos. 561, 571, 576, 599) from Judge McCormick compelling the Lonstein Defendants' compliance with the underlying Order before Plaintiffs were finally provided with a class list in July 2021. (Odenbreit Decl., ¶ 11.)

In January 2021, Signal and the Lonstein Defendants answered Plaintiff's Fourth Amended Complaint (Dkt. Nos. 508, 509) while DIRECTV filed a complex combination of answers, motions and counterclaims. (Dkt. Nos. 511-515.) DIRECTVs Motions remain unaddressed in light of the continued stays. (See Dkt. Nos. 591, 607, 613.)

The Parties attended the second scheduled mediation session with Judge West on March 2, 2021. (Odenbreit Decl., ¶ 20.) Although the formal sessions did not result in settlement, DIRECTV and Plaintiffs continued to negotiate through Judge West (Odenbreit Decl., ¶ 20) and sought a further stay in April 2020, a request the Court granted. (Dkt. No. 591.) On September 22, 2021 Plaintiffs, DIRECTV and

- 5 -

Signal notified the Court of a settlement in principle. (Dkt. No. 607.) In January 2022 DIRECTV and Plaintiffs notified the Court that a term sheet had been signed. (Dkt. No. 613.) Ultimately, neither the Lonstein Defendants nor Signal signed the term sheet. (Odenbreit Decl., ¶ 20.)

Plaintiffs and the DIRECTV Defendants spent numerous hours finalizing the Settlement Agreement. (Odenbreit Decl., ¶ 21, Ex. 1.)

## III.   SUMMARY OF THE SETTLEMENT TERMS

### A.   The Proposed Class

The Class is defined as follows:

All businesses and business owners in the United States who had DIRECTV services installed in their commercial establishment; who were subsequently audited by Defendant Signal Auditing, Inc. ("Signal"); and who at any time on or after the day four years prior to the date on which the original Complaint was filed (August 4, 2012) through the date the Court grants preliminary approval of the Settlement, received communications from the Lonstein Law Offices, P.C., Wayne Lonstein and/or Julie Cohen Lonstein on behalf of DIRECTV seeking money for allegedly unauthorized use of DIRECTV licensed programming, including NFL Sunday Ticket or any other DIRECTV-related programming.

(Odenbreit Decl., ¶ 22 Ex. 1.)

### B.   Monetary Terms

DIRECTV has agreed to pay nine million, four hundred thousand dollars ($9,400,000.00) ("Total Settlement Fund") to resolve all claims that were alleged in this Action or any subsequent amendment thereto, or that could have been alleged based on the facts alleged in this Action and for Class Members' release of claims described below. (Odenbreit Decl, ¶ 23, Ex. 1, ¶ 2.40.) If finally approved by the Court, the proposed Settlement will distribute payments as follows:

1. The "Net Settlement Fund" means the Total Settlement Fund of Nine Million Four Hundred Thousand dollars ($9,400,000.00) minus the payment of:

2. Settlement Administration Costs in the amount not to exceed seventy-five thousand dollars ($75,000.00) (Declaration of Michael Bui, "Bui Decl.," ¶ 6.) The Settlement Administrator will calculate each Settlement Class Members' pro-rata share of the Settlement ("Settlement Benefit") as set forth below.

3. Class Representatives' Incentive Awards, described in detail below, for a total of eighty thousand dollars ($80,000.00);

4. Award of attorneys' fees, described in detail below, for a total of three million one hundred thirty-three thousand three hundred thirty-three dollars and thirty-three cents ($3,133,333.33) (Odenbreit Decl., Ex. 1, ¶ 6.1); and

5. Award of litigation costs, described in detail below, for a total of one hundred fifty-five thousand dollars and ninety-four cents ($155,000.00) (Odenbreit Decl., Ex. 1, ¶ 6.1).

## C. Non-Monetary Terms

The Signing Parties also agree to the following non-monetary relief:

1. DIRECTV will agree not to retain the Lonstein Law Office or any of the Lonstein Defendants in any capacity for potential claims of commercial misuse by DIRECTV's customers going forward; and

2. DIRECTV will agree to include a statement in its order confirmation documentation to customers that highlights that residential service may be used for residential purposes only, and cannot be used in commercial settings.

(Odenbreit Decl., Ex. 1, ¶ 5.1.).

### D.     Identification of Class Members

In order to determine who may be part of the Class, the neutral expert appointed by the Court, Charlie Platt, identified those LLO cases that (1) had a value in a postage field ("EXPPOSFE1"), indicating they were likely "contacted" by LLO regarding alleged commercial misuse and/or (2) had a value in the "settlement" ("SETTAMT") column indicating something was paid to LLO by the business/business owner. (Odenbreit Decl., ¶ 24.) The resulting data, referred to as "the Platt Spreadsheet," identified a total of 23,554 records; 6,821 LLO cases that did not have a value in either the postage field or the settlement amount field. (Odenbreit Decl., ¶ 25.) Plaintiffs and DIRECTV agreed these businesses/business owners should be excluded from the class. (Odenbreit Decl., ¶ 25.)

After further analysis by Plaintiffs' expert, Eric Lee, the Signing Parties identified 8,185 businesses/business owners who were contacted by LLO but did not pay any money to LLO or paid $20 or less and 8,548 businesses/business owners who were contacted by LLO and paid money to LLO. (Declaration of Eric Lee, "Lee Decl.", ¶ 6.) Therefore, based on the information collected in the Platt Spreadsheet, there are approximately sixteen thousand seven hundred thirty-three (16,733) Class Members to whom a Notice will be sent, the process for which is described in detail below. (Odenbreit Decl., ¶ 29.) Class Members who do not timely exclude themselves from the Settlement ("Settlement Class") will receive a pro-rata share from the Net Settlement Fund as defined below. (Odenbreit Decl., Ex. 1, ¶ 3.1.)

### E.     Allocation of the Net Settlement Fund

The 8,185 Class Members that the Platt Spreadsheet indicates were likely contacted by LLO but did not pay any money to LLO or who paid less than $20.00 will receive a $25.00 initial Settlement Benefit from the Net Settlement Fund. (Odenbreit Decl., ¶ 26; Lee Decl., ¶¶ 6-8.) Those Class Members who paid more than $25.00 will receive an initial Settlement Benefit representing a pro rata share of the remaining Net Settlement Fund based on the amount each paid to LLO

MEMORANDUM OF POINTS AND AUTHORITIES

according to the Platt Spreadsheet. (Odenbreit Decl., ¶ 26; Lee Decl., ¶ 9.) Any funds remaining after sixty (60) days following the date of the initial check expires (representing checks that were not cashed by a member of the Settlement Class and any amounts not awarded by the Court for Class Counsels' attorneys' fees, costs and Class Representatives' Incentive Awards) will be distributed pro rata to each Settlement Class Member who cashed an initial settlement check in a second distribution. (Odenbreit Decl., ¶ 27, Ex. 1, ¶ 3.1(b).) Distributions will continue to those Settlement Class Members who cashed checks until the funds are depleted or until it becomes economically infeasible to print and mail checks. (Odenbreit Decl., ¶ 27, Ex. 1, ¶ 3.1(b).) If any funds remain after the subsequent distributions to Settlement Class Members, Plaintiffs and DIRECTV will apply to the Court to have the remainder paid to a *cy pres* recipient. (Odenbreit Decl., ¶ 27, Ex. 1, ¶ 3.1(b).)

As provided herein, the Total Settlement Fund is non-reversionary. (Odenbreit Decl., ¶ 28, Ex. 1, ¶ 3.1(b).) DIRECTV has agreed that no portion of the Total Settlement Fund will be returned to DIRECTV unless the Settlement is not approved or is vacated on appeal. (Odenbreit Decl., ¶ 28.)

### F.   Notice to Class Members and Opt-Out/Objection Procedure

There is a long form notice, email notice and a postcard notice. (Odenbreit Decl., ¶ 79-82; Ex. 1, Exs. A, B, and C,) The Notice will be available to Class Members in the following languages: English, Spanish, Mandarin, Korean and Vietnamese. (Odenbreit Decl. ¶ 82; Ex. 1, Exs. A, B and C.) The Notice will be made available to the Class Members by the following methods:

#### 1.   Notice by Email

The Settlement Administrator will send email notice (collectively "Notice") to all Class Members for whom the Lonstein Law Office records contain email address information that can be reliably verified. (Odenbreit Decl., ¶ 80; Ex. 1, ¶ 4.2.) Notice by email will be sent to the Class Member at least three times, but if one or more of the emails is returned undeliverable, a postcard notice will be mailed

if a mailing address is reasonably available. (Odenbreit Decl., ¶ 80; Ex. 1, ¶ 4.5.)

### 2. Notice by Mail

For Class Members for whom the Lonstein Law Office records do not have an email address, the Settlement Administrator will mail a 5x7 postcard notice to the last known mailing address shown in the Lonstein Law Office databases, as updated by appropriate skip-tracing including use of the National Change of Address Database and other resources. (Odenbreit Decl., ¶ 81; Ex 1, ¶ 4.6.) The postcard notice will inform the Class Members that they had been identified as potentially having received communications from the Lonstein Law Office in connection with allegations of commercial misuse of DIRECTV services during the Class Period and that they are entitled to a settlement payment. (Odenbreit Decl., Ex. 1, ¶ 4.6, Ex. C.) The direct notice will also include a link to access the Settlement Administrator interactive website to review the long form notice, review case documents and to submit updated contact information to assist in the payment of Settlement Benefits. (Odenbreit Decl., ¶ 81; Ex. 1, Exs A-C.)

### 3. Settlement Administrator Website

The Settlement Administrator will create a settlement website and toll-free number to provide information to potential Class Members. (Odenbreit Decl., Ex. 1, ¶¶ 4.9-4.11.) The postcard notice, email notice, and long-form notice will have instructions in five (5) languages (English, Spanish, Mandarin, Korean and Vietnamese) informing Class Members where to find the Notice in their preferred language on the Settlement Administrator website. (Odenbreit Decl., Ex. 1, ¶¶ 4.5, 4.6, 4.9.) The website will contain the long form Notice in those same five (5) languages and also contain other important settlement documents which include the Settlement Agreement, answers to frequently asked questions, and instructions on how to submit a request to be excluded from the class and any objections to the Settlement. (Odenbreit Decl., Ex. 1, ¶ 4.9.) Once Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive Awards is filed, it will also be available on the Settlement

MEMORANDUM OF POINTS AND AUTHORITIES

Administrator website prior to the deadline for Class Members to request exclusion or object to the Settlement. (Odenbreit Decl., Ex. 1, Exs. A-C.) The form and content of the website will be agreed upon by the Signing Parties in collaboration with the Settlement Administrator. (Odenbreit Decl., Ex. 1, ¶ 4.9.)

### 4. Procedures for Class Members to Opt-Out of Settlement

Class Members and persons purporting to act on their behalf who decide to be excluded from this Settlement must submit to the Administrator a written statement requesting exclusion from the Settlement within sixty (60) days from the date Notice is sent by the Settlement Administrator ("Objection/Exclusion Deadline") or by such date otherwise ordered by the Court. Such written request for exclusion must (i) contain the name and address of the person or entity requesting exclusion, (ii) be made by mailing a valid exclusion request by First Class U.S. Mail to the Administrator at the specified address as described in the Class Notice, (iii) include the statement that "I request to be excluded from the proposed class settlement in *Perez v. DIRECTV Group Holdings, et al.*, No. 8:16-cv-01440-JLS-DFM (C.D. Cal.)"; (iv) be signed by the person requesting exclusion, if the Class Member is a person; or signed by a representative of the entity requesting exclusion, if the Class Member is an entity; and (v) be postmarked on or before the Objection/Exclusion Deadline in order to be valid. (Odenbreit Decl., Ex. 1 ¶ 7.2.1.) Instructions for how to request exclusion from the Settlement will be available to Class Members on the Settlement Administrator website. (Odenbreit Decl., ¶ 84.)

### 5. Procedures for Class Members to Object to Settlement

Class Members and persons purporting to act on their behalf who wish to object to the fairness, reasonableness, or adequacy of the Settlement or the Agreement, any request for Attorneys' Fees and Expenses, or any request for an Incentive Award, shall submit a written notice of objection to the Settlement Administrator who will then forward the written notice to Class Counsel and DIRECTV Defendants' counsel. Class Counsel will then file them with the Court through the ECF System

within five (5) court days of receipt from the Administrator. (Odenbreit Decl., Ex. 1, ¶ 7.2.2(a).) Any objecting Class Member may appear, in person or by counsel, at the Final Approval Hearing to show cause why this Settlement and the Agreement should not be approved as fair, adequate, and reasonable or to object to any request for an Attorneys' Fees and Expenses or Incentive Award. If the Court makes the Final Approval Hearing available via Zoom or via other means of remote appearance, a remote appearance shall be considered equivalent to an in-person appearance, with all the rights and obligations attendant thereto. (Odenbreit Decl., Ex. 1, ¶ 7.2.2(c).)

### G.   Settlement's Released Claims

#### 1.   Claims Released by Class Members

In exchange for the consideration given by DIRECTV in the proposed Settlement, all Settlement Class Members will expressly release, waive and discharge, and will be deemed to have released, waived and discharged, all Released Claims against all "Defendants" which is defined to include DIRECTV Group Holdings, LLC, DIRECTV, LLC and DIRECTV Holdings, LLC, Signal Auditing, Inc., Lonstein Law Offices, P.C., Julie Cohen Lonstein, or Wayne Lonstein. (Odenbreit Decl., Ex. 1, ¶¶ 2.10, 2.34, 8.1.)

"Released Claims" means Plaintiffs and Settlement Class Members will release Defendants and their parents, subsidiaries, and affiliates (the "Released Parties") from all claims, demands, debts, liabilities, actions, causes of action of every kind and nature, obligations, damages, losses, costs, whether known or unknown, actual or potential, suspected or unsuspected, direct or indirect, contingent or fixed, arising out of, related to, or connected in any way to the allegations contained in this Action and, more specifically, the prosecution of commercial misuse claims against Class Members by the Lonstein Law Office on behalf of DIRECTV or AT&T, including any auditing performed by Signal Auditing, regardless of whether or not such audit resulted in any action by the Lonstein Law

- 12 -

Office that are alleged to have occurred within the Class Period. (Odenbreit Decl., Ex. 1, ¶¶ 8.1, 8.4.)

### 2.  Claims Released by Named Plaintiffs

Along with the Released Claims as provided above, the Settlement contains a release of any and all claims by Plaintiffs against Defendants or its counsel as of the effective date of the Settlement. (Odenbreit Decl., Ex. 1, ¶¶ 2.26, 8.2, 8.4.)

### 3.  Claims Released by DIRECTV

DIRECTV also agrees to release all claims by DIRECTV against Plaintiffs and Settlement Class Members related solely to allegations of commercial misuse of DIRECTV services which are claimed to have occurred within the Class Period. (Odenbreit Decl., Ex. 1, ¶¶ 2.11, 8.3.) These claims include any and all such claims by DIRECTV and DIRECTV's attorneys, employees, agents, assignees, parents, subsidiaries, and affiliates to the fullest extent that DIRECTV has authority to release them and DIRECTV represents it has not assigned any rights regarding allegations of commercial misuse or any other allegations related to the factual claims as pled in this Action to any third party, agent or attorney (apart from ordinary collection of debts owed for failure to pay for DIRECTV service). (Odenbreit Decl., Ex. 1, ¶¶ 2.11, 8.3.) This release does not include any other dispute outside of the allegations as alleged and pled in this Action between DIRECTV and Class Members arising out of the customer terms of service provided by DIRECTV or payment to DIRECTV for DIRECTV services provided. (Odenbreit Decl., Ex. 1, ¶¶ 2.11, 8.3.) Similarly, this release shall not prohibit DIRECTV's ability to use its legally appropriate processes to address Class Members' commercial misuse, if any, through conversion of the Class Members' accounts and/or termination of the account. (Odenbreit Decl., Ex. 1, ¶¶ 2.11, 8.3.)

### H.  Administration of Settlement

The Signing Parties have agreed to utilize the services of Simpluris to act as Settlement Administrator. Simpluris' qualifications are further described in detail in

- 13 -

the Declaration of Michael Bui, Director of Case Management ("Bui Decl.") filed concurrently herewith. Simpluris anticipates that it will cost $73,423.00 to administer the Settlement, and has agreed not to exceed $75,000.00 in total administration costs. (Bui Decl., ¶ 6.)

## IV.   THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

### A.   The Proposed Class Meets the Requirements Under Rule 23(a)

#### 1.   Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(a)(1); *Arnold v. United Artists Theatre Circuit, Inc.* (N.D. Cal. 1994) 158 F.R.D. 439, 440. There are an estimated sixteen thousand seven hundred thirty-three (16,733) Class Members. (Odenbreit Decl. ¶ 29; Lee Decl., ¶ 5.) Numerosity is plainly met for the proposed Class.

#### 2.   Commonality

Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(a)(2) requires that "there are questions of law or fact common to the class." (Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(a)(2).) "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338, 349–50 (citations omitted). The plaintiff must allege that the class' injuries "depend upon a common contention" that is "capable of class wide resolution." *Id.* at p. 350. In other words, the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." (*Ibid.*) The commonality requirement only demands that class members' situations are sufficiently parallel to insure a vigorous and full presentation of the claims for relief. *Cohen v. Trump* (S.D. Cal. 2014) 303 F.R.D. 376, 382. "RICO claims often satisfy the commonality's minimal threshold because schemes that allegedly violate the RICO statute tend to be the central, unifying source of the injury

for class members." *Earl v. Boeing Company* (E.D. Tex. 2021) 339 F.R.D. 391, 419 (citations omitted).

Here, Plaintiffs allege that the Class Members were all victims of a fraudulent scheme perpetrated by the DIRECTV Defendants, the Lonstein Defendants and Signal Auditing through a common pattern of setting up an account in a business establishment as a residential account, on-site audits conducted by Defendant Signal and then subsequent contact by the Lonstein Defendants seeking money for alleged commercial misuse. (*See, generally,* Fourth Amended Complaint, Dkt. No. 498.) Class Members share the same issues such as the common way in which their accounts were established, either by solicitation directly by a DIRECTV representative or requesting specifically from DIRECTV commercial services subsequently installed by a DIRECTV representative. Class Members further were contacted by the Lonstein Defendants seeking money for alleged commercial misuse. Plaintiffs further allege the Defendants engaged in wire and mail fraud through their contacts and receipt of payment from Class Members. (Dkt. No. 498 ¶¶ 8, 52, 60, 67, 134.) Plaintiffs allege Class Members are suffered injuries stemming from the centralized pattern of racketeering activity that satisfies commonality. *Earl*, *supra*, 339 F.R.D. at p. 419. Because Defendants' alleged pattern of racketeering and predicate acts of racketeering activity were uniform across Plaintiffs and the Class, "resolution of these questions will resolve 'in one stroke' issues that are 'central to the validity' of each [C]lass [M]ember's claims." *Guido v. L'Oreal, USA, Inc.* (C.D. Cal. 2012) 284 F.R.D. 468, 477 (citing *Wal-Mart Stores, Inc.*, *supra*, 564 U.S. at p. 350). Plaintiffs therefore satisfy the commonality requirement.

### 3. The Claims or Defenses of the Plaintiffs are Typical of Those of the Class

Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(a)(3). "[U]nder the rule's

- 15 -

permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes v. Wal-Mart Stores, Inc.* (9th Cir. 2010) 603 F.3d 571, 613 (en banc) (quoting *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1020.) Further, "[t]ypicality requires that the named plaintiffs be members of the class they represent." *Ibid.* citing *General Telephone Co. of Southwest v. Falcon* (1982) 457 U.S. 147, 156. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.* (9th Cir. 1992) 976 F.2d 497, 508. Where plaintiffs allege the same fraudulent scheme affected every class member, typicality is readily met. *Cohen*, *supra*, 303 F.R.D. at p. 382.

Here, Plaintiffs' claims, like those of the proposed Class, are based on their agreement to the installation of DIRECTV services in their commercial establishments; the designation by DIRECTV of their accounts as "residential" rather than "commercial" without their knowledge or consent; surreptitious audit and/or investigation by Signal in their commercial establishments; and the Lonstein Defendants' subsequent extortion of a monetary settlement. (*See* Dkt. No. 498, ¶¶ 1-123.) Plaintiffs' claims and all Class Members' claims also arise out of the same course of conduct by Defendants, i.e., the same scheme to defraud, entrap, and/or extort as discussed under Section IV.A.1.ii., *supra*. Further, Defendants contend most if not all Class Members entered into "settlement agreements" with the Defendants and contend these settlements prevent Plaintiffs and Class Members from pursuing these claims. (Odenbreit Decl., ¶ 30.) Therefore, the Plaintiffs are not subject to unique defenses which would threaten to become the focus of the litigation, further supporting a finding of commonality. *Cohen, supra*, at 383-84. As such, typicality is easily met.

MEMORANDUM OF POINTS AND AUTHORITIES

### 4.     Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of Class Members

Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, *supra*, 150 F.3d at p. 1020. The adequacy requirement is met if the class representative and class counsel have no interests adverse to the interests of the proposed class members and are committed to vigorously prosecuting the case on behalf of the class. *Ibid.*; *McGhee v. Bank of America* (1976) 60 Cal.App.3d 442, 450–51.

Plaintiffs' claims arise out of the same set of facts, allege common injury, and assert the same theories of liability as the claims of the proposed Class. (Odenbreit Decl., ¶ 31; Declaration of Doneyda Perez, ("Perez Decl."), ¶¶ 3-10; Declaration of Danny Nissen, ("D. Nissen Decl."), ¶¶ 3-7; Declaration of Marlys Nissen ("M. Nissen Decl."), ¶¶ 3-9; Declaration of Joseph Angelo ("Angelo Decl."), ¶¶ 3-14; Declaration of Gregory Laplante ("LaPlante Decl."), ¶¶ 3-9; Declaration of Paul Holt ("Holt Decl.") ¶¶ 3-8.) Therefore, Plaintiffs' interests in obtaining the maximum recovery are coextensive with the interests of the Class Members. (Odenbreit Decl., ¶ 31.) Plaintiffs took on the role as Class Representatives with full knowledge of their duties and fiduciary duties to the class and have no conflicts with Class Members and have acted in furtherance of the interests of the class. (Perez Decl., ¶ 23; D. Nissen Decl., ¶ 9; M. Nissen Decl., ¶ 11; Angelo Decl., ¶ 16; Laplante Decl., ¶ 11; Holt Decl. ¶ 10.) The adequacy requirement is met where, as here, the Class Representative's claims are sufficiently interrelated to and not antagonistic to the claims of the class. *Hanlon*, *supra*, 150 F.3d at p. 1020

- 17 -

At this stage, Plaintiffs are unable to determine the difference between the Incentive Awards and the Settlement Benefits to Class Members because there will be a second distribution that can substantially increase the Settlement Benefits. However, at the preliminary approval stage the Court should find the named plaintiffs adequate "in the absence of any apparent actual conflict." *In re Vizio, Inc., Consumer Privacy Litigation* (C.D. Cal., Jan. 4, 2019, No. 816ML02693JLSKES) 2019 WL 12966639, at *5.

### i.   Class Counsel Is Adequate

To find class counsel is adequate to represent the class, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation and the type of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(g)(1)(A).

Proposed Class Counsel in this Action are also adequate. Kevin Mahoney and Katherine J. Odenbreit are experienced class action litigators in the subject areas of wage and hour, consumer protection, and data breach. (Odenbreit Decl., ¶¶ 34-40 Declaration of Kevin Mahoney ("Mahoney Decl.") filed concurrently herewith, ¶¶ 4-7.) Further, co-class counsel Lisa Clay is also an experienced class attorney as well as a subject-matter expert in the area of the alleged RICO scheme its participants. (*See* Declaration of Lisa L. Clay ("Clay Decl.") filed concurrently herewith, ¶¶ 4-11.) A cursory review of the docket in this case demonstrates that Class Counsel have diligently prosecuted this action (*See also* Section II., *supra*. (Odenbreit Decl., ¶¶ 56.) Counsel also dedicated considerable resources to the litigation of this action. (Odenbreit Decl., ¶ 42; Mahoney Decl., ¶ 8; Clay Decl., ¶¶ 12, 13.) Counsel has no known conflicts of interest with the Class and does not represent any Class Members in any matters outside of this case. (Odenbreit Decl., ¶ 45; Mahoney Decl., ¶ 10; Clay Decl., ¶ 15.)

- 18 -

For the reasons provided, Plaintiff maintains that the requirements of Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(a) are met in this matter.

**B.      The Proposed Class Meets the Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(b)(3) Requirements**

Plaintiffs seek certification under Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(b)(3). Under Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(b)(3), a class action may be maintained if: "(1) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. R. 23(b)(3).

When examining a class that seeks certification under Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(b)(3), the Court may consider:

(A)   the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)   the likely difficulties in managing a class action.

*Id*. When assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only. *Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 620. The manageability of trying the case as a class action is not a factor for a settlement-only class. *Id.* at p. 620. For the reasons provided below, the Court should find that Plaintiffs' proposed Class satisfies both the predominance and superiority requirements.

**1.      Common Questions of Law and Fact Predominate**

"[T]he predominance analysis under Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(b)(3) focuses on the relationship between the common and individual

issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah v. U.S. Sec. Associates, Inc.* (9th Cir. 2013) 731 F.3d 952, 964. "Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(b)(3) requires [only] a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Ibid.*

Here, as discussed above, Plaintiffs' and Class Members' claims turn on whether Defendants engaged in a scheme to defraud and extort small business owners by facilitating their unwitting commercial misuse of DIRECTV services, then extracting settlement money from them for the alleged commercial misuse through wire and mail fraud. (*See* Dkt. No. 498, ¶ 71.) While there are some individual issues as further discussed in Section IV.B.3., *infra*, Plaintiffs assert that the proposed Class in this case is sufficiently cohesive to warrant adjudication by representation as the predicate acts (racketeering activity) alleged against Defendants are common as to all Class Members. *See Comcast Corp. v. Behrend* (2013) 569 U.S. 27 ("[I]t remains the 'black letter rule' that a class may obtain certification under Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(b)(3) when liability questions common to the class predominate over damages questions unique to class members."). As such, the common questions and their corresponding common legal remedies predominate.

### 2. Class Action is the Superior Method for Resolving the Claims in this Action

"The superiority inquiry under Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, *supra*, 150 F.3d at p. 1023. "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." (*Ibid.*)

Here, there are approximately sixteen thousand seven hundred thirty-three (16,733) Class Members. (Odenbreit Decl., ¶ 46.) Each member of the proposed

- 20 -

Class pursuing a claim individually would burden the judicial system and run afoul of Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.'s focus on efficiency and judicial economy. *See Vinole v. Countrywide Home Loans, Inc.* (9th Cir. 2009) 571 F.3d 935, 946 ("The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy."). Further, litigation costs would likely exceed potential recovery if each Class Member litigated individually, especially given the complexity of the claims at issue. (Odenbreit Decl., ¶ 46); *Wolin v. Jaguar Land Rover North America, LLC* (9th Cir. 2010) 617 F.3d 1168, 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Considering the non-exclusive factors under Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(b)(3)(A)-(D), Class Members' potential interests in individually controlling the prosecution of separate actions and the potential difficulties in managing the class action do not outweigh the desirability of concentrating this matter in one litigation. (*See* Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(b)(3).) Therefore, class action is the superior method for resolving the claims in this Action.

### 3.   Class Counsel is Adequate

As described in Section IV(A)(4)(i) above, under Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(g), "a court that certifies a class must appoint class counsel." (Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(g)(1).) Plaintiffs' counsel is adequate because they have the expertise necessary to adequately and fairly represent the class and have thus far diligently prosecuted this case on behalf of Plaintiffs and Class Members. (*See* Odenbreit Decl., ¶¶ 8-16; Mahoney Decl., ¶¶ 8; Clay Decl., ¶¶ 17-20.) As such, the Court should appoint them as Class Counsel in this case. To date, Class Counsel's fees are estimated to exceed $4 million. (Odenbreit Decl., ¶ 43; Clay Decl., ¶ 21.)

As the proposed Class satisfies the elements of Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(a) and Rule 23(b)(3), the Court should conditionally certify the Class

for settlement purposes only.

## V.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

To preliminarily approve a proposed class action settlement, Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(e)(2) In turn, review of a proposed settlement typically proceeds in two stages:

(1)   The Court first conducts a preliminary fairness evaluation, and if the Court preliminarily approves the settlement as falling within the range of possible settlement approval, notice to the class is then disseminated and a "fairness" or final approval hearing is scheduled.

(2)   A "formal fairness hearing," or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

(Federal Judicial Center, *Manual for Complex Litigation*, § 21.632 (4th ed. 2004).) "The decision to [grant preliminary approval and] give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A. at Committee Notes on Rules – 2018 Amendment.

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk

of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 959. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco* (9th Cir. 1982) 688 F.2d 615, 625. "'It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness,' and 'the settlement must stand or fall in its entirety.'" *Staton*, *supra*, 327 F.3d at p. 960 (quoting *Hanlon*, *supra*, 150 F.3d at p. 1026).

In addition to these factors, where "a settlement agreement is negotiated prior to formal class certification," the Court must also satisfy itself that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Products Liability Litigation* (9th Cir. 2011) 654 F.3d 935, 946–47. Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at p. 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Ibid.*

At this preliminary stage, "a full fairness analysis is unnecessary." *Munday v. Navy Federal Credit Union* (C.D. Cal., Sept. 15, 2016, No. SACV151629JLSKESX) 2016 WL 7655807, at *7. Instead, preliminary approval

MEMORANDUM OF POINTS AND AUTHORITIES

and notice of the settlement terms to the proposed Class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval ...." *In re Tableware Antitrust Litigation* (N.D. Cal. 2007) 484 F.Supp.2d 1078, 1079 (internal citations and quotation marks omitted); *see also Acosta v. Trans Union, LLC* (C.D. Cal. 2007) 243 F.R.D. 377, 386 ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on the Final Approval, after such time as any party has had a chance to object and/or opt out.") (emphasis in original).

For the reasons provided below, Plaintiffs request that the Court grant preliminary approval of the Settlement.

### 1.   Strength of Plaintiffs' Case and Risk, Complexity, and Likely Duration of Further Litigation

Plaintiffs believe in the merits of their case and believe that they will prevail should the case proceed to certification and trial. (Odenbreit Decl., ¶ 47; Clay Decl., ¶ 19.) Plaintiffs' counsel interviewed hundreds of Class Members who claimed that they were never informed the DIRECTV services offered to them and subsequently installed in their businesses were "residential" contracts. (Odenbreit Decl., ¶ 48; Clay Decl., ¶ 12.) Further, the Plaintiffs Class Members interviewed would provide evidence showing the outrageous methods employed by the Lonstein Defendants to collect settlements from each of them. (Odenbreit Decl., ¶ 48; Perez Decl., ¶¶ 5-9; M. Nissen Decl., ¶¶ 5-8; Angelo Decl., ¶¶ 5-14; Laplante Decl., ¶¶ 5-8; Holt Decl., 4-8;) Documents produced by the Lonstein Defendants show records of calls, emails and/or letters sent to Class Members threatening sham litigation and attempting to extort so-called "settlements." (Odenbreit Decl., ¶ 48.)

Despite the strengths of Plaintiffs' case, Plaintiffs believe that the inherent

- 24 -

risks, complexity, and costs of what has so far been a protracted litigation weighs in favor of preliminary approval of the Settlement. (Odenbreit Decl., ¶¶ 50-54; Clay Decl., ¶ 18.) The Court need look no further than the lengthy docket in this case to find that continued litigation is likely interminable. (Odenbreit Decl., ¶ 56.) Plaintiffs' first set of written discovery sparked intense discovery motion practice and close management by Magistrate Judge McCormick. (Odenbreit Decl., ¶¶ 11-12; Clay Decl., ¶¶ 12, 13.) When Plaintiffs filed their Fourth Amended Complaint adding 5 additional Representative Plaintiffs, DIRECTV filed counterclaims against Plaintiffs Angelo, Laplante and Holt and filed a Motion to Dismiss Marlys and Danny Nissen. (Odenbreit Decl., ¶¶ 19, 32, 50.) While Plaintiffs believe in the merits of their case, they recognize the inherent risks and uncertainty of litigation and understand the benefit of making a significant settlement available to the class now, almost six (6) years after this Action was commenced, and in some cases nearly ten (10) years after Class Members experienced their losses. (Odenbreit Decl., ¶¶ 47-54; Clay Decl., ¶¶ 18 – 20.

Since this case was commenced, Plaintiffs have met numerous obstacles in maintaining this Action, including DIRECTV's motion to compel arbitration (Dkt. Nos. 30-40); the Lonstein Defendants' and Signal's motions to dismiss (Dkt. Nos. 106, 108, 113-114, 123); and hundreds of hours devoted to hearings and briefings on discovery disputes under the close supervision and scrutiny of Magistrate Judge McCormick (Dkt. Nos. 156, *et seq.*). To date, a number of disputes with regard to Plaintiffs' *first set* of discovery requests to Defendants served in 2019 remain pending before Magistrate Judge McCormick, and are expected to continue should litigation resume. (Odenbreit Decl., ¶¶ 11-13.) Despite the fact this case has been pending for nearly 6 years (with 618 docket entries and counting), two of the named Plaintiffs face a motion to dismiss (Dkt. No 511), 3 of the named Plaintiffs face counterclaims (Dkt. No. 513) and pre-certification discovery is still in its nascent stages. (*See* generally Court docket).

MEMORANDUM OF POINTS AND AUTHORITIES

Additionally, the proposed Class Period is four (4) years prior to when this Action was commenced in 2019. (Dkt. No. 498, ¶ 69.) Many of the Class Members' commercial establishments are no longer operational, including that of Plaintiff Perez, which increases the risk of maintaining a cohesive class. (Odenbreit Decl., ¶ 52.) The passage of time also increases the risk that potential witnesses in this case will either not be located at all or have little to recollect.

Finally, the specific risks of further litigation also include unfavorable rulings on motions to certify a class as further discussed below; unfavorable rulings on anticipated discovery motions and motions *in limine*, including those to limit or exclude evidence necessary to establish liability and damages; the need for a unanimous jury; the risk the jury would not find there was a fraudulent scheme or adequate predicate acts such that Defendants would not be found liable; the risk that even if liability were found, the jury could award no, or very limited damages based on evidence of actual unauthorized commercial misuse by Class Members; and countless other obstacles. (Odenbreit Decl., ¶ 54.)

Settlement eliminates the risks inherent in certifying a class, prevailing at trial, and withstanding any subsequent appeals, and it may provide the last opportunity for Class Members to obtain relief. This factor therefore weighs in favor of granting preliminary approval. *See National Rural Telecommunications Cooperative v. DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523, 526 ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

## 2.    Risk of Maintaining Class Certification

Plaintiffs also face the risk of maintaining class certification particularly in light of DIRECTV's prior motion to deny class certification and find named representative Doneyda Perez inadequate before Plaintiffs could even file a motion for class certification. (Dkt. No. 278, 282.) Plaintiffs anticipate that Defendants will continue to oppose class certification should litigation resume and has endeavored

to remedy the possibility that Plaintiff Perez would be found an inadequate by adding five (5) additional Plaintiffs. (Dkt. Nos. 368, 496.) However, DIRECTV has moved to dismiss the claims of two of the added class representatives and has filed counterclaims against the other three. (Odenbreit Decl., ¶ 71.) The risk is this case could devolve into a myriad of individual issues related to the proposed class representatives and risk a possible conflict with the class. (Odenbreit Decl., ¶ 51.)

Additional considerations include a factual findings that some Class Members may have actually engaged in the unauthorized use of DIRECTV services which could diminish the potential damages to the class or eliminate the possibility of certain Class Members receiving any award of damages altogether; the fact that some Class Members purportedly waived their right to file this action through settlement agreements with the Lonsteins; and the distinct possibility that Plaintiffs will be unable to obtain additional substantive discovery on this case, which Plaintiffs will need to successfully certify a class, given that the Lonstein Defendants' record keeping was marginal at best. (Odenbreit Decl., ¶ 52.) Given the risks of maintaining class certification, the Court should find that this factor weighs in favor of preliminary approval.

### 3.   Amount Offered in Settlement is Fair and Reasonable

"To determine whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Schuchardt v. Law Office of Rory W. Clark* (N.D. Cal., Jan. 20, 2016, No. 15-CV-01329-JSC) 2016 WL 232435, at *10 (quoting *In re Tableware Antitrust Litigation*, *supra*, 484 F.Supp.2d at p. 1080). "Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation." *In re Linkedin User Privacy Litigation* (N.D. Cal. 2015) 309 F.R.D. 573, 587. A settlement amount that is only a fraction of the potential recovery

does not render a settlement inadequate or unfair per se. *In re Vizio, Inc., Consumer Privacy Litigation*, *supra*, 2019 WL at p. at *9.

In this case, the Lonstein Defendants provided a verified response to an interrogatory stating it received approximately $35.5 million from the "settlement" of DIRECTV commercial misuse claims. (Odenbreit Decl., ¶ 55.) This amount excluded the years 2012 and 2019. (*Id*.) However, the Platt Spreadsheet contained records from 2012 but not 2019. (*Id*.) DIRECTV discontinued its relationship with the Lonstein Defendants in 2020 and it is estimated any additional amounts collected were minimal, if any at all. (Odenbreit Decl., ¶ 29.) The Platt Spreadsheet was independently analyzed by Plaintiffs' expert, Eric Lee, who concluded the Lonstein Defendants on behalf of DIRECTV collected $45,330,560.14 from January 2012[1] through 2018. (Lee Decl., ¶ 10.) Plaintiffs are confident Mr. Lee's analysis provides a reasonable estimate of the amount collected by the Lonstein Defendants on behalf of DIRECTV for alleged commercial misuse. (Odenbreit Decl., ¶ 55.)

Plaintiffs acknowledge two caveats to this estimated recovery. First, DIRECTV continues to assert that some percentage of Class Members moved DIRECTV service from their residence to a business. (Odenbreit Decl., ¶ 51.) Additionally, DIRECTV has raised the argument that Class Members who signed a "settlement agreement" in connection with the Lonstein Defendants' collection of money would be precluded from participating in this case. (*Id*.) While neither of these issues have been litigated, a ruling on either point in DIRECTV's favor puts the potential recovery at risk. (*Id*.) For purposes of this motion, however, Plaintiff is comfortable using the total amount collected as analyzed by their expert. (Lee Decl., ¶¶ 6-12.)

Class Members will receive an initial Settlement Benefit equating to approximately 12.7% of their actual loss. (Odenbreit Decl., ¶ 55; Lee Decl., ¶ 9.)

---

[1] The class as defined creates membership at the time the Class Member was contacted by the Lonstein Defendants.

However, their anticipated recovery in light of the second distribution could be as much as 40%-50% of their actual loss. (Odenbreit Decl., ¶ 55.) *See Low v. Trump University, LLC* (S.D. Cal., Dec. 20, 2016, No. 310CV00940GPCWVG) 2016 WL 7387292, at *2 (court approved redistribution of uncashed check funds to class members who cashed checks, increasing actual recovery.)

A "settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Financial Corp. Securities Litigation* (9th Cir. 2000) 213 F.3d 454, 459. 12.7% recovery of maximum potential liability is consistent with recoveries that courts have found reasonable in other consumer class actions. *See, e.g., Weeks v. Kellogg Co.* (C.D. Cal., Nov. 23, 2013, No. CV 09-08102 MMM RZX) 2013 WL 6531177, at *15 n. 85 (C.D. Cal. Nov. 23, 2013) (10% of consumers' average total damages]) *Retta v. Millennium Products, Inc.* (C.D. Cal., Aug. 22, 2017, No. CV15-1801 PSG AJWX) 2017 WL 5479637, at *5 (21% of estimated damages reasonable and beneficial); *In re Linkedin User Privacy Litigation*, *supra*, 309 F.R.D. at p. 588 (30% of what consumers could have expected to receive at trial).

Finally, Settlement Class Members will also receive a release from DIRECTV and its agents/attorneys for any claims regarding alleged commercial misuse. (Odenbreit Decl., Ex. 1, ¶ 8.3.) This gives the Settlement Class Members peace of mind they will not be pursued for accusations made during the Class Period. *Optima Tax Relief, LLC v. Channel Clarity, Inc.* (C.D. Cal., Jan. 21, 2016, No. SACV141902JLSJCGX) 2016 WL 6821108, at *4. Finally, DIRECTV has agreed to insert certain disclosures in their order confirmation documents to advise customers in the future of the difference in residential and commercial services. (Odenbreit Decl., Ex. 1, ¶ 5.1(b).)

### 4.    Stage of the Proceedings and Extent of Discovery Completed

This factor requires the Court to evaluate whether "the parties have sufficient

- 29 -

information to make an informed decision about settlement." *Linney v. Cellular Alaska Partnership* (9th Cir. 1998) 151 F.3d 1234, 1239. Rule 23(e)(2)(B) prevents a court from approving a class settlement unless it makes a finding that the parties negotiated the settlement at arm's length. So long as the discovery is sufficient to give the parties a clear view of the relative strengths and weaknesses of their respective cases it need not be exhaustive. *See, e.g., In re Immune Response Securities Litigation* (S.D. Cal. 2007) 497 F.Supp.2d 1166, 1174.

As discussed in further detail in Section II.A., *supra*, Plaintiffs and Defendants engaged in extensive discovery and investigation, including: voluminous document production and review (over 15,000 pages of documents), two full days of deposition of Plaintiff Perez, extensive consultation with experts, and numerous discovery hearings before Magistrate Judge McCormick, even in the midst of the COVID-19 pandemic. (Odenbreit Decl., ¶¶ 8-16, 56.) Plaintiffs also interviewed hundreds of potential Class Members and reviewed hundreds of pages of class member documents. (Odenbreit Decl., ¶ 56; Clay Decl., ¶ 12.) As also further discussed above, the Parties undertook court-ordered data collection on-site from the Lonstein Law Office through a court-appointed expert. (Dkt. No. 518, p. 5.) Moreover, Plaintiffs' claims were tested through two motions to dismiss, numerous discovery motions, and four motions to amend the complaint, all of which were all opposed by Defendants, but were each granted by the Court.

The extensive record in this case shows that Plaintiffs and DIRECTV reached the Settlement based on sufficient information to make an informed decision. As such, the Court should find that this factor weighs in favor of granting preliminary approval.

### 5.    Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc.* (N.D. Cal. 2008) 559 F.Supp.2d 1036, 1043. In fact, experienced counsel's judgment in this respect carries

considerable weight. *See National Rural Telecommunications Cooperative*, *supra*, 221 F.R.D. at p. 528.

The settlement negotiations were conducted by experienced class counsel who have been prosecuting this Action since its inception. (*See* Odenbreit Decl., ¶¶ 33-43, 57; Clay Decl., ¶¶ 12, 13, 16.) Class counsel wholeheartedly endorses the settlement agreement as fair, reasonable, and adequate. (*Id.*) That endorsement is the product of arm's length negotiations for over a year guided by a respected former judge (Hon. Carl J. West [Ret.]) who spent at least eighteen (18) years on the bench, the last ten (10 years of which was in Los Angeles County Superior Court's complex litigation panel and following extensive expert discovery and analysis. (Odenbreit Decl., ¶ 58.) The Court should therefore credit counsel's recommendation that the settlement warrants preliminary approval. *See Linney v. Cellular Alaska Partnership* (N.D. Cal., July 18, 1997, No. C-96-3008 DLJ) 1997 WL 450064, at *5.

### 6.    Reaction of Class Members to Proposed Settlement

The named Plaintiffs have all submitted declarations summarizing their individual views of the Settlement. (*See* generally Perez Decl., ¶ 24; D. Nissen Decl., ¶ 10; M. Nissen Decl., ¶ 12; Angelo Decl., ¶ 17; LaPlante Decl., ¶ 13; and Holt Decl., ¶ 12.) In light of the extensive interviews and contact Plaintiffs' counsel has had with Class Members, Plaintiffs anticipate that the response from Class Members will be favorable. (Odenbreit Decl., ¶ 48.)

Should any class member react unfavorably, s/he will have a chance to object and otherwise be heard at the Final Fairness Hearing. At that point, no or few objections will likely raise a presumption that the Settlement Agreement is favorable to the Class. *See In re Omnivision Technologies, Inc.*, *supra*, 559 F.Supp.2d at p. 1043.

/ / /

/ / /

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES

### 7.     The Settlement Was the Product of Serious, Non-Collusive Negotiations

When a class settlement is reached before class certification such as the case here, courts are "particularly vigilant" in searching for signs of collusion. *In re Bluetooth Headset Products Liability Litigation, supra*, 654 F.3d at p. 946–47. Courts must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at p. 947. Such signs include "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund," disproportionate distributions of settlement funds to counsel, and clear-sailing arrangements, none of which exist here (*Ibid.*)

The proposed Settlement in this case was reached after extensive and informed arm's-length negotiations lasting over a year with constant involvement of experienced class action mediator Hon. Carl J. West (Ret.). Although the Lonstein Defendants and Signal Auditing are not signatories to this Agreement, and have not substantively participated in these negotiations, the Settlement significantly benefits both the Lonstein Defendants and Signal as it contains a release of any and all claims against them, and their parents, subsidiaries, and affiliates. (Odenbreit Decl., ¶ 59; Ex. 1, ¶ 2.34.)

Further, if the Settlement is approved, the settlement funds will not revert to DIRECTV under any circumstances. (Odenbreit Decl., Ex. 1, ¶ 3.1.) All settlement funds will go to Class Members. (*Id.*)

As further sign that there is no collusion, the named Plaintiffs have stated under oath that they understand they are not receiving or seeking any benefits other than those available to the Class. (*See* Perez Decl., ¶ 26; D. Nissen Decl., ¶ 12; M. Nissen Decl., ¶ 14; Angelo Decl., ¶ 19; LaPlante Decl., ¶ 15; Holt Decl., ¶ 14.)

Additionally, there will not be a disproportionate distribution of the settlement fund to counsel. (Odenbreit Decl., ¶ 62; Ex. 1, ¶ 6.1; Clay Decl., 21.) Class Counsel

will file an application for fees that does not exceed 1/3rd of the Total Settlement Fund and the settlement agreement explicitly states that the Court is to determine the proportion of the settlement fund that will be awarded as attorneys' fees. Thus, the Agreement does not in any way affect the Court's "supervisory discretion" in approving fees. *See Staton*, *supra*, 327 F.3d at p. 970.

### 8.    Representative Plaintiff Incentive Awards

The Court has discretion to approve an incentive award to class representatives intended to compensate them for the work done on behalf of the class, and to make up for financial or reputational risk undertaken in bringing the action. *Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 958–59. In assessing the reasonableness of the incentive awards courts balance the number of plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount and the size of each payment. *Monterrubio v. Best Buy Stores, L.P.* (E.D. Cal. 2013) 291 F.R.D. 443, 462 (quoting *Staton*, *supra*, 327 F.3d at p. 977). Courts must evaluate incentive awards to insure they are not excessive given the circumstances and do not destroy adequacy of the class representatives. *Radcliffe v. Experian Information Solutions Inc.* (9th Cir. 2013) 715 F.3d 1157, 1164–65. Plaintiffs demonstrate that the incentive awards they seek are justified by the amount of time they have spent prosecuting this action, and that they have taken substantial financial and reputational risks by bringing this action on behalf of the Class. (Odenbreit Decl., ¶¶ 68, 70, 71; *See Mansfield v. Southwest Airlines Co.* (S.D. Cal., Apr. 21, 2015, No. 13CV2337 DMS (KSC)) 2015 WL 13651284, at *7.) Here that commitment is evidenced by DIRECTV's motions to dismiss the Nissen's claims and counterclaims against Plaintiffs Angelo, Holt and Laplante, which created a real financial risk to these Plaintiffs. (Dkt. Nos. 511, 513.) For these reasons and others, this case involved more than the typical class plaintiff involvement and risk. (Odenbreit Decl., ¶ 64.)

MEMORANDUM OF POINTS AND AUTHORITIES

### i.   Plaintiff Perez

Plaintiffs seek an Incentive Award of $30,000 for Plaintiff Doneyda Perez. Since this Action was commenced in 2016, Ms. Perez has endured unusually harsh scrutiny and spent approximately 200 hours actively participating in the prosecution of this case. (Perez Decl., ¶ 21.) Ms. Perez participated in two (2) full days of in-person deposition, with a third day to be scheduled. DIRECTV sought documents from all social media accounts, bank records, photographs, and other records far beyond her business records relating to DIRECTV services. (Odenbreit Decl., ¶ 65.) The discovery to which Ms. Perez was subjected was well beyond typical. Ms. Perez even traveled back to California to attend a hearing before Magistrate Judge McCormick, and her cellphone and social media accounts were subjected to unnecessary and embarrassing investigation. (Perez Decl., ¶ 23; Odenbreit Decl., ¶¶ 65-66.) Following her deposition testimony, DIRECTV filed a motion to deny class certification and to find Ms. Perez inadequate to serve as class representative. (*See* Dkt. No. 278.)

Ms. Perez also endured an onslaught of accusations that she had been untruthful regarding her testimony and/or prior declarations and accused of destroying evidence in multiple publicly-available court filings. (*See, e.g.*, Dkt. Nos. 278, 326, 330). Immediately after her deposition, Ms. Perez's personal cellphone was confiscated and was not returned to her for at least five months. (Odenbreit Decl., ¶ 66; Perez Decl., ¶ 15.) The entire contents of her cellphone and social media accounts were the subject of unusually invasive review, exposing her personal life and thousands of private images of herself and her family members, including minor children, to the eyes of countless strangers. (Odenbreit Decl., ¶ 66, Perez Decl., ¶ 16.)

Plaintiffs learned that DIRECTV had a private investigator take photographs of Ms. Perez's former business establishment and residence, putting her reputation and the privacy of third parties at risk. (Odenbreit Decl., ¶ 68; Perez Decl., ¶ 18; *see*

- 34 -

Dkt. No. 425.) Ms. Perez also learned from her family members and former roommates some of them had received unwelcome visits from DIRECTV's investigators asking them questions regarding Ms. Perez and seeking their testimony against Ms. Perez. (Odenbreit Decl., ¶ 69; Perez Decl., ¶ 20.) Ms. Perez was further grilled for names and contact information for anyone who lived at her former residence as well as her former business' client names and contact information. (Odenbreit Decl., ¶ 69; Perez Decl., ¶ 14.) This was particularly troubling for Ms. Perez. (Perez Decl., ¶ 14.)

It is without question that, by bringing this lawsuit, her active participation in this litigation, and her willingness to endure the harsh light of DIRECTV's unending invasions into her privacy has allowed Class Counsel to vigorously prosecute this Action. In light of the substantial risks to her reputation and privacy, her incentive award is easily justified.

### ii.    Plaintiffs Marlys Nissen, Danny Nissen, Paul Holt, Gregory Laplante, and Joseph Angelo

Plaintiffs seek an Incentive Awards of $10,000 each for Plaintiffs Marlys Nissen, Danny Nissen, Paul Holt, Gregory LaPlante, and Joseph Angelo also significantly contributed to the prosecution of this case. (Odenbreit Decl., ¶ 71.) Plaintiffs believe if it were not for these additional Plaintiffs, this case would have devolved into a personal attack on Ms. Perez, taking away from the class claims and issues. (Odenbreit Decl., ¶ 71.) Each was aware of the scrutiny Ms. Perez endured and yet knowingly agreed to be placed in the forefront of this action taking significant time away from their respective businesses. (D. Nissen Decl., ¶ 9; M. Nissen Decl., ¶ 11; Angelo Decl., ¶ 16; LaPlante Decl., ¶ 11; and Holt Decl., ¶ 10-11.) They spoke and met with Class Counsel, scoured their records, took photographs of their businesses and stood ready to travel to be deposed. (Perez Decl., ¶ 11, 23; D. Nissen Decl., ¶ 9; M. Nissen Decl., ¶ 11; Angelo Decl., ¶ 16; LaPlante Decl., ¶ 11; and Holt Decl., ¶ 10.) They have also provided invaluable information

that counsel believes brought this Action to the settlement table, and preserved the class action. (Odenbreit Decl, ¶ 71; *see* Dkt. No. 368.) When Plaintiffs filed their Fourth Amended Complaint adding 5 additional Representative Plaintiffs, DIRECTV filed counterclaims against Plaintiffs Angelo, Laplante and Holt. (Dkt. No, 513.) DIRECTV also filed a Motion to Dismiss Marlys and Danny Nissen. (Dkt. No. 511) All of them have spent an extraordinary amount of time on this case and have expressed their willingness to subject themselves and their businesses to ongoing invasion and scrutiny. (Odenbreit Decl., ¶ 71; Perez Decl., ¶¶ 12-22; D. Nissen Decl., ¶ 9; M. Nissen Decl., ¶ 11; Angelo Decl., ¶¶ 15-16; Laplante Decl., ¶¶ 10-11; Holt Decl., ¶ 9-11.)

The work put in and risk taken by all of the Class Representatives justify the requested incentive awards.

### iii. Proportion of Incentive Awards Relative to Settlement Amount and Class Member Payments

With regard to incentive awards, the court also evaluates the amount of the award in relation to the total settlement and class member payments. *Monterrubio*, *supra*, 291 F.R.D. at p. 462. Nonetheless, a higher award may be appropriate where class representatives expend significant time and effort on the litigation and face the risk of retaliation or other personal risks; where the class overall has greatly benefitted from the class representatives' efforts; and where the incentive awards represent an insignificant percentage of the overall recovery. *In re Wells Fargo & Company Shareholder Derivative Litigation* (N.D. Cal. 2020) 445 F.Supp.3d 508, 534 [approving $25,000 incentive award for each named plaintiff). Here, the incentive awards collectively ($80,000) are less than 1% of the total settlement, far less than the 6% rejected in *Staton*, *supra*, 327 F.3d 938. Therefore, under this measure the requested Awards are reasonable.

As discussed above, Settlement Class Members will receive a minimum of approximately 12.7% of the amount they paid to the Lonstein Defendants. However,

because there will be multiple distributions to any Settlement Class Member who cashes their original check, the amount of the total Settlement Benefit to each Settlement Class Member cannot yet be determined to compare to the requested Incentive Awards, but will surely be higher. (Odenbreit Decl., ¶ 72.)

### 9. The Proposed Settlement Administrator Will Competently Carry Out its Duties

The Signing Parties have agreed to Simpluris as the Settlement Administrator in this Action, subject to the Court's approval. Selection of a Settlement Administrator was the subject to significant negotiation based on objective criteria. (Odenbreit Decl., ¶ 73.) Simpluris has provided a signed declaration which demonstrates its competence in carrying out the duties of a settlement administrator. (*See* Bui Declaration provided herewith.) As such, the Court should approve Simpluris as the Settlement Administrator.

### VI. THE PROPOSED NOTICE IS APPROPRIATE AND SATISFIES DUE PROCESS

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(c)(2)(B). However, actual notice is not required. *See Silber v. Mabon* (9th Cir. 1994) 18 F.3d 1449, 1454.

Pursuant to Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A., the proposed Notice includes, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance individually or through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(c)(3)." Fed. Rules Civ.Proc., rule

MEMORANDUM OF POINTS AND AUTHORITIES

23, 28 U.S.C.A.(c)(2)(B); *see* Odenbreit Decl., Ex. 1, Exs. A-C.

The Notice in this case will be sent by email or U.S. Mail. (Odenbreit Decl., Ex. 1, ¶¶ 4.1 – 4.9.) Class Members will have multiple ways to receive the Notice: via email or a postcard notice sent via mail will provide Class Members with reference to a dedicated website and toll-free number and a unique ID number to view their estimated initial Settlement Benefit. (Odenbreit Decl., ¶ 84.) The website will provide information to potential Class Members which will contain the Notice, settlement documents, instructions on how to exclude themselves from the Settlement or object to the Settlement, answers to frequently asked questions, and once filed, review Plaintiffs' Application for Attorneys' Fees, Costs and Incentive Payments. (Odenbreit Decl., Ex. 1, Exs. A-C.) The long form Notice will also be available in 5 languages: English, Spanish, Vietnamese, Mandarin and Korean. (Odenbreit Decl., Ex. 1, ¶ 4.11.)

The Settlement Administrator will also provide to Plaintiffs and DIRECTV analytics from the emailed and mailed notices revealing the likelihood of delivery by of the notice. (Bui Decl., ¶ 6.) The Settlement Administrator will search various databases and postal service records in pursuit of more current contact information if notice by email or mail fails to result in delivery. (*Id*.)

The Supreme Court has found notice to be sufficient if the notice is "reasonably calculated ... to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 314. Here notice by email, and alternatively, by mail, satisfies the "reasonably calculated" standard because the Lonstein Defendants contacted Class Members either by email or mail and the Lonstein records are being used to obtain contact information for notice purposes. *See D.Light Design, Inc. v. Boxin Solar Co., Ltd.* (N.D. Cal., Feb. 6, 2015, No. C-13-5988 EMC) 2015 WL 526835, at *3 (finding service by email appropriate, in part, because it was a past mode of communication between the parties and the

MEMORANDUM OF POINTS AND AUTHORITIES

emails did not bounce back as undeliverable); Shelly CLARK, Plaintiff, v. PEKIN INSURANCE, Defendant., 2016 WL 1178509, at *16 (C.D. Cal. Oct, 24, 2016 (postcard notice acceptable).

Finally, the recent amendments to Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(c)(2)(B) explicitly indicate that "electronic means" are appropriate to disseminate class notices, and the relevant Advisory Committee Note commends courts to "consider the capacity and limits of current technology, including class members' likely access to such technology." Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A. at Committee Notes on Rules – 2018 Amendment. Thus, the Signing Parties' proposed plan for providing notice by email and settlement website are sufficient as to known Class Members. Accordingly, the Court should find that the proposed notice procedure satisfies Due Process.

## VII.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The last step in the settlement approval process is the formal final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed settlement. At that hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of Settlement approval; and Class Members or their counsel may be heard in support of or in opposition to the Settlement Agreement. Plaintiffs propose that the final approval hearing be held as close to 130 after entry of preliminary approval, (Odenbreit Decl., Ex. 1, ¶ 7.1) or a date thereafter convenient for the Court.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court preliminarily approve the proposed Settlement, affirm certification pursuant to the Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A. for settlement purposes, appoint Plaintiffs Doneyda Perez, Danny Nissen, Marlys Nissen, Joseph Angelo, Gregory Laplante, and Paul Holt as Class Representatives, affirm Plaintiffs' attorneys, Kevin Mahoney, Katherine J. Odenbreit, and Lisa Clay as Class Counsel, approve the form of the

MEMORANDUM OF POINTS AND AUTHORITIES

Notice and order it be provided to the Class, appoint Simpluris as the Settlement Administrator, and set a final approval hearing date.

Dated: March 22, 2022                    **MAHONEY LAW GROUP, APC**
                                         **LISA L. CLAY, ATTORNEY AT LAW**

                                         _/s/Katherine J. Odenbreit_
                                         Kevin Mahoney, Esq.
                                         Katherine J. Odenbreit, Esq.
                                         Kate Nicole G. Blanco, Esq.
                                         Lisa L. Clay, Esq. (_Pro Hac Vice_)
                                         Attorneys for Plaintiffs and the Class

MEMORANDUM OF POINTS AND AUTHORITIES