Kevin Mahoney (SBN: 235367)
kmahoney@mahoney-law.net
Katherine J. Odenbreit (SBN: 184619)
kodenbreit@mahoney-law.net
Kate Nicole G. Blanco (SBC: 31344)
Kblanco@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 East Ocean Blvd., Suite 814
Long Beach, CA  90802
Telephone: (562) 590-5550
Facsimile: (562) 590-8400

Lisa L. Clay (*Pro Hac Vice*)
lisa@clayatlaw.com
**LISA L. CLAY, ATTORNEY AT LAW**
2100 Manchester Road, Suite 1612
Wheaton, IL 60187
Telephone: (630) 456-4818

Attorneys for Plaintiffs DONEYDA PEREZ, DANNY NISSEN, MARLYS NISSEN, JOSEPH ANGELO, GREGOGRY LAPLANTE and PAUL HOLT, individually and on behalf of their respective businesses, and on behalf of all others similarly situated.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| DONEYDA PEREZ as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTV GROUP HOLDINGS, LLC, a Delaware Corporation, LONSTEIN LAW OFFICES, P.C., a New York Professional Corporation; SIGNAL AUDITING, INC., a New York Corporation, JULIE COHEN LONSTEIN and WAYNE M. LONSTEIN,<br><br>Defendants. | Case No.  8:16-CV-01440-JLS-DFM<br><br>**DECLARATION OF JOSEPH ANGELO IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:    August 19, 2022<br>Time:   10:30 a.m.<br>Dept.:  8A<br><br>Fourth Amended Complaint Filed: December 17, 2020 |

# DECLARATION OF JOSEPH ANGELO

I, Joseph Angelo, hereby declare as follows:

1. This Declaration is based on my personal knowledge. I am over the age of 18 years old, and if called as a witness, I would and could completely testify to these facts.

2. I am the owner of Stuft Surfer Café, a small "snack shack" located at 101 15th Street, Newport Beach, California. I have owned and operated this business continuously since 1998.

3. In approximately 2007 or 2008 I received an advertising flyer from DIRECTV or a DIRECTV authorized representative soliciting services for local businesses. I contacted the number on the advertisement and told the representative I was interested in DIRECTV services for my business. A DIRECTV representative came to my business to discuss available packages. The representative installed a satellite dish on the roof of my business and installed receiver boxes in both the business and my residence, which at that time was next door to the business.

4. The installer and I discussed the location of the TVs in the business and in my home. One was in the Stuft Surfer and 3 were in my home. The satellite dish for all of the services was installed on the roof of the business by the DIRECTV representative.

5. On or about March 18, 2015 I received a letter from Lonstein Law Office ("LLO") accusing me of unauthorized use of DIRECTV services. Around the same time I also began receiving telephone calls from LLO. The LLO representative that I spoke with over the phone accused me of stealing services from DIRECTV and told me I would be liable for over $100,000 in damages if I did not resolve the issue with them. I was told by LLO that someone observed the DIRECTV programming in my business on about February 19, 2015 and took pictures and video. I was sent a copy of a form "affidavit" from someone claiming to have observed DIRECTV programming showing in the business. I tried to explain to the representative that it was DIRECTV that solicited the services to my

business, came to my business and installed the services there. I further told LLO the DIRECTV representative drove a van with "DIRECTV" signage on the side of the van. The LLO representative disregarded my protests and told me that the person who signed me up for the services is an independent contractor so DIRECTV is not bound by promises made by the representative. Shortly after March 2015, DIRECTV disconnected the service at both my home and business.

6. Just after receiving the letter from LLO I received an unsolicited call from a DIRECTV representative offering DIRECTV services. I explained the situation to this representative and he advised me to establish a commercial account and the company would then cancel the claims by LLO. I opened the commercial account with this representative and had the service for 3 days when DIRECTV or LLO shut it off.

7. I am a divorce attorney and asked my partner to represent me in this matter. My attorney was told the service was turned off due to the pending claim.

8. In early April my attorney wrote to LLO stating that I was willing to maintain DIRECTV services with a commercial account for a term of 3 years. In response, on April 13, 2015 my attorney was sent a letter from LLO claiming that I deliberately took actions to steal DIRECTV services and that I "will" be liable for DIRECTV's attorney fees as well as my own. The letter also references a website which LLO claims includes judgments they received with regard to DIRECTV's efforts to curtail this issue. The letter also offered to "settle" for $10,000 or $7,500 if I agreed to also become a business subscriber.

9. After several calls between my attorney and LLO that did not result in a resolution, in April 2015, LLO sent my attorney a complaint claiming it intended to file a federal lawsuit against me. The letter also said I was liable under a "strict liability statute" and would be liable for DIRECTV's attorneys' fees and costs. The complaint also sought damages in excess of $100,000, attorney's fees and costs and injunctive relief even though DIRECTV/LLO had already shut off my service.

- 2 -
DECLARATION OF JOSEPH ANGELO

10. I declined to pay them money in response to this letter. To my knowledge, the complaint was never filed.

11. In June 2015 I sent a letter to DIRECTV Customer Service explaining that it was a DIRECTV representative that came to the business and installed the services in the business. I also explained that the service had been turned off for 3 months and I have been unable to resolve the matter with LLO. I further told DIRECTV I opened a commercial account and that the account was shut down after 3 days. I informed DIRECTV I wanted to remain a customer, but if this matter was not able to be resolved I would switch to Dish Network. No one from DIRECTV ever responded.

12. After additional conversations between my attorney and LLO I agreed to pay $2,500 and sign up for a commercial account. I did not see any other choice and it was costing me additional money to have my partner work on this matter.

13. LLO previously rejected my offer to simply convert my account to a DIRECTV commercial account and even shut off the commercial service I established on my own. LLO repeatedly kept demanding payment from me.

14. I know I did nothing illegal and I believe DIRECTV has utilized this scheme of soliciting services and later claiming the services to be used illegally for the purpose of extorting money from me. Because I am an attorney, I recognized that the cost of fighting this scheme would be far in excess of the $2,500 I paid and the time and lost business required for me to fight the claim.

15. Even before I was named as a Class Representative I made myself available to my attorneys at their request. I spent a significant number of hours searching for and reviewing documents in my possession and reviewing them with my attorneys. I also spent time reviewing documents produced by Defendants and discussing them with my attorneys. I participated in many telephone calls with my attorneys, reviewed discovery related to documents in my possession and many calls discussing the mediation and settlement in this matter. I estimate that I

personally spent 30-35 hours actively pursuing and assisting my attorneys in this litigation. This was time taken away from my business and clients.

16. When I agreed to become a Class Representative, I understood that I have a fiduciary duty to the class to act on their behalf and not in my own interests. I further understood that I would be required to actively participate in the litigation and I have maintained regular communication with my attorneys and have assisted when asked. I knew and appreciated the risk I was taking in agreeing to become a class representative in this case. I appreciated that Defendants were vigorously defending the action and knew my business might be subjected to investigation and scrutiny. I knew I would be required to sit through days of deposition and would be required to devote a significant amount of time to the litigation. I further knew the risk of potentially being liable for litigation costs associated with defending the case in the event a judgment was awarded to Defendants. I took those risks willingly to secure recovery for the class. I have no known conflicts of interest with the class members.

17. During settlement negotiations I understood the risks of moving forward with further class certification efforts and potential trial. Based on the substantial information provided and conversations with my attorneys, I believe the pending settlement terms are fair, reasonable, adequate and in the best interests of the class.

18. I understand that this declaration is submitted in support of this court's consideration of Plaintiffs' Motion for Approval of the Settlement. I have reviewed the terms of the Settlement and discussed them with Ms. Odenbreit. I support this Settlement and believe it provides a reasonable recovery for the class members.

19. I understand that as part of the Settlement, a request will be made on my behalf for a service/incentive award in the amount of $10,000.00. I understand that I am not guaranteed this payment and that it must be approved by the Court. When I agreed to become a class representative no one promised me any additional

1  payment or discussed with me any certain amount and it has been made clear to me
2  such request must be approved by the Court. I believe in light of the foregoing that
3  this request is reasonable.

4     20.    While I did not type this declaration, a copy was provided to me before
5  I signed and I was given the opportunity to make changes. The language of the
6  declaration has been drafted by one of my attorneys based on my verbal statements.
7  I adopt this declaration as my own statement.

   I declare under penalty of perjury under the laws of the United States and the
8  State of California that the foregoing is true and correct.

   Dated this 21st day of March, 2022 at Newport Beach, California.



JOSEPH ANGELO