Kevin Mahoney (SBN: 235367)
kmahoney@mahoney-law.net
Katherine J. Odenbreit (SBN: 184619)
kodenbreit@mahoney-law.net
Kate Nicole G. Blanco (SBC: 31344)
Kblanco@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 East Ocean Blvd., Suite 814
Long Beach, CA  90802
Telephone: (562) 590-5550
Facsimile: (562) 590-8400

Lisa L. Clay (*Pro Hac Vice*)
lisa@clayatlaw.com
**LISA L. CLAY, ATTORNEY AT LAW**
2100 Manchester Road, Suite 1612
Wheaton, IL 60187
Telephone: (630) 456-4818

Attorneys for Plaintiff DONEYDA PEREZ, DANNY NISSEN, MARLYS NISSEN, JOSEPH ANGELO, GREGOGRY LAPLANTE and PAUL HOLT, individually and on behalf of their respective businesses, and on behalf of all others similarly situated.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| DONEYDA PEREZ as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTV GROUP HOLDINGS, LLC, a Delaware Corporation, LONSTEIN LAW OFFICES, P.C., a New York Professional Corporation; SIGNAL AUDITING, INC., a New York Corporation, JULIE COHEN LONSTEIN and WAYNE M. LONSTEIN,<br><br>Defendants. | Case No. 8:16-CV-01440-JLS-DFM<br><br>**DECLARATION OF PAUL HOLT IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date:   August 19, 2022<br>Time:   10:30 a.m.<br>Dept.:  8A<br><br>Third Amended Complaint Filed: February 20, 2019 |

**DECLARATION OF GREGORY LAPLANTE**

I, Paul Holt hereby declare as follows:

1. This Declaration is based on my personal knowledge. I am over the age of 18 years old, and if called as a witness, I would and could completely testify to these facts.

2. I am the owner of 4 Dice Restaurant located at 1900 N. Highway 79, #167, Fordyce, Arkansas 71742. My family has owned and operated this business continuously since 1967. I took over the business in 2000.

3. In or around 2015 or 2016 I contacted DIRECTV to have services installed in my residence located in Fordyce approximately one (1) mile away from my business. A DIRECTV representative came to my home to install the service. While the representative was there, he asked me about my profession. When the DIRECTV representative found out I own a restaurant, he informed me that he could also install DIRECTV services in the restaurant under the same account. I inquired whether or not that was allowed, and the DIRECTV representative unequivocally told me several times that it was permitted by DIRECTV and the services would be billed on the same invoice. Because the DIRECTV representative assured me that the residential and business services could be combined in one DIRECTV account, I had no reason to believe it was not proper.

4. About a year and half later, in early 2017, I received a call from "Lonstein Law Office." I did not recognize the business so I did not take the call. However, I conducted an internet search of "Lonstein Law" and discovered the horror stories from small businesses being pursued by this law firm. Although I did not believe I did anything wrong based on the representations of the DIRECTV representative, I promptly contacted DIRECTV and opened a commercial account for the restaurant thinking that would remedy the situation.

5. After receiving the call from Lonstein Law Office, I recalled about 3 weeks earlier I received a call from someone at the restaurant asking if he and his

father could watch a particular television program in the restaurant because they were travelling to the area and it was his dad's favorite show. I thought this was very odd so I noted the phone number. I now believe this was the person who came to the business and took a video and pictures which Lonstein Law Office later sent to me.

6. After securing a commercial account for the restaurant, I received another call from the Lonstein Law Office. The Lonstein representative asked me for my DIRECTV account number and was very surprised when it came up as a commercial account. The Lonstein representative asked me how I knew to open a commercial account because they had sent someone to the business to take a video of the service broadcasting in the business. Even though I had a valid commercial account, that did not stop the Lonstein representative from demanding from me $10,000 to keep the commercial account or $15,000 if I cancelled the commercial account. The representative told me that if I paid them, they would not pursuie an action in federal court. During follow up calls with the Lonstein Law Office, the amount of the demand went down to $7,500 with installments or $6,500 if I made a one-time payment.

7. The threat to sue me in federal court scared me because I did not do anything wrong. I retained an attorney and paid him $2,000 to assist me with negotiating a settlement to resolve the matter. Ultimately, I paid the Lonstein Law Office $3,000 by ACH debit wire from my bank account.

8. The entire situation was very upsetting to me. I believed my account was set up for use in my business because the DIRECTV representative installed the service in my business and told me I could have both residential and commercial services on one account. I believe I did nothing wrong and I believe DIRECTV, Lonstein Law Office, and the auditing company utilized this scheme of soliciting services and later claiming the services to be used illegally for the purpose of extorting money from small businesses like mine.

9. Even before I was named as a Class Representative I made myself available to my attorneys in this present case, including Ms. Katherine J. Odenbreit, at their request. I spent a significant number of hours searching for and reviewing documents in my possession and reviewing them with my attorneys. I also spent time reviewing documents produced by Defendants and discussing them with my attorneys. I participated in many telephone calls with my attorneys, reviewed discovery related to documents in my possession and many calls discussing the mediation and settlement in this matter. I estimate that I personally spent 55 hours actively pursuing and assisting my attorneys in this litigation. This was time taken away from my business and clients.

10. When I agreed to become a Class Representative, I understood that I have a fiduciary duty to the class to act on their behalf and not in my own interests. I further understood that I would be required to actively participate in the litigation so I have maintained regular communication with my attorneys and have assisted when asked. I knew and appreciated the risk I was taking in agreeing to become a Class Representative in this case. I appreciated that Defendants were vigorously defending the action and knew my business may be subject to investigation and scrutiny. I also understood that I would be required to sit through days of deposition and devote a significant amount of time to the litigation.

11. I further knew the risk of potentially being liable for litigation costs associated with defending the case in the event a judgment was awarded to Defendants. I took those risks willingly to secure recovery for the class. I also am aware that DIRECTV filed a counterclaim against me and that if that claim goes forward, I may be required to pay out of pocket for legal representation and that if I am unsuccessful in the defense of that counterclaim, I could be required to pay DIRECTV's costs. Despite the filed counterclaim, I was still willing to pursue this case as a Class Representative.

12. During settlement negotiations I understood the risks of moving

forward with further class certification efforts and potential trial. Since the settlement negotiations lasted over a year, I maintained in regular contact with my attorneys during this time to receive updates on the negotiations and status of the case. Based on the substantial information provided and conversations with my attorneys, I believe the pending settlement terms are fair, reasonable, adequate and in the best interests of the class.

13. I understand that this declaration is submitted in support of this Court's consideration of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement. I have reviewed the terms of the Settlement and discussed them with Ms. Odenbreit. I support this Settlement and believe it provides a reasonable recovery for the Class Members.

14. I understand that as part of the Settlement, a request will be made on my behalf for a service/incentive award in the amount of $10,000.00. I understand that I am not guaranteed this payment and that it must be approved by the Court. When I agreed to become a Class Representative no one promised me any additional payment or discussed with me any certain amount that would be requested. It was further made clear to me such request must be approved by the Court. I have no known conflicts of interest with the class. I have not pursued any remedies against any Defendants outside of this case. I believe in light of the foregoing that this request is reasonable.

15. While I did not type this declaration, a copy was provided to me before I signed and I was given the opportunity to make changes. The language of the declaration has been drafted by my attorney Ms. Odenbreit based on my verbal statements. I adopt this declaration as my own statement.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

1     Dated this <sup>Day19</sup>____ day of March, 2022 at Fordyce, Arkansas.

DocuSigned by:

*Paul Holt*

—52640353713E4D3...

Paul Holt

- 5 -
DECLARATION OF PAUL HOLT