1  Kevin Mahoney (SBN: 235367)
   kmahoney@mahoney-law.net
2  Katherine J. Odenbreit (SBN: 184619)
   kodenbreit@mahoney-law.net
3  Kate Nicole G. Blanco (SBC: 31344)
   Kblanco@mahoney-law.net
4  **MAHONEY LAW GROUP, APC**
   249 East Ocean Blvd., Suite 814
5  Long Beach, CA  90802
   Telephone: (562) 590-5550
6  Facsimile: (562) 590-8400

7
   Lisa L. Clay (*Pro Hac Vice*)
8  lisa@clayatlaw.com
   **LISA L. CLAY, ATTORNEY AT LAW**
9  2100 Manchester Road, Suite 1612
   Wheaton, IL 60187
10 Telephone: (630) 456-4818

11
12 Attorneys for Plaintiffs DONEYDA PEREZ, DANNY NISSEN, MARLYS NISSEN,
   JOSEPH ANGELO, GREGOGRY LAPLANTE and PAUL HOLT, individually and
13 on behalf of their respective businesses, and on behalf of all others similarly situated.

14          **UNITED STATES DISTRICT COURT**

15      **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

16 DONEYDA PEREZ as an individual and      Case No. 8:16-CV-01440-JLS-DFM
   on behalf of all others similarly situated,
17                                          **DECLARATION OF GREGORY**
                                            **LAPLANTE IN SUPPORT OF**
18 Plaintiff,                               **MOTION FOR PRELIMINARY**
                                            **APPROVAL OF SETTLEMENT**
19        v.
                                            Date:   August 19, 2022
20                                          Time:  10:30 a.m.
   DIRECTV GROUP HOLDINGS, LLC, a           Dept.:  8A
21 Delaware Corporation, LONSTEIN
   LAW OFFICES, P.C., a New York
22 Professional Corporation; SIGNAL         Fourth Amended Complaint Filed:
   AUDITING, INC., a New York               December 17, 2020
23 Corporation, JULIE COHEN
   LONSTEIN and WAYNE M.
24 LONSTEIN,

25
26 Defendants.

27

28

DECLARATION OF GREGORY LAPLANTE

DocuSign Envelope ID: 27D8BBFC-68B1-4188-8886-3BC273C961EE

## DECLARATION OF GREGORY LAPLANTE

I, Gregory Laplante hereby declare as follows:

1.      This Declaration is based on my personal knowledge. I am over the age of 18 years old, and if called as a witness, I would and could completely testify to these facts.

2.      I have owned and operated G and G Smog Test Center, d/b/a G and G Smog Only, located at 460 Tennessee Street, Redlands, California, 92373 since July of 2000.

3.      Prior to being solicited for DIRECTV services in my business, I did not have television programming at the business, just a TV monitor that was rarely used. I had been a residential customer of DIRECTV for many years before DIRECTV services was installed at my business. My wife and I had moved our DIRECTV services from our prior home address in Victorville to our new home in Calimesa in November of 2012. I am not sure whether that account was in my name or my wife's but it is clear DIRECTV was able to "link" them as they promised based on the facts described below.

4.      In late August or early September of 2014 one of my customers, wearing a DIRECTV hat and driving a DIRECTV van, came to the business to solicit DIRECTV services. This customer/DIRECTV representative advised me that DIRECTV could "link" a new receiver to my existing residential account; all I had to do was purchase a receiver, which I did that same day or maybe the next. The DIRECTV representative told me to call DIRECTV, order a receiver and contact him when the receiver came in. I ordered the receiver, called the DIRECTV representative and he installed the receiver I had ordered, along with a satellite dish, at the business. He didn't ask me to sign any paperwork, didn't advise me of any additional fees or changes to my account, and never said anything about there being a difference between commercial and residential programming.

5.      Sometime after May 11, 2015 I received a letter from the Lonstein Law

DECLARATION OF GREGORY LAPLANTE

Office ("LLO"). Pictures of my televisions were included with that letter. I immediately contacted an attorney that offered to represent me for negotiation purposes, not litigation, for a flat fee of $1500. The lawyers told me that LLO "just wanted money" and that it would cost me more in legal fees to defend myself if I were to proceed with the lawsuit instead of negotiating a settlement of the case.

6.     A few days after my lawyer contacted LLO to discuss the matter, DIRECTV shut off services at both my home and business. I immediately disconnected all of the equipment in both my home and business and obtained services from a different provider. Around the same time, my lawyers informed me that LLO was demanding that I pay them $7500 plus agree to a commercial account or $10,000 if I would not agree to the commercial account. I wanted nothing more to do with DIRECTV and authorized my lawyers to offer $7500 as long as I would not have to maintain a customer relationship with DIRECTV.

7.     LLO agreed, and I authorized my attorney to sign a settlement agreement. I sent an initial payment of $1500 and two more payments of $3000 via check to my attorneys, who sent those checks to LLO via U.S. mail.

8.     To add insult to injury, DIRECTV reactivated my account at some point after the initial disconnect without my knowledge, and found more ways to charge me additional fees after I had signed an agreement I believed terminated all dealings with DIRECTV. I had no way of knowing they were sending a signal because I had disabled all of the equipment and obtained another provider. I contacted LLO in July of 2016 after I received a bill for over $300. Even though they acknowledged the account never should have been reactivated, DIRECTV never fixed the issue. I was so disgusted with this entire situation I paid these improper amounts just so I could be done with them because they were threatening to send me to collection.

9.     I believe DIRECTV has utilized this scheme of soliciting services and later claiming the services to be used illegally for the purpose of extorting money

from small businesses like mine.

10.     Even before I was named as a Class Representative, I made myself available to my attorneys in this present case, including Ms. Katherine J. Odenbreit, at their request. I spent a significant number of hours searching for and reviewing documents in my possession and reviewing them with my attorneys. I also spent time reviewing documents produced by Defendants and discussing them with my attorneys. I participated in many telephone calls with my attorneys, reviewed discovery related to documents in my possession and many calls discussing the mediation and settlement in this matter.  I estimate that I personally spent 75 hours actively pursuing and assisting my attorneys in this litigation. This was time taken away from my business and clients.

11.     When I agreed to become a Class Representative, I understood that I have a fiduciary duty to the class to act on their behalf and not in my own interests. I further understood that I would be required to actively participate in the litigation so I have maintained regular communication with my attorneys and have assisted when asked. I knew and appreciated the risk I was taking in agreeing to become a Class Representative in this case. I appreciated that Defendants were vigorously defending the action and knew my business might be subject to investigation and scrutiny. I also understood that I would be required to sit through days of deposition and devote a significant amount of time to the litigation.

12.     I further knew the risk of potentially being liable for litigation costs associated with defending the case in the event a judgment was awarded to Defendants. I took those risks willingly to secure recovery for the class. I also am aware that DIRECTV filed a counterclaim against me and that if that claim goes forward, I may be required to pay out of pocket for legal representation, and that if I am unsuccessful in the defense of that counterclaim, I could be required to pay DIRECTV's costs. Despite the filed counterclaim, I was still willing to pursue this case as a Class Representative.

DECLARATION OF GREGORY LAPLANTE

13.     During settlement negotiations I understood the risks of moving forward with further class certification efforts and potential trial. Since the settlement negotiations lasted over a year, I maintained regular contact with my attorneys during this time to receive updates on the negotiations and status of the case. Based on the substantial information provided and conversations with my attorneys, I believe the pending settlement terms are fair, reasonable, adequate and in the best interests of the class.

14.     I understand that this declaration is submitted in support of this Court's consideration of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement. I have reviewed the terms of the Settlement and discussed them with Ms. Odenbreit. I support this Settlement and believe it provides a reasonable recovery for the Class Members.

15.     I understand that as part of the Settlement, a request will be made on my behalf for a service/incentive award in the amount of $10,000.00. I understand that I am not guaranteed this payment and that it must be approved by the Court. When I agreed to become a Class Representative, no one promised me any additional payment or discussed with me any certain amount that would be requested. It was further made clear to me such request must be approved by the Court. I have no known conflicts of interest with the class. I have not pursued any remedies against any Defendants outside of this case. I believe in light of the foregoing that this request is reasonable.

16.     While I did not type this declaration, a copy was provided to me before I signed and I was given the opportunity to make changes. The language of the declaration has been drafted by one of my attorneys based on my verbal statements. I adopt this declaration as my own statement.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Dated this ___18___ day of March, 2022 at Redlands, California.

Gregory Laplante

DECLARATION OF GREGORY LAPLANTE