UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CASE NO. 8:16-cv-01440-JLS-DFM

DONEYDA PEREZ V. DIRECT GROUP HOLDINGS, LLC, et al.

**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DOC. 620)**

Before the Court is Plaintiffs' Motion for Preliminary Approval of Class Settlement.  (Mot., Doc. 620; Mem., Doc. 619.)  Defendants DIRECTV, LLC, DIRECTV Group Holdings, LLC, and DIRECTV Holdings, LLC (collectively "DIRECTV") have partially opposed the Motion.  (Opp., Doc. 621.)  Non-settling Defendants Lonstein Law Offices, P.C., Julie Cohen Lonstein, and Wayne D. Lonstein (collectively the "Lonstein Defendants") have also filed an objection to the Motion.  (Obj., Doc. 624.)  Plaintiffs have filed a response to the Lonstein Defendants' objection as has DIRECTV.  (Pl Response, Doc. 626; DIRECTV Response, Doc. 627.)

Plaintiffs' Motion asks the Court to: (1) certify the class for settlement purposes only; (2) appoint Doneyda Perez, Danny Nissen, Marlys Nissen, Joseph Angelo, Gregory Laplant, and Paul Hold as Class Representatives; (3) appoint Kevin Mahoney and Katherine J. Odenbreit of Mahoney Law Group, APC and Lisa L. Clay as Class Counsel; (4) approve Simpluris, Inc. as the Settlement Administrator; (5) approve the form and content of the proposed class notices; (6) approve the proposed opt-out and objection procedures; (7) direct DIRECTV to furnish to the Settlement Administrator within ten (10) calendar days of the entry of this Order the "Platt Spreadsheets" as defined in the Settlement Agreement ; (8) direct DIRECTV to deposit the Total Settlement Fund into a Qualified Settlement Fund with the Settlement Administrator within thirty (30) calendar days of the entry of this Order; and (9) set a final approval hearing.  (Mot. at 1-2.)

Having reviewed and considered the papers and heard oral argument, the Court GRANTS Plaintiff's Motion and sets a fairness hearing for **January 6, 2023, at 10:30 a.m.**

## I.    BACKGROUND

On August 4, 2016, Plaintiff Doneyda Perez filed this class action alleging "that DIRECTV and other Defendants engaged in a scheme to defraud small,

2

minority-owned businesses by selling them commercial satellite cable television service, only to later claim that the businesses were not authorized to display DIRECTV in a commercial establishment, and then threaten the business owners with litigation to extract a settlement payment." (*See* Order on Mot. Compel Arbitration, Doc. 40, at 1; *see also* Fourth Amended Compl. ("FAC"), Doc. 498, ¶¶ 2-25.)

This Court denied DIRECTV's Motion to Compel Arbitration, and the Ninth Circuit affirmed that decision on DIRECTV's appeal. (*See* Order on Mot. Compel Arbitration; Ninth Circuit Decision, Docs. 83, 84.) While Defendants' appeal was pending, Defendants sought multiple stays and extensions. Ultimately, DIRECTV answered the Complaint and the Lonstein Defendants filed a Motion to Dismiss. (*See* Docs. 105, 106.) The Court denied the Motion to Dismiss and vacated the stay on July 24, 2019. (*See* Docs. 133, 135.)

The Parties commenced written discovery in the summer and fall of 2019 and engaged in what Plaintiffs have described as a "dizzying array of discovery disputes." (*See* Mem. at 3.) The Parties also filed various motions, including a Motion to Deny Class Certification, a Motion to for Leave to Amend the Scheduling Order, Add Additional Parties, and for Leave to File a Fourth Amended Complaint, and a Motion for Sanctions. (*See* Docs. 278, 368, 461.) After multiple rounds of mediation, multiple rounds of briefing on sanctions, and multiple appointments of court-appointed experts, a settlement agreement was finally reached between DIRECTV and Plaintiffs. (*See* Mem. at 5-6.) The Lonstein Defendants were not party to the settlement reached. (*See id.* at 6 (citing Odenbreit Decl., Doc. 619-1, ¶ 20).)

### A. The Class and Class Members

The proposed "Settlement Class" is defined as:

> All businesses and business owners in the United States who had DIRECTV services installed in their commercial establishment; who were subsequently audited by Defendant Signal Auditing, Inc. ("Signal"); and who at any time on or after the day four years prior to the date on which the original Complaint was filed (August 4, 2012) through the date the Court grants preliminary approval of the Settlement, received communications from the Lonstein Law Offices, P.C., Wayne Lonstein and/or Julie Cohen Lonstein on behalf of DIRECTV seeking money for allegedly unauthorized use of DIRECTV licensed programming, including NFL Sunday Ticket or any other DIRECTV-related programming.

(Odenbreit Decl. ¶ 22; Settlement Agreement, Ex. 1 to Odenbreit Decl., Doc. 619-1, at ECF 38, ¶ 2.36.)

### B. Settlement Consideration

DIRECTV has agreed to pay nine million four hundred thousand dollars ($9,400,000.00) ("Total Settlement Fund") to resolve all claims that were alleged in this action or any subsequent amendment, or that could have been alleged based on the facts alleged in this action, and for Class Members release of claims, as described below. (*See* Settlement Agreement ¶ 2.40.) The Settlement Agreement distributes payments as follows:

- The "Net Settlement Fund" means the Total Settlement Fund of Nine Million Four Hundred Thousand dollars ($9,400,000.00) minus the payment of:

- Settlement Administration Costs in the amount not to exceed seventy-five thousand dollars ($75,000). The Settlement Administrator will calculate each Settlement Class Members' pro-rate share of the Settlement, as set forth below;

- Class Representatives' Incentive Awards, for a total of eighty thousand dollars ($80,000);

- Award of attorneys' fees for a total of three million one hundred thirty-three thousand three hundred thirty-three dollars and thirty-three cents ($3,133,333.33); and

- Award of litigation costs for a total of one hundred fifty-five thousand dollars and ninety-four cents ($155,000.04).

(Mem. at 7 (citing Settlement Agreement ¶ 6.1).)

Additionally, the Settlement Agreement provides for the following non-monetary relief:

- DIRECTV agrees not to retain the Lonstein Law Office or any of the Lonstein Defendants in any capacity for potential claims of commercial misuse by DIRECTV's customers going forward; and

- DIRECTV agrees to include a statement in its order confirmation documentation to customers that highlights that residential service may be used for residential purposes only, and it may not be used in commercial settings.

(*Id.* (citing Settlement Agreement ¶ 5.1).)

### C. Notice Plan

Substantial work has been done already to identify potential Class Members. A neutral expert appointed by the Court, Charlie Platt, has previously identified potential Class Members by reviewing cases where the Lonstein Law Offices likely contacted an individual or business regarding alleged commercial misuse of DIRECTV's services and/or that individual or business paid something to Lonstein Law Offices. (Odenbreidt Decl. ¶ 24.) The resulting data, referred to as the "Platt Spreadsheet," identified 23,554 records. (*Id.* ¶ 25.) After further analysis by Plaintiffs' expert, Eric Lee, the Parties have identified 8,185 businesses/business

owners who were contacted by the Lonstein Law Offices but paid no money or an amount of $20 or less and 8,548 businesses/business owners who were contacted by Lonstein Law Offices and paid more than $20 to Lonstein Law Offices.  (Lee Decl., Doc. 619-5, ¶ 6.)  Based on this analysis, there are approximately sixteen thousand seven hundred thirty-three (16,733) Class Members to whom a Notice will be sent. (Odenbreidt Decl. ¶ 29.)

The Settling Parties have provided three forms of notice: Long Form, Email, and Postcard.  (*See* Exs. A, B, and C to Settlement Agreement, Doc. 619-1, at ECF 74-93.)  These notices will be available in English, Spanish, Mandarin, Korean, and Vietnamese.  (Odenbreidt Decl. ¶ 82.)  The Settlement Administrator will send Email Notice to all Class Members for whom the Lonstein Law Office records contain email address information that can be reliably verified.  (*Id.* ¶ 80.)  Notice by email will be sent to the Class Member at least three times, but if one or more of the emails is returned as undeliverable, a Postcard Notice will be mailed if a mailing address is reasonably available.  (*Id.* ¶¶ 80, 81.)  For Class Members for whom the Lonstein Law Office records do not have an email address, the Settlement Administrator will mail a 5x7 Postcard Notice to the last known mailing address shown in the Lonstein Law Office database, as updated by appropriate skip-tracing, including use of the National Change of Address Database and other resources.  (*Id.* ¶ 81.)  The Postcard Notice will include a link to access the Settlement Administrator's interactive website to review the Long Form Notice, review case documents, and submit updated contact information to assist in the payment of settlement benefits.  (*Id.* ¶ 84.)

The Settlement Administrator will create a settlement website and a toll-free number to provide information to potential Class Members.  (Settlement Agreement ¶¶ 4.9-4.11.)  The website will contain Long Form notice in the five languages listed above and will contain other important settlement documents, including the

Settlement Agreement, answers to frequently asked questions, contact information for addresses and telephone numbers for the Settlement Administrator and Class Counsel, and instructions on how to submit a request to be excluded from the Settlement. (*Id.* ¶ 4.9.)

### D. Release

In exchange for the settlement consideration, all Class Members will expressly release, waive, discharge, and will be deemed to have released, waived, and discharged, all Released Claims against all Defendants to this action, including DIRECTV Group Holdings, LLC, DIRECTV, LLC, DIRECTV Holdings, LL, Signal Auditing, Inc., Lonstein Law Offices, P.C., Julie Cohen Lonstein, and Wayne Lonstein. (Settlement Agreement ¶¶ 2.10, 2.32, 2.34, 8.1.) "Released Claims" means Plaintiffs and Settlement Class Members will release Defendants and their parents, subsidiaries, and affiliates (the "Released Parties") from all claims, demands, debts, liabilities, actions, causes of action of every kind and nature, obligations, damages, losses, costs, whether known or unknown, actual or potential, suspected or unsuspected, direct or indirect, contingent or fixed, arising out of, related to, or connected in any way to the allegations contained in this Action, and, more specifically, the prosecution of commercial misuse claims against Class Members by the Lonstein Law Office on behalf of DIRECTV or AT&T, including any auditing performed by Signal Auditing, regardless of whether or not such audit resulted in any action by the Lonstein Law Office that are alleged to have occurred within the Class Period. (*Id.* ¶¶ 8.1, 8.4.) Additionally, the Settlement releases all claims by named Plaintiffs against Defendants or its counsel as of the effective date of the Settlement. (*Id.* ¶¶ 2.26, 8.2, 8.4.)

DIRECTV also agrees to release all claims against Plaintiffs and Class Members related to allegations of commercial misuse of DIRECTV services which are claimed to have occurred within the Class Period. (*Id.* ¶¶ 2.11, 8.3.)

### E. Administration of Settlement

The Settling Parties have agreed to utilize the services of Simpluris, Inc. to act as the Settlement Administrator.  (Mem. at 13-14.)  Simpluris has provided notification and/or claims administration services in more than 5,000 cases, and it has handled approximately $600 million in settlements in the past ten years.  (Bui Decl., Doc. 619-4, ¶ 3.)  The Settling Parties selected Simpluris because this Court has appointed Simpluris in a number of cases, Plaintiffs' counsel have worked with Simpluris previously and found them to be competent and knowledgeable, and Simpluris provided the most reasonable bid for the cost of settlement administration. (Odenbreit Decl. ¶¶ 73-77.)

## II.   CONDITIONAL CERTIFICATION OF THE CLASS

The Settling Parties have stipulated to certification of a class for settlement purposes only.  Therefore, the Court must determine whether to certify the proposed class pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

### A. Legal Standard

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)."  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013).  Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation."  *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)).  Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defense of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350. This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 350-51.

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id.* at 345. Here, the parties seek a conditional certification of the class under Rule 23(b)(2) and 23(b)(3). Rule 23(b)(2) permits maintenance of a class action if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) permits maintenance of a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## B. The Proposed Class Satisfies Rule 23(a) Requirements

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There are an estimated sixteen thousand seven hundred thirty-three (16,733) Class Members. (Odenbreit Decl. ¶ 29; Lee Decl. ¶ 5.) There is no doubt that the proposed settlement class meets the class size required for numerosity.

### 2. Common Questions of Law and Fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 349-50 (citations omitted). The Plaintiff must allege that the class's injuries "depend upon a common contention" that is "capable of classwide resolution." *Id.* at 350. In other words, the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common questions— even in droves—but, rather, whether the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks and citations omitted).

The present action raises common questions of law and fact. Plaintiffs allege that the Class Members were all victims of the same fraudulent scheme perpetrated by DIRECTV, the Lonstein Defendants, and Signal Auditing through a common pattern of setting up an account in a business establishment as a residential account, on-site audits conducted by Signal, and subsequent contact by the Lonstein Defendants seeking money for alleged commercial misuse. (*See generally* FAC.) Thus, the case presents common issues as the FAC alleges that all Class Members were victims of a pattern of racketeering, and thus, the resolution of any question regarding that pattern would implicate most Class Members commonly. *See Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 477 (C.D. Cal. 2012). Thus, the Court agrees that the commonality requirement is met.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are

reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 (9th Cir. 2010) (en banc) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)), *rev'd on other grounds*, 564 U.S. 338 (2011). As to the representative, "[t]ypicality requires that the named plaintiffs be members of the class they represent." *Id.* (citing *Gen. Tech. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). The commonality, typicality, and adequacy-of-representation requirements "tend to merge" with each other. *Dukes*, 564 U.S. at 349 n.5 (citing *Falcon*, 457 U.S. at 157-58 n.13).

Here, Plaintiffs' claims, like those of the proposed Class, are based on their agreement to install DIRECTV services in their commercial establishments; the designation by DIRECTV of their accounts as "residential" rather than "commercial" without their knowledge or consent; audit and/or investigation by Signal; and the Lonstein Defendants' subsequent communication seeking monetary settlement. Plaintiffs' and Class Members' claims arise out of the same course of conduct by Defendants. Thus, the Court is satisfied Plaintiffs are typical of the Class.

### 4. Adequacy

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiffs' claims arise out of the same set of facts, allege common injury, and assert the same theories of liability as the claims of the Proposed Class. (*See* Odenbreit Decl. ¶ 31; Perez Decl., Doc. 619-6, ¶¶ 3-10; D. Nissen Decl., Doc. 619-

11

9, ¶¶ 3-7; M. Nissen Decl., Doc. 619-8, ¶¶ 3-9; Angelo Decl., Doc. 619-7, ¶¶ 3-14; LaPlante Decl., Doc. 619-11, ¶¶ 3-9; Holt Decl., Doc. 619-10, ¶¶ 3-8.)  Plaintiffs' interests are aligned with those of absent Class Members in obtaining the maximum recovery possible.  (Odenbreit Decl. ¶ 31.)  There are no apparent conflicts of interest between the Class Representatives and the Class.

The Court has reviewed DIRECTV's Opposition to the appointment of Plaintiff Doneyda Perez and takes seriously the allegation that Perez engaged in the spoliation of evidence.  (*See* Opp., Doc. 621.)  Although, as the cases cited by DIRECTV indicate, a plaintiff may be found inadequate for destroying or disposing of evidence, (*see id.* at 5 (citing cases)), Perez has vigorously represented absent Class Members for many years, often at great personal cost.  Particularly where, as here, settlement of the action will render irrelevant any unique defenses applicable to Perez, the Court declines to find her inadequate. While the Court does not condone conduct that amounts to spoliation, it finds that for the purpose of class certification for settlement, Perez's conduct is better accounted for, if at all, in the context of determining an appropriate incentive award.

Additionally, the Court finds Plaintiffs' Counsel adequate to represent the Class.  Plaintiffs' Counsel have diligently prosecuted this action and dedicated considerable resources over the course of many years to obtain the proposed Settlement.  Counsel are highly experienced in class action litigation and in the subject area of RICO.  (*See* Odenbreit Decl. ¶¶ 33-45; Mahoney Decl., Doc. 619-2, ¶¶ 4-10; Clay Decl., Doc. 619-3, ¶¶ 4-11.)  And Class Counsel have attested that they have no known conflicts of interest with the Class and do not represent any Class Member in any matters outside of this case.  (Odenbreit Decl. ¶ 45; Mahoney Decl. ¶ 10; Clay Decl. ¶ 15.)

Accordingly, the Court finds that the proposed class for purposes of settlement satisfies Rule 23(a)'s requirements.

## C. The Proposed Class Satisfies Rule 23(b)(3) Requirements

Plaintiffs seek to certify the class pursuant to Rule 23(b)(3), as the Settlement Agreement provides for monetary payments to Class Members.  Rule 23(b)(3) considers whether common questions of law or fact predominate over individual questions and whether a class action is superior to other available methods of adjudication.  Fed. R. Civ. P. 23(b)(3).

### 1.  Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022.  "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Id.*  "When common issues present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)).

Questions of law and fact common to members of the proposed Settlement Class predominate over those affecting only individual members.  The questions of law and fact at issue in this case are grounded in a common course of conduct by DIRECTV and the Lonstein Defendants.  Class Members were targeted by the same alleged scheme.  And all Class Members are alleged to have been the target of the same predicate acts (racketeering activity) alleged against Defendants.  Any difference in the amount owed to each Class Member is adequately accounted for in the Settlement Agreement.  Accordingly, the questions of law and fact should be resolved for all members of the proposed settlement class in a single adjudication.

### 2.  Class Action Superior to Other Methods

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in

13

the particular case." *Hanlon*, 150 F.3d at 1023.  "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.*  "The overarching focus [of the superiority inquiry] remains whether trial by class representation would further the goals of efficiency and judicial economy." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009)). Additionally, "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citations omitted).

Here, there are approximately sixteen thousand seven hundred thirty-three (16,733) Class Members.  It would be wildly inefficient for each Class Member to pursue individual lawsuits seeking redress for the same scheme addressed in this action.  Moreover, litigation costs would likely exceed potential recovery, especially given the complexity of the claims at issue and the size and resources of DIRECTV. Accordingly, the Court concludes that a class action is superior to other methods here.

Therefore, the Court finds that all of the requirements for class certification for purposes of settlement have been satisfied here, and it preliminarily certifies the Class.

### D. Appointment of Class Counsel

"[A] court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g).  Having reviewed the declarations of Plaintiffs' Counsel, the Court finds Plaintiffs' Counsel have the expertise necessary to adequately and fairly represent the Class.  (*See* Odenbreit Decl. ¶¶ 33-45; Mahoney Decl. ¶¶ 4-7; Clay Decl. ¶¶ 6-10.)  Additionally, counsel have diligently prosecuted this case on behalf of Plaintiffs and Class Members over the course of many years and staunch opposition.

Accordingly, the Court appoints Kevin Mahoney and Katherine J. Odenbreit of Mahoney Law Group, APC and Lisa L. Clay as Class Counsel.

### III.   PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

#### A. Legal Standard

To preliminarily approve a proposed class action settlement, Federal Rule of Civil Procedure 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  In turn, review of a proposed settlement typically proceeds in two stages, with preliminary approval followed by a final fairness hearing.  Manual for Complex Litigation, § 21.632 (4th ed. 2004).

Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (citation omitted), "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights," *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted).  Accordingly,

> to determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s)

advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "'It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness,' and 'the settlement must stand or fall in its entirety.'" *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026) (alterations omitted).

In addition to these factors, where "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that "the settlement is not [ ] the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (quotation marks omitted). In such circumstances, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks and citation omitted).

At this preliminary stage and because Class Members will receive an opportunity to be heard on the settlement, "a full fairness analysis is unnecessary[.]" *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 665 (E.D. Cal. 2008). Instead, preliminary approval and notice of the settlement terms to the proposed class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval. . . ." *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted); *see also Acosta v. Trans Union*, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially fair*, as the Court will make a final determination of its

adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.")

Additionally, non-settling defendants generally lack standing to object to a proposed settlement. *See Carrillo v. Schneider Logistics Trans-Loading and Dist., Inc.*, 2014 WL 688178, at *2 (C.D. Cal. Feb. 21, 2014); *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987). The only exception is where a non-settling defendant can demonstrate that the proposed settlement strips them of a legal claim or cause of action, or the settlement invalidates the contract rights of one not participating in the settlement. *See Waller*, 828 F.2d at 583.

In evaluating all applicable factors below, the Court finds that the proposed Settlement Agreement should be preliminarily approved.

### B. *Staton* Factor Analysis

#### 1. Strength of Plaintiff's case and risk, expense, complexity, and duration of further litigation

"Settlement eliminates the risks inherent in certifying a class, prevailing at trial, and withstanding any subsequent appeals, and it may provide the last opportunity for class members to obtain relief." *Scott v. HSS Inc.*, 2017 WL 10378568, at *8 (C.D. Cal. Apr. 11, 2017). Given the potential risks of further litigation, this factor therefore weighs in favor of granting preliminary approval. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (citation omitted)).

Although Plaintiffs believe in the merits of their case, they also believe this factor weighs in favor of preliminary approval of the Settlement. (*See* Mem. at 24-25.) In particular, Plaintiffs note that the "Court need look no further than the lengthy docket in this case to find that continued litigation is likely interminable."

(*Id.* at 25.)  This action has been pending for years, and the Class Period includes four years prior to the filing of the action.  Thus, Plaintiffs note that many of the Class Members' commercial establishments are no longer operational, and the passage of time increases the risk that potential witnesses in this case will either not be located at all or will have little to recollect.  (*Id.* at 26.)  Additionally, Plaintiffs point out that there are significant risks that would come with further litigation, including unfavorable rulings on motions to certify a class, discovery motions, motions in limine, a jury verdict, or the fact the jury could award very limited damages, along with countless other obstacles.  (*Id.*)

As the Court agrees that there are substantial risks that come with continued litigation in this case, it agrees that this factor favors preliminary approval of the settlement.

### 2.  Amount offered in settlement

The proposed Settlement awards Class Members an initial settlement benefit equating to approximately 12.7% of their actual loss.  (Odenbreit Decl. ¶ 55; Lee Decl. ¶ 9.)  Plaintiffs argue that the anticipated recovery by the class, however, in light of the second distribution could be as much as 40-50% of the actual loss. (Odenbreit Decl. ¶ 55.)  A "settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  12.7% recovery of maximum potential liability is consistent with recoveries courts have found reasonable in other consumer class actions.  *See Weeks v. Kellogg Co.*, 2013 WL 6531177, at *15 n.85 (C.D. Cal. Nov. 23, 2013) (finding settlement reasonable when paid 10% of consumers' average total damages).  Additionally, the Settlement also releases Class Members from potential claims brought by DIRECTV regarding any alleged commercial misuse.

The Court finds the amount offered in settlement favors preliminary approval.

### 3. Extent of discovery proceedings and stage of the proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. Discovery can be both formal and informal. *See Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) (finding plaintiffs had "sufficient information to make an informed decision about the [s]ettlement" where formal discovery had not been completed but class counsel had "conducted significant investigation, discovery and research, and presented the court with documentation supporting those services.").

The Court concludes that the Parties have sufficient information to make an informed decision about settlement. Plaintiffs and Defendants have engaged in extensive discovery (and numerous discovery battles) during the six years since this action was filed, and the Parties have also engaged in significant motion practice. Moreover, the court-appointed expert, Charles Platt from Bitscope Consulting, LLC, extracted information from the Lonstein Law Offices database and put together a comprehensive list of cases handled by the Lonstein Law Offices on behalf of DIRECTV. (Docs. 561, 576.) The resulting Platt Spreadsheet has provided the Parties with a good idea of the number of Class Members and the potential value of each Class Member's case here. Additionally, Plaintiffs interviewed hundreds of potential Class Members and reviewed hundreds of pages of Class Member documents. (Odenbreit Decl. ¶ 56; Clay Decl. ¶ 12.)

Thus, the Court finds this factor favors approval of the Settlement.

### 4. Experience and views of counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."

*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  As a result, representation by competent counsel familiar with the law in the relevant area and with "the strengths and weaknesses of [the parties'] respective positions, suggests the reasonableness of the settlement."  *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007).  "On the other hand, recognizing the potential conflict of interest between attorneys and the class they represent, the Court should not blindly follow counsel's recommendations, but give them appropriate weight in light of all factors surrounding the settlement."  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

As set forth above, Plaintiffs' Counsel are experienced in the prosecution and resolution of consumer class actions and have been prosecuting this action since its inception.  (Odenbreit Decl. ¶¶ 33-43, 57; Clay Decl. ¶¶ 12, 13, 16.)  Counsel "wholeheartedly endorse[] the settlement agreement as fair, reasonable, and adequate."  (Mem. at 31.)  Thus, this factor favors preliminary approval.

### 5.  Arm's length negotiation free from collusion

Although the "proposed settlement need not be ideal," it "must be fair, free of collusion, [and] consistent with counsel's fiduciary obligations to the class."  *Rollins v. Dignity Health*, 336 F.R.D. 456, 461 (N.D. Cal. 2020).

It is obvious that after years of hard-fought litigation, the resulting Settlement is not the product of collusion.  Moreover, the fact the Settlement was reached after extensive and informed arm's-length negotiations lasting over a year with constant involvement of an experienced class action mediator—Hon. Carl J. West (Ret.)— further supports preliminary approval.  (*See* Mem. at 31.)  And, although the Lonstein Defendants and Signal Auditing are not signatories to the Settlement Agreement, and they did not substantively participate in the settlement negotiations, the Settlement still significantly benefits them because it contains a release of any and all claims against them.

Thus, this factor favors preliminary approval and the *Staton* factors as a whole favor preliminary approval.

### C. Lonstein Defendants' Objections

The Lonstein Defendants have filed objections to the Settlement although they failed to appear at the preliminary approval hearing.  (*See* Obj., Doc. 624.)  The Lonstein Defendants critique the Settlement as improper because other actions (not before this Court) that were filed against the Lonstein Defendants have been dismissed, and the Settlement attributes blame to the Lonstein Law Offices, even when the Lonstein Defendants were excluded from the mediation and had no input in the Settlement Agreement.  (*See generally id.*)

The Lonstein Defendants, however, have failed to establish that they have standing to object to the Settlement Agreement.  They acknowledge that, as non-settling defendants, they generally lack standing unless they can demonstrate that they will sustain some form of legal prejudice as a result of the settlement.  Yet, Defendants' Objections do not identify any form of legal prejudice that they have suffered.  (*See id.* at 23-24.)  They have identified neither a legal claim or cause of action stripped, nor a contract right that has been invalidated by the terms of the Settlement Agreement.  The Lonstein Defendants highlight that the Settlement Agreement uses "derogatory" language toward them and explains that they are concerned about "reputational devastation," (*see id.* at 19), but these potential injuries are not equivalent to legal prejudice, and the Lonstein Defendants cite no case law to support that they are.  *Cf. In re Sizzler Rests. Int'l, Inc.*, 262 B.R. 811, 822 n.8 (Bakr. C.D. Cal. 2001) (prejudice to one's reputation does not constitute legal prejudice).  And, if anything, the Lonstein Defendants benefit significantly from the Settlement Agreement because the Settlement strips *Class Members* of legal claims and causes of action against the Lonstein Defendants.

Accordingly, the Court holds that the Lonstein Defendants lack standing to object to the Settlement, and their objections are stricken as improper and impertinent.  *See* Fed. R. Civ. P. 12(f) (court may strike impertinent matters "on its own").

### D. Class Representative Incentive Awards

The Court has discretion to approve an incentive award to class representatives that is intended to compensate them for the work done on behalf of the class, and to make up for financial or reputational risk undertaken in bringing the action.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  In assessing the reasonableness of incentive awards, courts balance the number of plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 462 (E.D. Cal. 2013).  Courts must evaluate proposed incentive awards to ensure that they are not excessive given the circumstances and do not destroy the adequacy of the class representatives.  *See Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164-65 (9th Cir. 2013).  "Incentive awards typically range from $2,000 to $10,000."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (listing cases).

Plaintiffs seek an incentive award of $30,000 for Plaintiff Doneyda Perez and $10,000 for Plaintiffs Marlys Nissen, Danny Nissen, Paul Holt, Gregory LaPlante, and Joseph Angelo.  Plaintiffs highlight that Perez's particularly lengthy and significant involvement in the case, and acknowledge her deletion of photographs on her cell phone (Mem. at 34; *see also* Odenbreit Decl. ¶ 65-70.)  With respect to M. Nissen, D. Nissen, Holt, LaPlante, and Angelo, Plaintiffs highlight that they were "aware of the scrutiny Ms. Perez endured and yet knowingly agreed to be placed in the forefront of this action taking significant time away from their respective businesses," they "spoke and met with Class Counsel, scoured their records, took

photographs of their business and stood ready to travel to be deposed," and they "provided invaluable information that counsel believes brought this Action to the settlement table, and preserved the class action." (Mem. at 35-36.)

DIRECTV has opposed the representative award of $30,000 for Perez, explaining that it is inappropriate in light of her spoliation of evidence, and that it is disproportionate to the recovery of the average Class Member. (*See* Opp., Doc. 621, at 6-8.)

The requested representative award for Perez may be too high, but the Court reserves its final determination as to all incentive awards until the final approval stage.

### E. Appointment of Settlement Administrator

The Court approves the appointment of Simpluris as the Settlement Administrator in this action in light of Simpluris's ample experience and the Parties' selection process. (*See* Odenbreit Decl. ¶¶ 73-77; *see generally* Bui Decl.)

### F. Class Notice

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). However, actual notice is not required. *See Silber v. Mabon*, 18 F.3d 1449, 1452-54 (9th Cir. 1994). Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

The Court has reviewed Plaintiffs' proposed forms of notice, and it finds that they generally comply with these requirements.   However, the Court has identified the following shortcomings that Plaintiffs must remedy for approval:

- The Email Notice shall more explicitly set forth the definition of the certified Class;
- The Postcard Notice shall more explicitly set forth the legal claims set forth by the Class; and
- The Postcard notice shall add that a class member may entire an appearance at the final fairness hearing through an attorney.

Additionally, the Parties agreed at the preliminary approval hearing that the Settlement Administrator shall permit opt-outs electronically either via email or through the Settlement website.

Otherwise, the Court approves, as to form and content, notices that are substantively similar to the forms attached as Exhibit A, B, and C to the Settlement Agreement.  (*See* Odenbreit Decl. at ECF 74-93.)

### G. Conclusion

As the Court concludes that the proposed settlement is fair, reasonable, and adequate, and appears to be the product of serious, informed, non-collusive negotiations, the Court will preliminarily approve the proposed settlement.

### IV.   CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

- That the Class Action Settlement Agreement filed with the Court as Exhibit 1 to the Odenbreit Declaration is fair, just, reasonable, and therefore, meets the requirements for preliminary approval, subject to

further consideration at the final approval hearing after distribution of the Class Notices to Settlement Class Members.

- The following class is certified for purposes of settlement only: All businesses and business owners in the United States who had DIRECTV services installed in their commercial establishment; who were subsequently audited by Defendant Signal Auditing, Inc. ("Signal"); and who at any time after the day four years prior to the date on which the original Complaint was filed (August 4, 2012) through the date the Court grants preliminary approval of the Settlement received communications from Defendants  Lonstein Law Offices, P.C., Wayne Lonstein, and/or Julie Cohen Lonstein, or on behalf of DIRECTV seeking money for allegedly unauthorized use of DIRECTV licensed programming, including NFL Sunday Ticket or any other DIRECTV-related programming.

- Named Plaintiffs Doneyda Perez, Danny Nissen, Marlys Nissen, Joseph Angelo, Gregory LaPlante, and Paul Holt are appointed as Class Representatives.  Kevin Mahoney and Katherine J. Odenbreit of Mahoney Law Group, APC and Lisa L. Clay, Attorney at Law, are appointed as Class Counsel.  The Court finds the notice requirements of Federal Rules of Civil Procedure 23 and applicable standards of due process are satisfied, and that the Class Notices adequately advises Class Members of their rights under the Settlement.  Counsel for the Parties are authorized to correct any typographical errors that may be discovered in the Class Notices and make clarification, to the extent

some are found or needed, so long as the corrections do not materially alter the substance of the Class Notices.

- The notice response deadline will be sixty (60) days from the date of the initial mailing of the Notice.  The procedures and sixty (60)-day deadline for Class Members to request exclusion from or to object to the Settlement is adopted as described in the Settlement Agreement, except that Class Members shall be permitted to request exclusion either via the Settlement website or by email to the Settlement Administrator.  Any Class Member who intends to object to final approval of the Settlement Agreement must submit a written objection to the Settlement Administrator by mail in accordance with the procedures described in the Class Notices attached as Exhibits A andB to the Settlement Agreement.

- Simpluris is appointed to act as the Settlement Administrator pursuant to the terms of the Settlement Agreement.  The Settlement Administrator is ordered to carry out the Settlement according to the terms of the Settlement Agreement and in conformity with this Order, including disseminating the Notices according to the notice plan described in the Settlement Agreement.  Based upon the cost estimate submitted by Simpluris, the Court preliminarily approves administration costs in the maximum amount of seventy-five thousand dollars ($75,000.00) to be deducted from the Total Settlement Fund.

- DIRECTV is ordered to furnish the Platt Spreadsheets to Simpluris within ten (10) calendar days of the entry of this Order.

- DIRECTV is ordered to deposit the Total Settlement Fund into a Qualified Settlement Fund with Simpluris within thirty (30) days of the entry of this Order.

- The Parties are ordered to otherwise carry out the Settlement according to the terms of the Settlement Agreement.

- The Motion for Approval of Attorneys' Fees, Costs and Class Representative Incentive Awards will be filed no later than fifteen (15) days prior to the deadline for Settlement Class Members to request exclusion or object to the Settlement.  The Ninth Circuit's benchmark for fees for common fund settlements is 25% of the total fund.  *See Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016). Accordingly, the Court will review the request for fees in connection with the Motion for Final Approval, and Class Counsel's application for attorney fees must make a sufficient showing justifying any upward departure from the Ninth Circuit's benchmark.

- The Motion for Final Approval of the Settlement shall be filed and served no later than December 16, 2022.

- A Final Approval Hearing will be held on Friday, January 6, 2023, at 10:30 a.m., to determine whether the Settlement Agreement should be granted final approval as fair, reasonable, and adequate as to the Settlement Class Members.  The Court reserves the right to continue the date of the Final Approval hearing without further notice to Class Members.  The Court retains jurisdiction to consider all further applications arising out of or in connection with the Settlement Agreement.

- In the event the Settlement is not fully and finally approved, or otherwise does not become effective in accordance with the terms of the Settlement Agreement, this Order shall be rendered null and void and shall be vacated, and the Parties shall revert to their respective positions before entering into the Settlement Agreement.  If the

Settlement does not become final for any reason, the fact that the Parties were willing to agree to a settlement and the circumstances, proceedings, and documents related to the proposed Settlement shall have no bearing on, and will not be admissible in connection with litigation, whether through issue preclusive, estoppel or otherwise.

- All proceedings in the action are stayed until Final Approval of the Settlement.
- The Court ORDERS the parties to file a revised version of the Email and Postcard Class Notice within **ten (10) days** of this Order.

DATED:  August 23, 2022

_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE