Katherine J. Odenbreit (SBN: 184619)
kodenbreit@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 East Ocean Blvd., Suite 814
Long Beach, CA  90802
Telephone: (562) 590-5550
Facsimile: (562) 590-8400

Lisa L. Clay (*Pro Hac Vice*)
lisa@clayatlaw.com
**Lisa L. Clay, Attorney at Law**
2100 Manchester Road, Suite 1612
Wheaton, IL 60187
Telephone: (630) 456-4818

Attorneys for Plaintiff DONEYDA PEREZ, as an individual, and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| DONEYDA PEREZ as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>     v.<br><br>DIRECTV GROUP HOLDINGS, LLC, a Delaware Corporation, LONSTEIN LAW OFFICES, P.C., a New York Professional Corporation; SIGNAL AUDITING, INC., a New York Corporation, JULIE COHEN LONSTEIN and WAYNE M. LONSTEIN,<br><br>Defendants. | Case No.  8:16-CV-01440-JLS-DFM<br><br>**SUPPLEMENTAL DECLARATION OF KATHERINE J. ODENBREIT IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT [Pursuant to Court's Order ECF Dkt. No. 629 dated 8/23/22]**<br><br>Third Amended Complaint Filed:<br>February 20, 2019 |

## DECLARATION OF KATHERINE J. ODENBREIT

I, Katherine J. Odenbreit, hereby declare as follows:

1.     I am an attorney duly admitted to practice law before the courts in the State of California. Unless otherwise specified, I have personal knowledge of the following facts, and if called as a witness, I could and would testify competently thereto, without intending to waive any attorney-client privilege.

2.     I am a Senior Attorney at Mahoney Law Group, APC, and lead counsel of record for Plaintiffs Doneyda Perez, Joseph Angelo, Marlys Nissen, Danny Nissen, Gregory Laplante and Paul Holt in the matter of *Perez et al. v. DIRECTV, et al.*, USDC Case No. 8:16-CV-01440-JLS-DFM.

3.     On August 23, 2022 the Court issued an Order Granting Preliminary Approval of Class Action Settlement in the above-entitled action. (ECF Dkt. No. 623, a true and correct copy of which is hereby attached as **Exhibit 1**.) The Court requested Plaintiffs and DIRECTV make certain revisions to notices and submit those revisions to the Court within 10 days of the order (Exhibit 1, p. 24). Attached to this declaration are those requested revisions.

4.     Attached hereto as **Exhibit 2** are the court requested revisions to the Email Notice. The Court requested the class definition be set forth more explicitly. The revisions to the Email Notice are highlighted in green. Specifically, the class definition was taken directly from the Court's Order Granting Preliminary Approval of the Class Action Settlement on page 1 of **Exhibit 2**. The Court further requested Plaintiffs and DIRECTV to include a provision for Settlement Class Members to submit opt-out requests electronically. On page 2 of **Exhibit 2**, Settlement Class Members are informed they may submit a request to opt-out of the settlement via email.

5.     Attached hereto as **Exhibit 3** are the court requested revisions to the Postcard Notice. The revisions to the Postcard Notice are highlighted in yellow. Specifically, the class definition was modified to be identical to the one in the

Court's Order Granting Preliminary Approval of the Class Action Settlement. The Postcard Notice tells Settlement Class Members if they want to learn how to opt-out or object, they are to go the case website. Therefore, no additional language was added regarding the ability to opt-out via email. As the Court requested, the Postcard Notice was also revised to inform Settlement Class Members they may appear at the Final Fairness Hearing with an attorney. (**Exhibit 3**).  The Court had also requested that Plaintiffs and DIRECTV more explicitly set forth the legal claims. That change is reflected in **Exhibit 3.**

6.      Plaintiffs and DIRECTV also made the same revisions requested by the Court to the Long-Form Notice which is attached hereto as **Exhibit 4.** The revisions are highlighted in green. Specifically, the description of the legal claims on the first page matches that in the Postcard Notice. (**Exhibit 4**). On pages 5 and 6 of the Long-Form Notice, Settlement Class Members are informed that they can submit a request to opt-out of the settlement via email. (**Exhibit 4**).

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Dated this 2nd day of September, 2022 at Huntington Beach, California.

Katherine J. Odenbreit

SUPPLEMENTAL DECLARATION OF KATHERINE J. ODENBREIT

**EXHIBIT 1**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CASE NO. 8:16-cv-01440-JLS-DFM

DONEYDA PEREZ V. DIRECT GROUP HOLDINGS, LLC, et al.

**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DOC. 620)**

Before the Court is Plaintiffs' Motion for Preliminary Approval of Class Settlement.  (Mot., Doc. 620; Mem., Doc. 619.)  Defendants DIRECTV, LLC, DIRECTV Group Holdings, LLC, and DIRECTV Holdings, LLC (collectively "DIRECTV") have partially opposed the Motion.  (Opp., Doc. 621.)  Non-settling Defendants Lonstein Law Offices, P.C., Julie Cohen Lonstein, and Wayne D. Lonstein (collectively the "Lonstein Defendants") have also filed an objection to the Motion.  (Obj., Doc. 624.)  Plaintiffs have filed a response to the Lonstein Defendants' objection as has DIRECTV.  (Pl Response, Doc. 626; DIRECTV Response, Doc. 627.)

Plaintiffs' Motion asks the Court to: (1) certify the class for settlement purposes only; (2) appoint Doneyda Perez, Danny Nissen, Marlys Nissen, Joseph Angelo, Gregory Laplant, and Paul Hold as Class Representatives; (3) appoint Kevin Mahoney and Katherine J. Odenbreit of Mahoney Law Group, APC and Lisa L. Clay as Class Counsel; (4) approve Simpluris, Inc. as the Settlement Administrator; (5) approve the form and content of the proposed class notices; (6) approve the proposed opt-out and objection procedures; (7) direct DIRECTV to furnish to the Settlement Administrator within ten (10) calendar days of the entry of this Order the "Platt Spreadsheets" as defined in the Settlement Agreement ; (8) direct DIRECTV to deposit the Total Settlement Fund into a Qualified Settlement Fund with the Settlement Administrator within thirty (30) calendar days of the entry of this Order; and (9) set a final approval hearing.  (Mot. at 1-2.)

Having reviewed and considered the papers and heard oral argument, the Court GRANTS Plaintiff's Motion and sets a fairness hearing for **January 6, 2023, at 10:30 a.m.**

## I.  BACKGROUND

On August 4, 2016, Plaintiff Doneyda Perez filed this class action alleging "that DIRECTV and other Defendants engaged in a scheme to defraud small,

minority-owned businesses by selling them commercial satellite cable television service, only to later claim that the businesses were not authorized to display DIRECTV in a commercial establishment, and then threaten the business owners with litigation to extract a settlement payment." (*See* Order on Mot. Compel Arbitration, Doc. 40, at 1; *see also* Fourth Amended Compl. ("FAC"), Doc. 498, ¶¶ 2-25.)

This Court denied DIRECTV's Motion to Compel Arbitration, and the Ninth Circuit affirmed that decision on DIRECTV's appeal. (*See* Order on Mot. Compel Arbitration; Ninth Circuit Decision, Docs. 83, 84.) While Defendants' appeal was pending, Defendants sought multiple stays and extensions. Ultimately, DIRECTV answered the Complaint and the Lonstein Defendants filed a Motion to Dismiss. (*See* Docs. 105, 106.) The Court denied the Motion to Dismiss and vacated the stay on July 24, 2019. (*See* Docs. 133, 135.)

The Parties commenced written discovery in the summer and fall of 2019 and engaged in what Plaintiffs have described as a "dizzying array of discovery disputes." (*See* Mem. at 3.) The Parties also filed various motions, including a Motion to Deny Class Certification, a Motion to for Leave to Amend the Scheduling Order, Add Additional Parties, and for Leave to File a Fourth Amended Complaint, and a Motion for Sanctions. (*See* Docs. 278, 368, 461.) After multiple rounds of mediation, multiple rounds of briefing on sanctions, and multiple appointments of court-appointed experts, a settlement agreement was finally reached between DIRECTV and Plaintiffs. (*See* Mem. at 5-6.) The Lonstein Defendants were not party to the settlement reached. (*See id.* at 6 (citing Odenbreit Decl., Doc. 619-1, ¶ 20).)

### A. The Class and Class Members

The proposed "Settlement Class" is defined as:

All businesses and business owners in the United States who had DIRECTV services installed in their commercial establishment; who were subsequently audited by Defendant Signal Auditing, Inc. ("Signal"); and who at any time on or after the day four years prior to the date on which the original Complaint was filed (August 4, 2012) through the date the Court grants preliminary approval of the Settlement, received communications from the Lonstein Law Offices, P.C., Wayne Lonstein and/or Julie Cohen Lonstein on behalf of DIRECTV seeking money for allegedly unauthorized use of DIRECTV licensed programming, including NFL Sunday Ticket or any other DIRECTV-related programming.

(Odenbreit Decl. ¶ 22; Settlement Agreement, Ex. 1 to Odenbreit Decl., Doc. 619-1, at ECF 38, ¶ 2.36.)

### B. Settlement Consideration

DIRECTV has agreed to pay nine million four hundred thousand dollars ($9,400,000.00) ("Total Settlement Fund") to resolve all claims that were alleged in this action or any subsequent amendment, or that could have been alleged based on the facts alleged in this action, and for Class Members release of claims, as described below.  (*See* Settlement Agreement ¶ 2.40.)  The Settlement Agreement distributes payments as follows:

- The "Net Settlement Fund" means the Total Settlement Fund of Nine Million Four Hundred Thousand dollars ($9,400,000.00) minus the payment of:
- Settlement Administration Costs in the amount not to exceed seventy-five thousand dollars ($75,000).  The Settlement Administrator will calculate each Settlement Class Members' pro-rate share of the Settlement, as set forth below;

- Class Representatives' Incentive Awards, for a total of eighty thousand dollars ($80,000);
- Award of attorneys' fees for a total of three million one hundred thirty-three thousand three hundred thirty-three dollars and thirty-three cents ($3,133,333.33); and
- Award of litigation costs for a total of one hundred fifty-five thousand dollars and ninety-four cents ($155,000.04).

(Mem. at 7 (citing Settlement Agreement ¶ 6.1).)

Additionally, the Settlement Agreement provides for the following non-monetary relief:

- DIRECTV agrees not to retain the Lonstein Law Office or any of the Lonstein Defendants in any capacity for potential claims of commercial misuse by DIRECTV's customers going forward; and
- DIRECTV agrees to include a statement in its order confirmation documentation to customers that highlights that residential service may be used for residential purposes only, and it may not be used in commercial settings.

(*Id.* (citing Settlement Agreement ¶ 5.1).)

## C. Notice Plan

Substantial work has been done already to identify potential Class Members. A neutral expert appointed by the Court, Charlie Platt, has previously identified potential Class Members by reviewing cases where the Lonstein Law Offices likely contacted an individual or business regarding alleged commercial misuse of DIRECTV's services and/or that individual or business paid something to Lonstein Law Offices.  (Odenbreidt Decl. ¶ 24.)  The resulting data, referred to as the "Platt Spreadsheet," identified 23,554 records.  (*Id.* ¶ 25.)  After further analysis by Plaintiffs' expert, Eric Lee, the Parties have identified 8,185 businesses/business

owners who were contacted by the Lonstein Law Offices but paid no money or an amount of $20 or less and 8,548 businesses/business owners who were contacted by Lonstein Law Offices and paid more than $20 to Lonstein Law Offices.  (Lee Decl., Doc. 619-5, ¶ 6.)  Based on this analysis, there are approximately sixteen thousand seven hundred thirty-three (16,733) Class Members to whom a Notice will be sent. (Odenbreidt Decl. ¶ 29.)

The Settling Parties have provided three forms of notice: Long Form, Email, and Postcard.  (*See* Exs. A, B, and C to Settlement Agreement, Doc. 619-1, at ECF 74-93.)  These notices will be available in English, Spanish, Mandarin, Korean, and Vietnamese.  (Odenbreidt Decl. ¶ 82.)  The Settlement Administrator will send Email Notice to all Class Members for whom the Lonstein Law Office records contain email address information that can be reliably verified.  (*Id.* ¶ 80.)  Notice by email will be sent to the Class Member at least three times, but if one or more of the emails is returned as undeliverable, a Postcard Notice will be mailed if a mailing address is reasonably available.  (*Id.* ¶¶ 80, 81.)  For Class Members for whom the Lonstein Law Office records do not have an email address, the Settlement Administrator will mail a 5x7 Postcard Notice to the last known mailing address shown in the Lonstein Law Office database, as updated by appropriate skip-tracing, including use of the National Change of Address Database and other resources.  (*Id.* ¶ 81.)  The Postcard Notice will include a link to access the Settlement Administrator's interactive website to review the Long Form Notice, review case documents, and submit updated contact information to assist in the payment of settlement benefits.  (*Id.* ¶ 84.)

The Settlement Administrator will create a settlement website and a toll-free number to provide information to potential Class Members.  (Settlement Agreement ¶¶ 4.9-4.11.)  The website will contain Long Form notice in the five languages listed above and will contain other important settlement documents, including the

6

Settlement Agreement, answers to frequently asked questions, contact information for addresses and telephone numbers for the Settlement Administrator and Class Counsel, and instructions on how to submit a request to be excluded from the Settlement. (*Id.* ¶ 4.9.)

### D. Release

In exchange for the settlement consideration, all Class Members will expressly release, waive, discharge, and will be deemed to have released, waived, and discharged, all Released Claims against all Defendants to this action, including DIRECTV Group Holdings, LLC, DIRECTV, LLC, DIRECTV Holdings, LL, Signal Auditing, Inc., Lonstein Law Offices, P.C., Julie Cohen Lonstein, and Wayne Lonstein. (Settlement Agreement ¶¶ 2.10, 2.32, 2.34, 8.1.) "Released Claims" means Plaintiffs and Settlement Class Members will release Defendants and their parents, subsidiaries, and affiliates (the "Released Parties") from all claims, demands, debts, liabilities, actions, causes of action of every kind and nature, obligations, damages, losses, costs, whether known or unknown, actual or potential, suspected or unsuspected, direct or indirect, contingent or fixed, arising out of, related to, or connected in any way to the allegations contained in this Action, and, more specifically, the prosecution of commercial misuse claims against Class Members by the Lonstein Law Office on behalf of DIRECTV or AT&T, including any auditing performed by Signal Auditing, regardless of whether or not such audit resulted in any action by the Lonstein Law Office that are alleged to have occurred within the Class Period. (*Id.* ¶¶ 8.1, 8.4.) Additionally, the Settlement releases all claims by named Plaintiffs against Defendants or its counsel as of the effective date of the Settlement. (*Id.* ¶¶ 2.26, 8.2, 8.4.)

DIRECTV also agrees to release all claims against Plaintiffs and Class Members related to allegations of commercial misuse of DIRECTV services which are claimed to have occurred within the Class Period. (*Id.* ¶¶ 2.11, 8.3.)

### E. Administration of Settlement

The Settling Parties have agreed to utilize the services of Simpluris, Inc. to act as the Settlement Administrator.  (Mem. at 13-14.)  Simpluris has provided notification and/or claims administration services in more than 5,000 cases, and it has handled approximately $600 million in settlements in the past ten years.  (Bui Decl., Doc. 619-4, ¶ 3.)  The Settling Parties selected Simpluris because this Court has appointed Simpluris in a number of cases, Plaintiffs' counsel have worked with Simpluris previously and found them to be competent and knowledgeable, and Simpluris provided the most reasonable bid for the cost of settlement administration. (Odenbreit Decl. ¶¶ 73-77.)

## II.   CONDITIONAL CERTIFICATION OF THE CLASS

The Settling Parties have stipulated to certification of a class for settlement purposes only.  Therefore, the Court must determine whether to certify the proposed class pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

### A. Legal Standard

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)."  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013).  Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation."  *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)).  Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defense of the representative parties are typical of the claims or defenses of the class; and

8

(4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350. This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 350-51.

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id.* at 345. Here, the parties seek a conditional certification of the class under Rule 23(b)(2) and 23(b)(3). Rule 23(b)(2) permits maintenance of a class action if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) permits maintenance of a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## B. The Proposed Class Satisfies Rule 23(a) Requirements

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There are an estimated sixteen thousand seven hundred thirty-three (16,733) Class Members. (Odenbreit Decl. ¶ 29; Lee Decl. ¶ 5.) There is no doubt that the proposed settlement class meets the class size required for numerosity.

9

### 2.  Common Questions of Law and Fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Dukes*, 564 U.S. at 349-50 (citations omitted).  The Plaintiff must allege that the class's injuries "depend upon a common contention" that is "capable of classwide resolution."  *Id.* at 350.  In other words, the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke."  *Id.* "What matters to class certification . . . is not the raising of common questions— even in droves—but, rather, whether the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id.* (internal quotation marks and citations omitted).

The present action raises common questions of law and fact.  Plaintiffs allege that the Class Members were all victims of the same fraudulent scheme perpetrated by DIRECTV, the Lonstein Defendants, and Signal Auditing through a common pattern of setting up an account in a business establishment as a residential account, on-site audits conducted by Signal, and subsequent contact by the Lonstein Defendants seeking money for alleged commercial misuse.  (*See generally* FAC.) Thus, the case presents common issues as the FAC alleges that all Class Members were victims of a pattern of racketeering, and thus, the resolution of any question regarding that pattern would implicate most Class Members commonly.  *See Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 477 (C.D. Cal. 2012).  Thus, the Court agrees that the commonality requirement is met.

### 3.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are

reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 (9th Cir. 2010) (en banc) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)), *rev'd on other grounds*, 564 U.S. 338 (2011).  As to the representative, "[t]ypicality requires that the named plaintiffs be members of the class they represent." *Id.* (citing *Gen. Tech. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). The commonality, typicality, and adequacy-of-representation requirements "tend to merge" with each other.  *Dukes*, 564 U.S. at 349 n.5 (citing *Falcon*, 457 U.S. at 157-58 n.13).

Here, Plaintiffs' claims, like those of the proposed Class, are based on their agreement to install DIRECTV services in their commercial establishments; the designation by DIRECTV of their accounts as "residential" rather than "commercial" without their knowledge or consent; audit and/or investigation by Signal; and the Lonstein Defendants' subsequent communication seeking monetary settlement.  Plaintiffs' and Class Members' claims arise out of the same course of conduct by Defendants.  Thus, the Court is satisfied Plaintiffs are typical of the Class.

### 4.  Adequacy

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

Plaintiffs' claims arise out of the same set of facts, allege common injury, and assert the same theories of liability as the claims of the Proposed Class.  (*See* Odenbreit Decl. ¶ 31; Perez Decl., Doc. 619-6, ¶¶ 3-10; D. Nissen Decl., Doc. 619-

9, ¶¶ 3-7; M. Nissen Decl., Doc. 619-8, ¶¶ 3-9; Angelo Decl., Doc. 619-7, ¶¶ 3-14; LaPlante Decl., Doc. 619-11, ¶¶ 3-9; Holt Decl., Doc. 619-10, ¶¶ 3-8.)  Plaintiffs' interests are aligned with those of absent Class Members in obtaining the maximum recovery possible.  (Odenbreit Decl. ¶ 31.)  There are no apparent conflicts of interest between the Class Representatives and the Class.

The Court has reviewed DIRECTV's Opposition to the appointment of Plaintiff Doneyda Perez and takes seriously the allegation that Perez engaged in the spoliation of evidence.  (*See* Opp., Doc. 621.)  Although, as the cases cited by DIRECTV indicate, a plaintiff may be found inadequate for destroying or disposing of evidence, (*see id.* at 5 (citing cases)), Perez has vigorously represented absent Class Members for many years, often at great personal cost.  Particularly where, as here, settlement of the action will render irrelevant any unique defenses applicable to Perez, the Court declines to find her inadequate. While the Court does not condone conduct that amounts to spoliation, it finds that for the purpose of class certification for settlement, Perez's conduct is better accounted for, if at all, in the context of determining an appropriate incentive award.

Additionally, the Court finds Plaintiffs' Counsel adequate to represent the Class.  Plaintiffs' Counsel have diligently prosecuted this action and dedicated considerable resources over the course of many years to obtain the proposed Settlement.  Counsel are highly experienced in class action litigation and in the subject area of RICO.  (*See* Odenbreit Decl. ¶¶ 33-45; Mahoney Decl., Doc. 619-2, ¶¶ 4-10; Clay Decl., Doc. 619-3, ¶¶ 4-11.)  And Class Counsel have attested that they have no known conflicts of interest with the Class and do not represent any Class Member in any matters outside of this case.  (Odenbreit Decl. ¶ 45; Mahoney Decl. ¶ 10; Clay Decl. ¶ 15.)

Accordingly, the Court finds that the proposed class for purposes of settlement satisfies Rule 23(a)'s requirements.

### C. The Proposed Class Satisfies Rule 23(b)(3) Requirements

Plaintiffs seek to certify the class pursuant to Rule 23(b)(3), as the Settlement Agreement provides for monetary payments to Class Members.  Rule 23(b)(3) considers whether common questions of law or fact predominate over individual questions and whether a class action is superior to other available methods of adjudication.  Fed. R. Civ. P. 23(b)(3).

#### 1.  Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022.  "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Id.*  "When common issues present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)).

Questions of law and fact common to members of the proposed Settlement Class predominate over those affecting only individual members.  The questions of law and fact at issue in this case are grounded in a common course of conduct by DIRECTV and the Lonstein Defendants.  Class Members were targeted by the same alleged scheme.  And all Class Members are alleged to have been the target of the same predicate acts (racketeering activity) alleged against Defendants.  Any difference in the amount owed to each Class Member is adequately accounted for in the Settlement Agreement.  Accordingly, the questions of law and fact should be resolved for all members of the proposed settlement class in a single adjudication.

#### 2.  Class Action Superior to Other Methods

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in

13

the particular case." *Hanlon*, 150 F.3d at 1023. "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* "The overarching focus [of the superiority inquiry] remains whether trial by class representation would further the goals of efficiency and judicial economy." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009)). Additionally, "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citations omitted).

Here, there are approximately sixteen thousand seven hundred thirty-three (16,733) Class Members. It would be wildly inefficient for each Class Member to pursue individual lawsuits seeking redress for the same scheme addressed in this action. Moreover, litigation costs would likely exceed potential recovery, especially given the complexity of the claims at issue and the size and resources of DIRECTV. Accordingly, the Court concludes that a class action is superior to other methods here.

Therefore, the Court finds that all of the requirements for class certification for purposes of settlement have been satisfied here, and it preliminarily certifies the Class.

### D. Appointment of Class Counsel

"[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g). Having reviewed the declarations of Plaintiffs' Counsel, the Court finds Plaintiffs' Counsel have the expertise necessary to adequately and fairly represent the Class. (*See* Odenbreit Decl. ¶¶ 33-45; Mahoney Decl. ¶¶ 4-7; Clay Decl. ¶¶ 6-10.) Additionally, counsel have diligently prosecuted this case on behalf of Plaintiffs and Class Members over the course of many years and staunch opposition.

Accordingly, the Court appoints Kevin Mahoney and Katherine J. Odenbreit of Mahoney Law Group, APC and Lisa L. Clay as Class Counsel.

### III.   PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

#### A. Legal Standard

To preliminarily approve a proposed class action settlement, Federal Rule of Civil Procedure 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  In turn, review of a proposed settlement typically proceeds in two stages, with preliminary approval followed by a final fairness hearing.  Manual for Complex Litigation, § 21.632 (4th ed. 2004).

Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (citation omitted), "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights," *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted).  Accordingly,

> to determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s)

advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "'It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness,' and 'the settlement must stand or fall in its entirety.'" *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026) (alterations omitted).

In addition to these factors, where "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that "the settlement is not [ ] the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (quotation marks omitted). In such circumstances, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks and citation omitted).

At this preliminary stage and because Class Members will receive an opportunity to be heard on the settlement, "a full fairness analysis is unnecessary[.]" *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 665 (E.D. Cal. 2008). Instead, preliminary approval and notice of the settlement terms to the proposed class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval. . . ." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted); *see also Acosta v. Trans Union*, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially fair*, as the Court will make a final determination of its

adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.")

Additionally, non-settling defendants generally lack standing to object to a proposed settlement. *See Carrillo v. Schneider Logistics Trans-Loading and Dist., Inc.*, 2014 WL 688178, at *2 (C.D. Cal. Feb. 21, 2014); *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987). The only exception is where a non-settling defendant can demonstrate that the proposed settlement strips them of a legal claim or cause of action, or the settlement invalidates the contract rights of one not participating in the settlement. *See Waller*, 828 F.2d at 583.

In evaluating all applicable factors below, the Court finds that the proposed Settlement Agreement should be preliminarily approved.

## B. *Staton* Factor Analysis

### 1. Strength of Plaintiff's case and risk, expense, complexity, and duration of further litigation

"Settlement eliminates the risks inherent in certifying a class, prevailing at trial, and withstanding any subsequent appeals, and it may provide the last opportunity for class members to obtain relief." *Scott v. HSS Inc.*, 2017 WL 10378568, at *8 (C.D. Cal. Apr. 11, 2017). Given the potential risks of further litigation, this factor therefore weighs in favor of granting preliminary approval. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (citation omitted)).

Although Plaintiffs believe in the merits of their case, they also believe this factor weighs in favor of preliminary approval of the Settlement. (*See* Mem. at 24-25.) In particular, Plaintiffs note that the "Court need look no further than the lengthy docket in this case to find that continued litigation is likely interminable."

17

(*Id.* at 25.)  This action has been pending for years, and the Class Period includes four years prior to the filing of the action.  Thus, Plaintiffs note that many of the Class Members' commercial establishments are no longer operational, and the passage of time increases the risk that potential witnesses in this case will either not be located at all or will have little to recollect.  (*Id.* at 26.)  Additionally, Plaintiffs point out that there are significant risks that would come with further litigation, including unfavorable rulings on motions to certify a class, discovery motions, motions in limine, a jury verdict, or the fact the jury could award very limited damages, along with countless other obstacles.  (*Id.*)

As the Court agrees that there are substantial risks that come with continued litigation in this case, it agrees that this factor favors preliminary approval of the settlement.

### 2.  Amount offered in settlement

The proposed Settlement awards Class Members an initial settlement benefit equating to approximately 12.7% of their actual loss.  (Odenbreit Decl. ¶ 55; Lee Decl. ¶ 9.)  Plaintiffs argue that the anticipated recovery by the class, however, in light of the second distribution could be as much as 40-50% of the actual loss. (Odenbreit Decl. ¶ 55.)  A "settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  12.7% recovery of maximum potential liability is consistent with recoveries courts have found reasonable in other consumer class actions.  *See Weeks v. Kellogg Co.*, 2013 WL 6531177, at *15 n.85 (C.D. Cal. Nov. 23, 2013) (finding settlement reasonable when paid 10% of consumers' average total damages).  Additionally, the Settlement also releases Class Members from potential claims brought by DIRECTV regarding any alleged commercial misuse.

The Court finds the amount offered in settlement favors preliminary approval.

### 3.  Extent of discovery proceedings and stage of the proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239.  Discovery can be both formal and informal.  *See Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) (finding plaintiffs had "sufficient information to make an informed decision about the [s]ettlement" where formal discovery had not been completed but class counsel had "conducted significant investigation, discovery and research, and presented the court with documentation supporting those services.").

The Court concludes that the Parties have sufficient information to make an informed decision about settlement.  Plaintiffs and Defendants have engaged in extensive discovery (and numerous discovery battles) during the six years since this action was filed, and the Parties have also engaged in significant motion practice. Moreover, the court-appointed expert, Charles Platt from Bitscope Consulting, LLC, extracted information from the Lonstein Law Offices database and put together a comprehensive list of cases handled by the Lonstein Law Offices on behalf of DIRECTV.  (Docs. 561, 576.)  The resulting Platt Spreadsheet has provided the Parties with a good idea of the number of Class Members and the potential value of each Class Member's case here.  Additionally, Plaintiffs interviewed hundreds of potential Class Members and reviewed hundreds of pages of Class Member documents.  (Odenbreit Decl. ¶ 56; Clay Decl. ¶ 12.)

Thus, the Court finds this factor favors approval of the Settlement.

### 4.  Experience and views of counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."

*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  As a result, representation by competent counsel familiar with the law in the relevant area and with "the strengths and weaknesses of [the parties'] respective positions, suggests the reasonableness of the settlement."  *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007).  "On the other hand, recognizing the potential conflict of interest between attorneys and the class they represent, the Court should not blindly follow counsel's recommendations, but give them appropriate weight in light of all factors surrounding the settlement."  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

As set forth above, Plaintiffs' Counsel are experienced in the prosecution and resolution of consumer class actions and have been prosecuting this action since its inception.  (Odenbreit Decl. ¶¶ 33-43, 57; Clay Decl. ¶¶ 12, 13, 16.)  Counsel "wholeheartedly endorse[] the settlement agreement as fair, reasonable, and adequate."  (Mem. at 31.)  Thus, this factor favors preliminary approval.

### 5.  Arm's length negotiation free from collusion

Although the "proposed settlement need not be ideal," it "must be fair, free of collusion, [and] consistent with counsel's fiduciary obligations to the class."  *Rollins v. Dignity Health*, 336 F.R.D. 456, 461 (N.D. Cal. 2020).

It is obvious that after years of hard-fought litigation, the resulting Settlement is not the product of collusion.  Moreover, the fact the Settlement was reached after extensive and informed arm's-length negotiations lasting over a year with constant involvement of an experienced class action mediator—Hon. Carl J. West (Ret.)—further supports preliminary approval.  (*See* Mem. at 31.)  And, although the Lonstein Defendants and Signal Auditing are not signatories to the Settlement Agreement, and they did not substantively participate in the settlement negotiations, the Settlement still significantly benefits them because it contains a release of any and all claims against them.

Thus, this factor favors preliminary approval and the *Staton* factors as a whole favor preliminary approval.

## C. Lonstein Defendants' Objections

The Lonstein Defendants have filed objections to the Settlement although they failed to appear at the preliminary approval hearing. (*See* Obj., Doc. 624.) The Lonstein Defendants critique the Settlement as improper because other actions (not before this Court) that were filed against the Lonstein Defendants have been dismissed, and the Settlement attributes blame to the Lonstein Law Offices, even when the Lonstein Defendants were excluded from the mediation and had no input in the Settlement Agreement. (*See generally id.*)

The Lonstein Defendants, however, have failed to establish that they have standing to object to the Settlement Agreement. They acknowledge that, as non-settling defendants, they generally lack standing unless they can demonstrate that they will sustain some form of legal prejudice as a result of the settlement. Yet, Defendants' Objections do not identify any form of legal prejudice that they have suffered. (*See id.* at 23-24.) They have identified neither a legal claim or cause of action stripped, nor a contract right that has been invalidated by the terms of the Settlement Agreement. The Lonstein Defendants highlight that the Settlement Agreement uses "derogatory" language toward them and explains that they are concerned about "reputational devastation," (*see id.* at 19), but these potential injuries are not equivalent to legal prejudice, and the Lonstein Defendants cite no case law to support that they are. *Cf. In re Sizzler Rests. Int'l, Inc.*, 262 B.R. 811, 822 n.8 (Bakr. C.D. Cal. 2001) (prejudice to one's reputation does not constitute legal prejudice). And, if anything, the Lonstein Defendants benefit significantly from the Settlement Agreement because the Settlement strips *Class Members* of legal claims and causes of action against the Lonstein Defendants.

Accordingly, the Court holds that the Lonstein Defendants lack standing to object to the Settlement, and their objections are stricken as improper and impertinent.  *See* Fed. R. Civ. P. 12(f) (court may strike impertinent matters "on its own").

### D. Class Representative Incentive Awards

The Court has discretion to approve an incentive award to class representatives that is intended to compensate them for the work done on behalf of the class, and to make up for financial or reputational risk undertaken in bringing the action.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  In assessing the reasonableness of incentive awards, courts balance the number of plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 462 (E.D. Cal. 2013).  Courts must evaluate proposed incentive awards to ensure that they are not excessive given the circumstances and do not destroy the adequacy of the class representatives.  *See Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164-65 (9th Cir. 2013). "Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (listing cases).

Plaintiffs seek an incentive award of $30,000 for Plaintiff Doneyda Perez and $10,000 for Plaintiffs Marlys Nissen, Danny Nissen, Paul Holt, Gregory LaPlante, and Joseph Angelo.  Plaintiffs highlight that Perez's particularly lengthy and significant involvement in the case, and acknowledge her deletion of photographs on her cell phone (Mem. at 34; *see also* Odenbreit Decl. ¶ 65-70.)  With respect to M. Nissen, D. Nissen, Holt, LaPlante, and Angelo, Plaintiffs highlight that they were "aware of the scrutiny Ms. Perez endured and yet knowingly agreed to be placed in the forefront of this action taking significant time away from their respective businesses," they "spoke and met with Class Counsel, scoured their records, took

22

photographs of their business and stood ready to travel to be deposed," and they "provided invaluable information that counsel believes brought this Action to the settlement table, and preserved the class action."  (Mem. at 35-36.)

DIRECTV has opposed the representative award of $30,000 for Perez, explaining that it is inappropriate in light of her spoliation of evidence, and that it is disproportionate to the recovery of the average Class Member.  (*See* Opp., Doc. 621, at 6-8.)

The requested representative award for Perez may be too high, but the Court reserves its final determination as to all incentive awards until the final approval stage.

### E.  Appointment of Settlement Administrator

The Court approves the appointment of Simpluris as the Settlement Administrator in this action in light of Simpluris's ample experience and the Parties' selection process.  (*See* Odenbreit Decl. ¶¶ 73-77; *see generally* Bui Decl.)

### F.  Class Notice

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).   However, actual notice is not required.  *See Silber v. Mabon*, 18 F.3d 1449, 1452-54 (9th Cir. 1994).  Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

The Court has reviewed Plaintiffs' proposed forms of notice, and it finds that they generally comply with these requirements.   However, the Court has identified the following shortcomings that Plaintiffs must remedy for approval:

- The Email Notice shall more explicitly set forth the definition of the certified Class;
- The Postcard Notice shall more explicitly set forth the legal claims set forth by the Class; and
- The Postcard notice shall add that a class member may entire an appearance at the final fairness hearing through an attorney.

Additionally, the Parties agreed at the preliminary approval hearing that the Settlement Administrator shall permit opt-outs electronically either via email or through the Settlement website.

Otherwise, the Court approves, as to form and content, notices that are substantively similar to the forms attached as Exhibit A, B, and C to the Settlement Agreement.  (*See* Odenbreit Decl. at ECF 74-93.)

### G. Conclusion

As the Court concludes that the proposed settlement is fair, reasonable, and adequate, and appears to be the product of serious, informed, non-collusive negotiations, the Court will preliminarily approve the proposed settlement.

## IV.   CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

- That the Class Action Settlement Agreement filed with the Court as Exhibit 1 to the Odenbreit Declaration is fair, just, reasonable, and therefore, meets the requirements for preliminary approval, subject to

further consideration at the final approval hearing after distribution of the Class Notices to Settlement Class Members.

- The following class is certified for purposes of settlement only: All businesses and business owners in the United States who had DIRECTV services installed in their commercial establishment; who were subsequently audited by Defendant Signal Auditing, Inc. ("Signal"); and who at any time after the day four years prior to the date on which the original Complaint was filed (August 4, 2012) through the date the Court grants preliminary approval of the Settlement received communications from Defendants  Lonstein Law Offices, P.C., Wayne Lonstein, and/or Julie Cohen Lonstein, or on behalf of DIRECTV seeking money for allegedly unauthorized use of DIRECTV licensed programming, including NFL Sunday Ticket or any other DIRECTV-related programming.

- Named Plaintiffs Doneyda Perez, Danny Nissen, Marlys Nissen, Joseph Angelo, Gregory LaPlante, and Paul Holt are appointed as Class Representatives.  Kevin Mahoney and Katherine J. Odenbreit of Mahoney Law Group, APC and Lisa L. Clay, Attorney at Law, are appointed as Class Counsel.  The Court finds the notice requirements of Federal Rules of Civil Procedure 23 and applicable standards of due process are satisfied, and that the Class Notices adequately advises Class Members of their rights under the Settlement.  Counsel for the Parties are authorized to correct any typographical errors that may be discovered in the Class Notices and make clarification, to the extent

some are found or needed, so long as the corrections do not materially alter the substance of the Class Notices.

- The notice response deadline will be sixty (60) days from the date of the initial mailing of the Notice.  The procedures and sixty (60)-day deadline for Class Members to request exclusion from or to object to the Settlement is adopted as described in the Settlement Agreement, except that Class Members shall be permitted to request exclusion either via the Settlement website or by email to the Settlement Administrator.  Any Class Member who intends to object to final approval of the Settlement Agreement must submit a written objection to the Settlement Administrator by mail in accordance with the procedures described in the Class Notices attached as Exhibits A andB to the Settlement Agreement.

- Simpluris is appointed to act as the Settlement Administrator pursuant to the terms of the Settlement Agreement.  The Settlement Administrator is ordered to carry out the Settlement according to the terms of the Settlement Agreement and in conformity with this Order, including disseminating the Notices according to the notice plan described in the Settlement Agreement.  Based upon the cost estimate submitted by Simpluris, the Court preliminarily approves administration costs in the maximum amount of seventy-five thousand dollars ($75,000.00) to be deducted from the Total Settlement Fund.

- DIRECTV is ordered to furnish the Platt Spreadsheets to Simpluris within ten (10) calendar days of the entry of this Order.

- DIRECTV is ordered to deposit the Total Settlement Fund into a Qualified Settlement Fund with Simpluris within thirty (30) days of the entry of this Order.

- The Parties are ordered to otherwise carry out the Settlement according to the terms of the Settlement Agreement.

- The Motion for Approval of Attorneys' Fees, Costs and Class Representative Incentive Awards will be filed no later than fifteen (15) days prior to the deadline for Settlement Class Members to request exclusion or object to the Settlement.  The Ninth Circuit's benchmark for fees for common fund settlements is 25% of the total fund.  *See Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016). Accordingly, the Court will review the request for fees in connection with the Motion for Final Approval, and Class Counsel's application for attorney fees must make a sufficient showing justifying any upward departure from the Ninth Circuit's benchmark.

- The Motion for Final Approval of the Settlement shall be filed and served no later than December 16, 2022.

- A Final Approval Hearing will be held on Friday, January 6, 2023, at 10:30 a.m., to determine whether the Settlement Agreement should be granted final approval as fair, reasonable, and adequate as to the Settlement Class Members.  The Court reserves the right to continue the date of the Final Approval hearing without further notice to Class Members.  The Court retains jurisdiction to consider all further applications arising out of or in connection with the Settlement Agreement.

- In the event the Settlement is not fully and finally approved, or otherwise does not become effective in accordance with the terms of the Settlement Agreement, this Order shall be rendered null and void and shall be vacated, and the Parties shall revert to their respective positions before entering into the Settlement Agreement.  If the

Settlement does not become final for any reason, the fact that the Parties were willing to agree to a settlement and the circumstances, proceedings, and documents related to the proposed Settlement shall have no bearing on, and will not be admissible in connection with litigation, whether through issue preclusive, estoppel or otherwise.

- All proceedings in the action are stayed until Final Approval of the Settlement.
- The Court ORDERS the parties to file a revised version of the Email and Postcard Class Notice within **ten (10) days** of this Order.

DATED:  August 23, 2022

_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE

**EXHIBIT 2**

To:        [Settlement Class Member email address]

From:      Class Action Claim Administrator

Subject:   Notice of Class Action Settlement

---

**This Notice of Class action Settlement is intended for [name of business].**
**For more information and your estimated Class Benefit, please visit the settlement website**
**at [website] and enter your unique ID number: [Unique ID].**
**[Español] •[中文] • [Korean] • [Vietnamese]**

The notice concerns your potential right to recovery based on a settlement in a case called *Perez v. DIRECTV Group Holdings, LLC, et al.,* Case No. 16-cv-01440-JLS-DFM, pending in the United States District Court for the Central District of California filed on August 4, 2016. This proposed class action Settlement will resolve a lawsuit against DIRECTV Group Holdings, LLC, DIRECTV Holdings, LLC, DIRECTV, LLC (collectively, "DIRECTV"), Signal Auditing, Inc., Lonstein Law Office, P.C., Julie Cohen Lonstein, and Wayne M. Lonstein (collectively and together with DIRECTV, the "Defendants"). The Court authorized this notice.

The Settlement Class is defined as: "All businesses and business owners in the United States who had DIRECTV services installed in their commercial establishment; who were subsequently audited by Defendant Signal Auditing, Inc.; and who at any time on or after the day four years prior to the date on which the original Complaint was filed (August 4, 2012) through the date the Court grants preliminary approval of the settlement, received communications from the Lonstein Defendants on behalf of DIRECTV seeking money for allegedly unauthorized use of DIRECTV licensed programming, including NFL Sunday Ticket or any other DIRECTV-related programming."

> **Formatted:** Font: 12 pt, Highlight

The proposed Settlement affects all businesses and business owners in the United States who had DIRECTV services installed in their commercial establishment; who were subsequently audited by Defendant Signal Auditing, Inc.; and who at any time on or after the day four years prior to the date on which the original Complaint was filed (August 4, 2012) through the date the Court grants preliminary approval of the settlement, received communications from the Lonstein Defendants on behalf of DIRECTV seeking money for allegedly unauthorized use of DIRECTV-licensed programming, including NFL Sunday Ticket or any other DIRECTV-related programming.

> **Formatted:** Font: 12 pt

**What is the Lawsuit About?**

Plaintiff Doneyda Perez, individually and on behalf of Oneida's Beauty and Barber Salon filed this nationwide putative class action case on August 4, 2016 against Defendants alleging multiple claims, including civil violation of the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(c). Additional named Plaintiffs were added to the lawsuit on December 12, 2020 ("Class Representatives" or "Plaintiffs"). The Plaintiffs in this case allege that they were each contacted by the Lonstein Law Office on behalf of DIRECTV concerning allegations that they displayed DIRECTV programming in their businesses without a valid commercial license. Plaintiffs allege that Defendants conspired to sell businesses and business owners residential DIRECTV programming and then hired the Lonstein Law Office to pursue legal

claims against those businesses for broadcasting DIRECTV programming without a valid commercial license.

Defendants deny these allegations. Defendants contend that they have complied with the law in all respects and at all times and that the legal claims brought on behalf of DIRECTV were both valid and brought in good faith.

### What are the Settlement Terms?

DIRECTV will pay $9,400,000 into a Settlement Fund. The Settlement provides that the Settlement Fund is to be distributed to Class Members, after deduction of any Court-approved attorneys' fees and expenses, notice and administration costs, and incentive awards. The benefit to be paid to each Class Member depends on the amount of money, if any, the Class Member paid to the Lonstein Law Office and the final number of Class Members. [Click here] to review your estimated payment by entering your unique ID ([unique ID]) and other information requested to verify your identity.

### What Are My Options?

**Do Nothing** (except fill out an IRS W-9 Form if your Settlement Benefit is $600 or more)

If the settlement is approved by the Court and [name of business] does nothing, it will remain in the Class, it will be eligible for a payment, and **all legal claims it has against the Defendants that were or could have been raised in the Lawsuit related to the allegations in the Lawsuit will be released**. If your Settlement Benefit is more than $599, you must visit the settlement website and fill out an IRS Form W-9 for your business before your settlement benefit check can be mailed to you. **To update the address or contact information for [name of business], please visit the settlement website, [website]**.

**Opt Out**

You can Opt Out from the Class – that is be excluded from the Class – if you wish to retain the right to sue Defendants separately for the Released Claims. If you Opt Out, you cannot obtain any benefits from the Settlement, which means you will not receive a monetary payment as part of the Settlement Benefit distribution. In addition, if you Opt Out you cannot subject an Objection to the Settlement.

To Opt Out, you must mail or email an Opt-Out request to the Administrator at [address] or [email address]. An Opt-Out request from a Class Member that is an individual must be signed by the Class Member requesting exclusion, contain the Class member's full name and address; and the following statement: "I request to be excluded from the proposed class settlement in *Perez v. DIRECTV Group Holdings, LLC, et al.*, Case No. 16-cv-01440-JLS-DFM (C.D. Cal.)." An Opt-Out request from a Class Member that is a business must be signed by a business representative duly authorized to act on behalf of the business, contain the full legal name of the business, the business' address, the full name and title of the individual submitting the Opt-Out request on behalf of the business, and the following

Formatted: Highlight

Formatted: Highlight

statement: "This business requests to be excluded from the proposed class settlement in *Perez v. DIRECTV Group Holdings, LLC, et al.,* Case No. 16-cv-01440-JLS-DFM (C.D. Cal.)." An Opt-Out request from a Class Member that is a business must ***also*** be accompanied by the following additional statement: "I, [name of business representative], represent and warrant that I have the legal authority and ability to exclude [name of business] from the proposed class settlement in *Perez v. DIRECTV Group Holdings, LLC, et al.,* Case No. 16-cv-01440-JLS-DFM (C.D. Cal.)."

**To be valid, the Opt-Out request must be postmarked on or before the Opt-Out Deadline, which is [DATE].**

**Object to the Settlement**

You can ask the Court to deny approval of the Settlement by timely filing an Objection with the Court. The Court cannot require a larger Settlement; the Court can only approve or disallow the Settlement. If the Court denies approval to the Settlement, no Settlement Benefits will be issued, and the lawsuit will continue. You can also ask the Court to disapprove the requested payments to Plaintiff and to Class Counsel.

You may also appear at the Final Approval Hearing, either yourself or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney. **If you want to raise an objection to the Settlement at the Final Approval Hearing, you must submit that objection in writing, by the Objection Deadline, which is [DATE].**
If you want to raise an Objection to the Settlement at the Final Approval Hearing, you or your counsel must submit that Objection in writing to the Administrator at [address] by the deadline [DATE]. The Administrator will provide your Objection to DIRECTV and Class Counsel and Class Counsel will file your Objection with the Court. Your Objection must be postmarked by the Objection Deadline set forth above. Any Objection must include: (a) a reference at the beginning to this case, *Perez v. DIRECTV Group Holdings, LLC, et al., Case No. 16-cv-01440-JLS-DFM* (C.D. Cal.) and the name of the presiding judge, the Hon. Josephine L. Staton; (b) the name, address, telephone number, and, if available, the email address of the Person objecting, and if represented by counsel, of his/her counsel; (c) a written statement of all grounds for the Objection, accompanied by any legal support for such Objection; (d) whether he/she intends to appear at the Final Approval Hearing, either with or without counsel; (e) a statement explaining the objectors' basis for asserting that the objector is a member of the Settlement Class; and (f) a detailed list of any other objections submitted by the Class Member, or his/her counsel, to any class actions submitted in any court, whether state or otherwise, in the United States in the previous five (5) years. If the Class Member or his/her counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, he/she shall affirmatively state so in the written materials provided in connection with the Objection to this Settlement. Failure to include this information and documentation may be grounds for overruling and rejecting your Objection.

If you submit an Objection, you may appear, either personally or through counsel, at the Final Approval Hearing in order to show cause why this Settlement and this Agreement should not be approved as fair, adequate, and reasonable or to object to any request for a Attorneys' Fees and Expenses or Incentive Award. Class Members shall send notice of their intention to attend or speak at the final fairness hearing to Class Counsel and/or the Settlement Administrator no later than **fourteen (14) days** prior to the final fairness hearing date. The Settlement Administrator or Class Counsel should, in turn, file a notice no later than **seven (7) days** prior to the final fairness hearing date, providing the Court with a list of Class Members who wish to speak at the hearing, if any. Moreover, because the Court may conduct the final fairness hearing in this matter via Zoom, the Settlement Administrator and/or Class Counsel are responsible for providing Class Members who wish to attend the hearing with the Zoom information the Clerk will distribute in advance of the hearing. If the Court makes the Final Approval Hearing available via Zoom or via other means of remote appearance, a remote appearance shall be considered equivalent to an in-person appearance, with all the rights and obligations applicable to in-person appearances.

**If you fail to comply with these requirements, you may be deemed to have waived all objections and may not be entitled to speak at the Final Approval Hearing on [DATE].**

**When Will the Court Decide If the Settlement is Approved?**

The Court will hold a hearing on [DATE], to consider whether to approve the Settlement. Class Counsel will ask the Court to award them up to $3,133,333.33 in attorneys' fees, $155,000.00 in litigation expenses, and a total of $80,000.00 in incentive awards to the six (6) business owners who brought the Lawsuit. The hearing is open to the public. You may appear at the hearing, but you do not have to.

The hearing will be held in the United States District Court of the Central District of California, before the Honorable Josephine L. Staton, in the First Street U.S. Courthouse, 350 West 1st St., Los Angeles, CA 90012, Courtroom 8A, 8th Floor, or such other judge and courtroom assigned by the Court. Virtual attendance may be possible. This hearing date may change without further notice to you. Consult the Settlement Website at [website] or the Court docket in this case available through Public Access to Court Electronic Records PACER (http://www.pacer.gov), for any updated information on the hearing date and time.

For the full Notice of Settlement please visit the Settlement Administrator website at [website] or the links below.

---

[English version of Notice of Settlement]

[Spanish language version of email notice] [Spanish language version of Notice of Settlement]

[Mandarin language version of email notice] [Mandarin language version of Notice of Settlement]

[Korean language version of email notice] [Korean version of Notice of Settlement]

[Vietnamese language version of email notice] [Vietnamese version of Notice of Settlement]

**EXHIBIT 3**

# NOTICE OF
# CLASS ACTION SETTLEMENT

*Perez v. DIRECTV Group Holdings, LLC et al*

Settlement Claims Administrator

First-Class Mail

US Postage

**To businesses or business owners contacted by the Lonstein Law Office on behalf of DIRECTV**

||||||||||||||||||||||||||||

Postal Service: Please do not mark barcode

«ID»

«First1» «Last1»

«C/O»

«Addr1»  «Addr2»

## Please read.

## This settlement may affect your rights.

A proposed class action settlement has been reached with DIRECTV Group Holdings, LLC, DIRECTV Holdings, LLC, and DIRECTV, LLC (collectively, "DIRECTV"). The settlement, if approved, will resolve a lawsuit entitled *Perez v. DIRECTV Group Holdings, LLC, et al.*, Case No. 16-cv-01440-JLS-DFM, in the United States District Court for the Central District of California. The Court authorized this notice.

You received this notice because information from the Lonstein Law Office records reflect that you may be a member of the Settlement Class.

**The Settlement Class is defined as:** "All businesses and business owners in the United States who had DIRECTV services installed in their commercial establishment; who were subsequently audited by Defendant Signal Signal Auditing, Inc.; and who at any time on or after the day four years prior to the date on which the original Complaint was filed (August 4, 2012) through the date the Court grants preliminary approval of the settlement, received communications from Defendants Lonstein Law Offices, P.C., Wayne Lonstein and/or Julie Cohen Lonstein on behalf of DIRECTV seeking money for allegedly unauthorized use of DIRECTV licensed programming, including NFL Sunday Ticket or any other DIRECTV-related programming."

**The Plaintiffs in this case allege that they were each contacted by the Lonstein Law Office on behalf of DIRECTV concerning allegations that they displayed DIRECTV programming in their businesses without a valid commercial license. Plaintiffs allege that Defendants conspired to sell businesses and business owners residential DIRECTV programming, after which the Lonstein Law Office was retained to pursue legal claims against those businesses for broadcasting DIRECTV programming without a valid commercial license. Plaintiffs allege this this constitutes a violation of the Racketeer Influenced & Corrupt Organizations Act, 18 U.S.C. § 1962(c). Defendants deny any wrongdoing and contend the case has no merit. The Court has not decided the Lawsuit, but the Plaintiffs and DIRECTV have agreed to a class settlement to resolve the dispute.**

**What are the Settlement Terms?** DIRECTV will pay $9,400,000 into a Settlement Fund.

The Settlement provides that the Settlement Fund is to be distributed to Class Members after deduction of any Court-approved attorneys' fees and litigation expenses, notice and administration costs, and incentive awards. The benefit to be paid to each Class Member depends on the amount of money, if any, the Class Member paid to the Lonstein Law Office and the final number of Class Members.

**What Are My Options?** If the settlement is approved by the Court and you do nothing, you will remain in the Class, you will be eligible for a payment, and **all legal claims you have against the Defendants that were or could have been raised in the Lawsuit related to the allegations in the Lawsuit will be released**. If you wish to preserve your right to bring a separate lawsuit, you must opt out of the settlement. Alternatively, you have the right to object to the settlement. Your opt-out request or objection must be received by [Date]. For details on how to opt out or object, visit the settlement website at [website].

The Court will hold a final approval hearing on [Date] at [Time] to consider whether to approve the settlement. Class Counsel will ask the Court to award them up to $3,133,333.33 in attorneys' fees, $155,000.00 in litigation expenses, and a total of $80,000.00 in incentive awards to the 6 business owners who brought the Lawsuit. You may appear at the hearing or enter an appearance through an attorney of your choice, but you do not have to.

   **To update your address, please visit the settlement website, [website].** The website also contains a more detailed notice of the terms of the settlement, answers to frequently asked questions, and other information about the Lawsuit. If you cannot access the website, you can obtain detailed notice by contacting the Settlement Administrator at the address or phone number on the reverse side of this card.

**EXHIBIT 4**

---

**Notice of Class Action Settlement for Businesses or Business Owners Who Were Contacted by the Lonstein Law Office Concerning Commercial Misuse of DIRECTV Programming Between August 4, 2016 and [date].**

---

### This notice may affect your rights. Please read it carefully.

*A court has authorized this notice. This is not a solicitation from a lawyer.*

- The notice concerns your potential right to recovery based on a settlement in a case called *Perez v. DIRECTV Group Holdings, LLC, et al.,* Case No. 16-cv-01440-JLS-DFM, pending in the United States District Court for the Central District of California filed on August 4, 2016.

- This proposed class action Settlement will resolve a lawsuit against DIRECTV Group Holdings, LLC, DIRECTV Holdings, LLC, DIRECTV, LLC (collectively, "DIRECTV"), Signal Auditing, Inc., Lonstein Law Office, P.C., Julie Cohen Lonstein, and Wayne M. Lonstein (collectively and together with DIRECTV, the "Defendants").

- The proposed Settlement affects all businesses and business owners in the United States who had DIRECTV services installed in their commercial establishment; who were subsequently audited by Defendant Signal Auditing, Inc.; and who at any time on or after the day four years prior to the date on which the original Complaint was filed (August 4, 2012) through the date the Court grants preliminary approval of the settlement, received communications from the Lonstein Defendants on behalf of DIRECTV seeking money for allegedly unauthorized use of DIRECTV licensed programming, including NFL Sunday Ticket or any other DIRECTV-related programming ("Settlement Class").

- ~~The Lawsuit alleges that DIRECTV and the other defendants solicited business owners to purchase DIRECTV programing for their businesses, but then directed the defendant Lonstein Law Office to contact those businesses to assert that they committed commercial misuse of DIRECTV programming in violation of the Federal Communications Act.~~ The Plaintiffs in this case allege that they were each contacted by the Lonstein Law Office on behalf of DIRECTV concerning allegations that they displayed DIRECTV programming in their businesses without a valid commercial license. Plaintiffs allege that Defendants conspired to sell businesses and business owners residential DIRECTV programming after which the Lonstein Law Office was retained to pursue legal claims against those businesses for broadcasting DIRECTV programming without a valid commercial license. Plaintiffs allege that this constitutes a violation of the Racketeer Influenced & Corrupt Organizations Act, 18 U.S.C. §1962(c).

  *(Formatted: Highlight)*

- Defendants deny any wrongdoing. They contend that they have complied with the law in all respects and at all times and that DIRECTV and the Lonstein Law Office properly pursued valid legal claims against businesses that displayed DIRECTV programming in their businesses without a valid license to do so.

- As part of a compromise to resolve the claims in this case fully, DIRECTV has agreed to pay $9,400,000 into a fund (the "Total Settlement Fund"); not to retain the Lonstein Law Office Julie Cohen Lonstein, or Wayne M. Lonstein in any capacity for potential claims of commercial misuse by DIRECTV's customers going forward; and to include a statement in its order confirmation letter to customers that reminds customers that residential service may be used for residential purposes only, and cannot be used in commercial settings.

Questions? Visit [website] or call [phone number].

- The lawyers who brought the lawsuit ("Class Counsel") will ask the Court for up to $3,133,333.33 to be paid out of the Total Settlement Fund as Attorneys' Fees for investigating the facts, litigating the case, and negotiating the Settlement and $151,550.94, to be paid out of the Total Settlement Fund, for litigation Expenses. Class Counsel also will ask the Court to award a total of $80,000 collectively to the Class Representatives who brought this lawsuit. These payments are called the "Class Representative Incentive Awards" or "Incentive Awards."

- Your legal rights are affected whether or not you act. Read this notice carefully. Below are your options for responding to this Notice.

This notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at [website], or contact the Settlement Administrator at [address] or by telephone at [phone number].

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT.**

| YOUR RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **Do Nothing** | You will receive a settlement payment. Also, you will have no right to sue later for the claims released by the Settlement. | |
| **Opt-Out** | Get out of the lawsuit and the Settlement. This is the only option that allows you to ever bring or join another lawsuit raising the same legal claims against the Defendants. You will not receive a settlement benefit. | **[DATE]** |
| **File Objection** | Write to the Court about any aspect of the Settlement you don't like or you don't think is fair, adequate, or reasonable. (If you object to any aspect of the Settlement, you must submit a written Objection by the Objection Deadline.) If you object, you must remain a member of the Settlement Class and cannot opt-out of the lawsuit. | **[DATE]** |
| **Go to a Hearing** | Speak in Court about the Settlement. (If you object to any aspect of the Settlement, you **must** submit a written Objection by the Objection Deadline noted above.) You may appear yourself of through an attorney of your choice at your own expense. | **[DATE]** |

- These rights and options—and the deadlines to exercise them—are explained in this notice.
- The Court in charge of this case still has to decide whether to approve the Settlement. Settlement benefits will be provided to Class Members only if the Court approves the Settlement. If there are appeals, these benefits will not be provided until the appeals are resolved and the Settlement becomes effective. Please be patient.

- **Fairness Hearing**

Questions? Visit [website] or call [phone number].
2

On [DATE], at [TIME]., the Court will hold a hearing to determine:  (1) whether the proposed Settlement should be approved as fair, reasonable, and adequate and should receive final approval; (2) whether Class Counsel's Application for Attorneys' Fees and Expenses should be granted; and (3) whether the application for the Class Representative Incentive Award should be granted.  The hearing will be held in the United States District Court of the Central District of California, before the Honorable Josephine L. Staton, in the First Street U.S. Courthouse, Courtroom 8A, on the 8th floor, located at 350 W. 1st Street, Los Angeles, California 90012, or such other judge assigned by the Court.  The courtroom is subject to change; any updated information can be obtained from the Settlement Website or the Court's website. Virtual attendance may be possible; please check the Settlement Website and the Court's website at cacd.uscourts.gov for more information for updated information on the hearing date and time.  All papers filed in this action are available for review via the Public Access to Court Electronic Resources System (PACER) at https://www.pacer.gov.

Questions? Visit [website] or call [phone number].

**Important Dates**

| | |
|---|---|
| [DATE] | Objection Deadline |
| [DATE] | Opt-Out Deadline |
| [DATE] | Fairness Hearing |

**Table of Contents**

1.   How Do I Know If I Am Affected By The Settlement?...................................................... 1

2.   What Is The Lawsuit About? ............................................................................................. 1

3.   What Can I Get In The Settlement? ................................................................................... 2

4.   How Do I Get My Benefits? .............................................................................................. 2

5.   What Do Plaintiffs And Their Lawyers Get? .................................................................... 3

6.   What Happens If I Do Not Opt Out From The Settlement? ............................................... 3

7.   How Can I Exclude Myself From The Settlement?............................................................ 5

8.   How Do I Object To The Settlement? ................................................................................ 6

9.   When Will The Court Decide If The Settlement Is Approved?.......................................... 7

10.  How Do I Get More Information? ...................................................................................... 7

Questions? Visit [website] or call [phone number].

1.    **How Do I Know If I Am Affected By The Settlement?**

If you or your business were contacted by the Lonstein Law Office between August 4, 2012 and [date of preliminary approval] alleging commercial misuse of DIRECTV programming, you or your business have been identified as a member of the Settlement Class. If the Settlement is approved by the Court and you do not opt out, you will receive payment as a Settlement Class Member.

On [date of preliminary approval], the Court preliminarily certified—for settlement purposes only—a Class defined as all businesses and business owners in the United States who had DIRECTV services installed in their commercial establishment; who were subsequently audited by Defendant Signal Auditing, Inc.; and who at any time on or after the day four years prior to the date on which the original Complaint was filed (August 4, 2012) through [the date the Court grants preliminary approval of the Settlement], received communications from Defendants Lonstein Law Offices, P.C., Wayne Lonstein, and/or Julie Lonstein (the "Lonstein Defendants") on behalf of DIRECTV seeking money for allegedly unauthorized use of DIRECTV licensed programming, including NFL Sunday Ticket or any other DIRECTV-related programming ("Settlement Class"). Excluded from the Class are (a) the Honorable Judges Josephine L. Staton, Douglas F. McCormick, Carl West (Ret.) and any member of their immediate families; (b) any government entity; (c) any entity in which any Defendant has a controlling interest; (d) any subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns of any Defendant; (e) counsel for the Parties; and (f) any persons who timely opt out of the Class.

If the Settlement does not become effective (for example, because it is not finally approved, or the approval is reversed on appeal), then this litigation will continue.

2.    **What Is The Lawsuit About?**

Plaintiff Doneyda Perez, individually and on behalf of Onieda's Beauty and Barber Salon filed this nationwide putative class action case on August 4, 2016 against Defendants alleging multiple claims, including civil violation of the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(c). Named Plaintiffs Marlys and Danny Nissen, individually and on behalf of Mo's One More Lounge, Joseph Angelo, individually and on behalf of Stuft Surfer Café, Gregory Laplante individually and on behalf of G and G Smog Test Center dba G and G Smog and Paul Holt individually and on behalf of 4 Dice Restaurant were added to the lawsuit on December 12, 2020 ("Class Representatives" or "Plaintiffs"). The Plaintiffs in this case allege that they were each contacted by the Lonstein Law Office on behalf of DIRECTV concerning allegations that they displayed DIRECTV programming in their businesses without a valid commercial license. Plaintiffs allege that Defendants conspired to sell businesses and business owners residential DIRECTV programming and then hired the Lonstein Law Office to pursue legal claims against those businesses for broadcasting DIRECTV programming without a valid commercial license. This is just a summary of the allegations. The Fourth Amended Complaint can be viewed on the Public Access to Court Electronic Resources System (PACER) at https://www.pacer.gov, Docket No. 498.

Defendants deny these allegations. Defendants contend that they have complied with the law in all respects and at all times and that the legal claims brought on behalf of DIRECTV were both valid and brought in good faith.

The parties engaged in numerous mediation sessions for over a year. After considering the risks,

costs, benefits, and possibility of extended litigation, Plaintiffs and DIRECTV reached a settlement that resolves Plaintiffs' claims as to all Defendants. Plaintiffs and Class Counsel have concluded that the terms and conditions of the Settlement are fair and reasonable and that the Settlement is in the best interests of the Settlement Class Members.

This lawsuit is a class action.  A class action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding.  One or more people—sometimes called "class representatives"—sue on behalf of people who have similar claims.  All of the people who have similar claims form a "class" and are "class members."  A settlement in a class action—if approved by the Court as fair, reasonable, and adequate—resolves the claims for all class members, except those who choose to exclude themselves from the class.

---

3.      **What Can I Get In The Settlement?**

All Class Members qualify for a Settlement Benefit in the form of a monetary payment.  There is no need to submit a claim in order to receive a Settlement Benefit.  The amount of the Settlement Benefit will vary depending on whether the Class Member paid any money to settle claims against them and, if so, how much the Class Member paid.

To see your estimated Settlement Benefit visit the Administrator website at www._____and enter the unique ID provided to you in the Notice you received by mail or email.

The amount of your Settlement Benefit will be determined by calculating a pro rata share of the Total Settlement Fund ($9,400,000) after deduction of attorney's fees, litigation costs, Administration Costs, and Incentive Awards approved by the Court ("Net Settlement Fund"). All class Members will receive a minimum payment of at least $25.00. The Net Settlement Fund will be allocated on a pro rata basis based on the dollar amount paid by each Settlement Class Members according to an independent analysis of the Lonstein Law Office records.

The amount of your Settlement Benefit could increase if funds remain after settlement checks have been cashed due to some Settlement Class Members' failure to cash their settlement checks before the expiration period or if the Court awards attorney's fees, costs or Incentive Awards that are less than requested. Any funds representing uncashed checks by Settlement Class Members will first be used to pay for additional Settlement Administration costs, if any, and will then be distributed on a pro rata basis to those Settlement Class Members who cashed their Settlement Checks.

---

4.      **How Do I Get My Benefits?**

You do not need to do anything to receive the Settlement Benefit identified above. A Final Approval Hearing will be scheduled for [DATE]. If the Court approves the Settlement and there are no appeals, Settlement Benefits will be distributed approximately 60 days after the Settlement is no longer subject to appeal or review, unless otherwise ordered by the Court.  If the Court does not approve the Settlement, or if the Settlement is overturned on appeal, no Settlement Benefits will be issued.

You must visit the website and fill out an IRS Form W-9 for your business before your Settlement Benefit check can be mailed to you. Please note that Settlement Benefit checks must be cashed within 180 days after they are issued.  Settlement Benefit checks that are not cashed prior to the expiration date listed on the check will no longer be valid, and no Settlement Benefit checks will be reissued.  Any money

Questions? Visit [website] or call [phone number].

remaining in the settlement fund as a result of the failure of Class Members to timely cash their Settlement Benefit checks will either be distributed to other Class Members or donated to a not-for-profit 501(c)(3) organization(s), to be agreed upon by the Parties and approved by the Court.

If you would like to change your address, you may do so on the settlement website at [website].

### 5.  What Do Plaintiffs And Their Lawyers Get?

To date, Class Counsel has not been compensated for any of their work on this case.  As part of the Settlement, Class Counsel may apply to the Court to award them up to $3,133,333.33 to pay them Attorneys' Fees and $151,550.94 for litigation Expenses. Defendants have the right to object to Class Counsel's Application for Attorneys' Fees if it is for an amount that exceeds $3,133,333.33.  Any Attorneys' Fees and Expenses approved by the Court shall be paid from the Total Settlement Fund. If the Attorneys' Fees and Expenses approved by the Court are less than requested, the difference will go to the Net Settlement Fund to pay the Settlement Benefits to Class Members.

In addition, the named Class Representatives in this case may apply to the Court for Class Representative Incentives.  Plaintiffs contend that these payments are designed to compensate the named Class Representatives for the time, effort, and risks they undertook in pursuing this litigation to benefit the Class.

Plaintiffs will file their Application for Attorneys' Fees, Expenses and Incentive Awards no less than 15 days prior to [Date], which is the date by which you must object to the Settlement. Once filed, a copy of Class Counsel's motion for an award for Attorneys' Fees and Expenses and for a Class Representative Incentive Award ("Fee Motion") will be available on the Settlement Website and the Public Access to Court Electronic Resources System (PACER) at https://www.pacer.gov. Settlement Class Members can object to the Fee Motion by the same deadline as their general objections to the Settlement are due which is [Date]. The Court will determine the amount of Attorneys' Fees and Expenses as well as the amount of Class Representative Incentive Award.

### 6.  What Happens If I Do Not Opt Out From The Settlement?

If you are a Class Member and you do not Opt Out from the Settlement, you will be legally bound by all orders and judgments of the Court, and you will also be legally bound to the Releases of the Claims in the Settlement.  This means that in exchange for being a Class Member and being eligible to receive a benefit in the Settlement, **you will not be able to sue, continue to sue, or be part of any other lawsuit** against the Released Defendants (defined below), including DIRECTV Group Holdings, LLC, DIRECTV Holdings, LLC, DIRECTV, LLC, Lonstein Law Office, P.C., Signal Auditing, Inc., Julie Cohen Lonstein, Wayne M. Lonstein that involves the same legal Claims as those released through this Settlement.

**You will not be responsible for any out-of-pocket costs or attorneys' fees concerning this case if you stay in the class.**

Staying in the class means that you agree to the following terms of the Settlement that describe exactly the legal Claims that you give up:

a)  Upon Final Approval, Class Members, including any person claiming derivative rights of any Class Member as the Class Member's parent, child, heir, guardian, associate, co-owner,

Questions? Visit [website] or call [phone number].

attorney, agent, administrator, executor, devisee, predecessor, successor, assignee, assigns, representative of any kind, shareholder, partner, director, employee or affiliate, shall have unconditionally, completely, and irrevocably released and discharged the Released Defendants, and each of them, any and all claims, demands, debts, liabilities, actions, causes of action of every kind and nature, obligations, damages, losses, costs, whether known or unknown, actual or potential, suspected or unsuspected, direct or indirect, contingent or fixed, arising out of, related to, or connected in any way to the allegations contained in the Fourth Amended Complaint and, more specifically, the prosecution of commercial misuse claims against Class Members by the Lonstein Law Office on behalf of DIRECTV or AT&T, including any auditing performed by Signal Auditing, regardless of whether or not such audit resulted in any action by the Lonstein Law Office that are alleged to have occurred within the Class Period.

b) With respect to the released claims set forth in the preceding paragraph, each Class Members shall, by operation of Final Approval and Judgment, be deemed to have **waived** the provisions, rights and benefits of California Civil Code Section 1542, and any similar law of any state or territory of the United States or principle of common law, but only with respect to the matters released as set forth Section 6(a) above. Section 1542 provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Class Members understand and acknowledge the significance of these waivers of California Civil Code Section 1542 and any other applicable federal or state statute, case law, rule or regulation relating to limitations on releases.  In connection with such waivers and relinquishment, the Class Members acknowledge that they are aware that they are assuming the risk that facts additional, different, or contrary to the facts which each believes or understands to exist, may now exist or may be discovered after the release set forth in this Agreement becomes effective, and Class Members shall, by operation of the Final Approval Order and Judgment, be deemed to have agreed that any such additional, different, or contrary facts shall in no way limit, waive, or reduce the foregoing releases, which shall remain in full force and effect.

c) The Parties shall be deemed to have agreed that the release set forth herein will be and may be raised as a complete defense to and will preclude any action or proceeding based on the Released Claims.

d) The term "Released Defendants" as used above includes all of the Defendants and each of their respective current and former parent companies, subsidiaries, affiliates, divisions, and current and former affiliated individuals and entities, legal successors, predecessors (including companies they have acquired, purchased, or absorbed), assigns, joint ventures, and each and all of their respective officers, partners, directors, owners, stockholders, servants, agents, shareholders, members, managers, principals, investment advisors, consultants, employees, representatives, attorneys,

Questions? Visit [website] or call [phone number].

accountants, lenders, underwriters, benefits administrators, investors, funds, and insurers, past, present and future, and all persons acting under, by, through, or in concert with any of them.

e)  <u>Releases By the DIRECTV Defendants.</u>  Upon Final Approval, the DIRECTV Defendants, and including any person or entity claiming derivative rights of the DIRECTV Defendants, shall have fully, finally, unconditionally, completely, irrevocably, forever released, relinquished, and discharged the Released Class Members, and shall be forever barred from instituting, maintaining, or prosecuting any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities related solely to allegations of commercial misuse of DIRECTV services which are claimed to have occurred within the Class Period against any Released Class Members.  The claims released in the foregoing sentence include any and all such claims by the DIRECTV Defendants and the DIRECTV Defendants' attorneys, employees, agents, assignees, parents, subsidiaries, and affiliates to the fullest extent that the DIRECTV Defendants have authority to release them, and the DIRECTV Defendants represent they have not assigned any rights regarding allegations of commercial misuse or any other allegations related to the factual claims as pled in any of the complaints in the Litigation to any third party, agent or attorney (apart from ordinary collection of debts owed for failure to pay for AT&T or DIRECTV service).  This release does not include any disputes, between the DIRECTV Defendants and any Settlement Class Members, that are outside of the allegations as alleged and pled in any of the complaints in the Litigation, and this release does not include any disputes, between the DIRECTV Defendants and any Settlement Class Members, arising out of the customer terms of service provided by the DIRECTV Defendants or payment to the DIRECTV Defendants for DIRECTV services provided. Similarly, this release shall not prohibit the DIRECTV Defendants' ability to use their legally-appropriate processes to address Settlement Class Members' commercial misuse, if any, through conversion of the Settlement Class Member accounts and/or termination of the account for events arising after the end of the Class Period. "Released Class Members" means all Settlement Class Members and each of their respective current and former parent companies, subsidiaries, affiliates, divisions, and current and former affiliated individuals and entities, legal successors, predecessors (including companies they have acquired, purchased, or absorbed), assigns, joint ventures, and each and all of their respective officers, partners, directors, owners, stockholders, servants, agents, shareholders, members, managers, principals, investment advisors, consultants, employees, representatives, attorneys, accountants, lenders, underwriters, benefits administrators, investors, funds, and insurers, past, present and future, and all persons acting under, by, through, or in concert with any of them.

The full text of the Settlement Agreement, which includes all of the provisions addressing the Released Claims, Released Defendants, and Released Class Members, is available at [website].

7.    **How Can I Exclude Myself From The Settlement?**

You can Opt Out from the Class—that is, be excluded from the Class—if you wish to retain the right to sue Defendants separately for the Released Claims.  If you Opt Out, you cannot obtain any benefits from the Settlement, which means you will not receive a monetary payment as part of the Settlement Benefit distribution.  In addition, if you Opt Out, you cannot submit an Objection to the Settlement.

To Opt Out, you must mail or email an Opt-Out request to the Administrator at [address] or [email]. 

Questions? Visit [website] or call [phone number].

address]. An Opt-Out request from a Class Member that is an individual must be signed or emailed by the Class Member requesting exclusion, contain the Class member's full name and address; and the following statement: "I request to be excluded from the proposed class settlement in *Perez v. DIRECTV Group Holdings, LLC, et al.,* Case No. 16-cv-01440-JLS-DFM (C.D. Cal.)." An Opt-Out request from a Class Member that is a business must be signed by a business representative duly authorized to act on behalf of the business, contain the full legal name of the business, the business' address, the full name and title of the individual submitting the Opt-Out request on behalf of the business, and the following statement: "This business requests to be excluded from the proposed class settlement in *Perez v. DIRECTV Group Holdings, LLC, et al.,* Case No. 16-cv-01440-JLS-DFM (C.D. Cal.)." An Opt-Out request from a Class Member that is a business must *also* be accompanied by the following additional statement: "I, [name of business representative], represent and warrant that I have the legal authority and ability to exclude [name of business] from the proposed class settlement in *Perez v. DIRECTV Group Holdings, LLC, et al.,* Case No. 16-cv-01440-JLS-DFM (C.D. Cal.)."

[Formatted: Highlight]

**To be valid, the Opt-Out request must be postmarked or received via email on or before the Opt-Out Deadline, which is [DATE].**

[Formatted: Highlight]

8.    **How Do I Object To The Settlement?**

You can ask the Court to deny approval of the Settlement by timely filing an Objection with the Court. The Court cannot require a larger Settlement; the Court can only approve or disallow the Settlement. If the Court denies approval to the Settlement, no Settlement Benefits will be issued, and the lawsuit will continue.

You can also ask the Court to disapprove the requested payments to Plaintiff and to Class Counsel.

You may also appear at the Final Approval Hearing, either yourself or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney. **If you want to raise an objection to the Settlement at the Final Approval Hearing, you must submit that objection in writing, by the Objection Deadline, which is [DATE].**

If you want to raise an Objection to the Settlement at the Final Approval Hearing, you or your counsel must submit that Objection in writing to the Administrator at [address] by the deadline [DATE]. The Administrator will provide your Objection to DIRECTV and Class Counsel and Class Counsel will file your Objection with the Court. Your Objection must be postmarked by the Objection Deadline set forth above. Any Objection must include: (a) a reference at the beginning to this case, *Perez v. DIRECTV Group Holdings, LLC, et al., Case No. 16-cv-01440-JLS-DFM* (C.D. Cal.) and the name of the presiding judge, the Hon. Josephine L. Staton; (b) the name, address, telephone number, and, if available, the email address of the Person objecting, and if represented by counsel, of his/her counsel; (c) a written statement of all grounds for the Objection, accompanied by any legal support for such Objection; (d) whether he/she intends to appear at the Final Approval Hearing, either with or without counsel; (e) a statement explaining the objectors' basis for asserting that the objector is a member of the Settlement Class; and (f) a detailed list of any other objections submitted by the Class Member, or his/her counsel, to any class actions submitted in any court, whether state or otherwise, in the United States in the previous five (5) years. If the Class Member or his/her counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, he/she shall affirmatively state so in the written materials provided in connection with the Objection to this Settlement. Failure to include this information and documentation may be grounds for overruling and rejecting your Objection.

Questions? Visit [website] or call [phone number].

If you submit an Objection, you may appear, either personally or through counsel, at the Final Approval Hearing in order to to show cause why this Settlement and this Agreement should not be approved as fair, adequate, and reasonable or to object to any request for a Attorneys' Fees and Expenses or Incentive Award. Class Members shall send notice of their intention to attend or speak at the final fairness hearing to Class Counsel and/or the Settlement Administrator no later than fourteen (14) days prior to the final fairness hearing date. The Settlement Administrator or Class Counsel should, in turn, file a notice no later than seven (7) days prior to the final fairness hearing date, providing the Court with a list of Class Members who wish to speak at the hearing, if any. Moreover, because the Court may conduct the final fairness hearing in this matter via Zoom, the Settlement Administrator and/or Class Counsel are responsible for providing Class Members who wish to attend the hearing with the Zoom information the Clerk will distribute in advance of the hearing If the Court makes the Final Approval Hearing available via Zoom or via other means of remote appearance, a remote appearance shall be considered equivalent to an in-person appearance, with all the rights and obligations applicable to in-person appearances.

**If you fail to comply with these requirements, you may be deemed to have waived all objections and may not be entitled to speak at the Final Approval Hearing on [DATE].**

9.      **When Will The Court Decide If The Settlement Is Approved?**

The Court will hold a hearing on [DATE], to consider whether to approve the Settlement.  The hearing will be held in the United States District Court of the Central District of California, before the Honorable Josephine L. Staton, in the Ronald Reagan Federal Business and United States Courthouse, 411 W. Fourth St., Santa Ana, CA 92701, Courtroom 10A, 10th Floor, or such other judge assigned by the Court.  Any updated information can be obtained from the Settlement Website or the Court's website. Virtual attendance may be possible; please check the Settlement Website and the Court's website at cacd.uscourts.gov for more information

The hearing is open to the public.  This hearing date may change without further notice to you. Consult the Settlement Website at [website] or the Court docket in this case available through Public Access to Court Electronic Records PACER (http://www.pacer.gov), for any updated information on the hearing date and time.

10.     **How Do I Get More Information?**

You can inspect many of the court documents connected with this case on the Settlement Website. You may access all papers filed in this lawsuit at the Courthouse, located at First Street U.S. Courthouse, Courtroom 8A, on the 8th floor, located at 350 W. 1st Street, Los Angeles, California 90012.  You may also access all papers filed in this lawsuit via the Court's docket in this case available through PACER (http://www.pacer.gov).

You can contact the Settlement Administrator at [address] or by telephone at [phone number] or review the Administrator's website for this case at [website].

You can also obtain additional information by contacting Class Counsel:

Katherine J. Odenbreit

Questions? Visit [website] or call [phone number].

Mahoney Law Group, APC
249 E. Ocean Boulevard, Suite 814
Long Beach, CA 90802
Telephone: (562) 590-5550
Fax: (562) 590-8400
Email: kodenbreit@mahoney-law.net

Lisa L. Clay
Lisa L. Clay, Attorney at Law
2100 Manchester Road, Suite 1612
Wheaton, IL 60187
Telephone: (630)456-4818
Email : lisa@clayatlaw.com


Please do not address any questions about the Settlement or Litigation to the Clerk of the Court or the Judge.

Questions? Visit [website] or call [phone number].