Katherine J. Odenbreit (SBN: 184619)
kodenbreit@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 East Ocean Blvd., Suite 814
Long Beach, CA 90802
Telephone: (562) 590-5550
Facsimile: (562) 590-8400

Lisa L. Clay (*Pro Hac Vice*)
lisa@clayatlaw.com
**Lisa L. Clay, Attorney at Law**
2100 Manchester Road, Suite 1612
Wheaton, IL 60187
Telephone: (630) 456-4818

Attorneys for Plaintiffs DONEYDA PEREZ, DANNY NISSEN, MARLYS NISSEN, JOSEPH ANGELO, GREGOGRY LAPLANTE and PAUL HOLT, individually and on behalf of their respective businesses, and on behalf of all others similarly situated.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| DONEYDA PEREZ as an individual and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DIRECTV GROUP HOLDINGS, LLC, a Delaware Corporation, LONSTEIN LAW OFFICES, P.C., a New York Professional Corporation; SIGNAL AUDITING, INC., a New York Corporation, JULIE COHEN LONSTEIN and WAYNE M. LONSTEIN, <br><br> Defendants. | Case No. 8:16-CV-01440-JLS-DFM <br><br> **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT** <br><br> Date:   January 6, 2023 <br> Time:   10:30 a.m. <br> Dept.:   8A, 8th Floor <br><br> Fourth Amended Complaint Filed: December 17, 2020 |

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 6, 2023, at 10:30 a.m. in Department 8A, 8th Floor of the First Street U.S. Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, Plaintiffs Doneyda Perez, Danny Nissen, Marlys Nissen, Joseph Angelo, Gregory Laplante and Paul Holt ("Plaintiffs") will move the Court for Order granting final approval of the class action settlement between Plaintiffs and Defendants DIRECTV, LLC, DIRECTV Group Holdings, LLC and DIRECTV Holdings, LLC ("DIRECTV Defendants") (collectively "Signing Parties") which is memorialized in the Class Action Settlement Agreement ("Settlement Agreement" or "Settlement") (Declaration of Katherine J. Odenbreit ("Odenbreit Decl."), Ex. 1). This Motion is also to be heard in conjunction with Plaintiffs' Motion for Attorneys' Fees, Costs and Representative Plaintiff Enhancements filed November 23, 2022. (ECF Dkt. No. 634.)

Plaintiffs will and do hereby move the Court for an Order:

1.    Granting final approval of the proposed Settlement reached between Plaintiffs and DIRECTV Defendants under Federal Rule of Civil Procedure 23(e);

2.    Granting final certification of the Settlement Class under Rules 23(a) and 23(b)(3), and;

3.    Finding that notice has been conducted in accordance with the Court-approved notice plan and comports with due process.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Katherine J. Odenbreit and Lisa L. Clay as Class Counsel and exhibits thereto, the Declarations submitted in support of Preliminary Approval (ECF Dkt. Nos. 619-6-619-11) and in support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Representative Plaintiff Enhancements (ECF Dkt. Nos. 634-3-634-8.), the Declaration of Amy Lechner, class administrator Simpluris, Inc.'s representative regarding the notice of

settlement, the declaration of Jennifer M. Chang regarding CAFA Compliance, and all papers and records on file in this matter, and such other matters the Court may consider. A proposed order is also being filed contemporaneously. For the reasons set forth in these materials, the Motion for Final Approval of the Class Settlement should be granted.

Dated:  December 16, 2022

By:     _s/ Katherine J. Odenbreit_
        Katherine J. Odenbreit
        Kevin Mahoney
        Lisa L. Clay
        Attorneys for Plaintiffs Doneyda Perez,
        Danny Nissen, Marlys Nissen, Joseph
        Angelo, Gregory Laplante and Paul Holt

# TABLE OF CONTENTS

**I.    INTRODUCTION** ..................................................................................1

**II.   FACTUAL AND PROCEDURAL BACKGROUND** ................................2

   **A. Action** ....................................................................................................2

**III.  THE SETTLEMENT** .............................................................................6

   **A. Settlement Class**....................................................................................6

   **B. Monetary Terms** ...................................................................................6

   **C. Non-Monetary Terms**...........................................................................7

   **D. Notice and Response**............................................................................9

**IV.   CERTIFICATION OF PROPOSED SETTLEMENT CLASS IS
APPROPRIATE** ..................................................................................11

   **A.  The Proposed Class Meets the Requirements Under Rule 23(a)**.............11

      **1.    Numerosity** ..............................................................................11

      **2.    Commonality**...........................................................................11

      **3.    The Claims or Defenses of the Plaintiffs are Typical of Those of the
Class** ........................................................................................13

      **4.    Plaintiffs and Their Counsel Have and Will Continue to Fairly and
Adequately Protect the Interests of Class Members** ...................14

      **5.    The Proposed Class Meets the Rule 23(b)(3) Requirements**................16

**V.    FINAL APPROVAL OF CLASS ACTION SETTLEMENT** ..................19

   **A. Legal Standard**....................................................................................19

      **6.    The Reaction from The Class Is Favorable** ...............................20

      **7.    No Signs of Collusion** ..............................................................21

**VI.   CONCLUSION** .....................................................................................22

# <u>TABLE OF AURHORITIES</u>

Page(s)

Cases

*Abdullah v. U.S. Sec. Associates, Inc.*,
  (9th Cir. 2013) 731 F.3d 952 ................................................................... 17

*Amchem Products, Inc. v. Windsor*,
  (1997) 521 U.S. 591 ................................................................................. 16

*Arnold v. United Artists Theatre Circuit, Inc.*,
  (N.D. Cal. 1994) 158 F.R.D. 439 ............................................................ 11

*Bellinghausen v. Tractor Supply Company*,
  (N.D. Cal. 2015) 306 F.R.D. 245 ............................................................ 20

*Class Plaintiffs v. City of Seattle*,
  (9th Cir. 1992) 955 F.2d 1268.................................................................. 19

*Cohen v. Trump*,
  (S.D. Cal. 2014) 303 F.R.D. 376.............................................................. 12

*Comcast Corp. v. Behrend*,
  (2013) 569 U.S. 27 ................................................................................... 17

*Dukes v. Wal-Mart Stores, Inc.* (9th Cir. 2010),
  603 F.3d 571 (en banc)............................................................................ 13

*Earl v. Boeing Company*,
  (E.D. Tex. 2021) 339 F.R.D. 391 ............................................................ 12

*General Telephone Co. of Southwest v. Falcon*,
  (1982) 457 U.S. 147 ................................................................................. 13

*Guido v. L'Oreal, USA, Inc.*,
  (C.D. Cal. 2012) 284 F.R.D. 468 ............................................................ 13

*Hanlon v. Chrysler Corp.*,
  (9th Cir. 1998) 150 F.3d 1011.............................................. 13,14,15,17,19

*Hanon v. Dataproducts Corp.*,
  (9th Cir. 1992) 976 F.2d 497 ................................................................... 13

*In re Bluetooth Headset Products Liability Litigation*,
(9th Cir. 2011) 654 F.3d 935.......................................................................... 21

*In re Linkedin User Privacy Litigation*,
(N.D. Cal. 2015) 309 F.R.D. 573 .................................................................... 11

*In re Omnivision Technologies, Inc.*,
(N.D. Cal. 2008) 559 F.Supp.2d 1036 ............................................................ 20

*In re Vizio, Inc. Consumer Privacy Litig.*,
2019 WL 12966639 (C.D. Cal. Jan. 4, 2019) ................................................. 15

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products
Liability Litigation*,
(9th Cir. 2018) 895 F.3d 597 .......................................................................... 19

*Low v. Trump University, LLC*,
2016 WL 7387292 (S.D. Cal., Dec. 20, 2016)................................................... 8

*McGhee v. Bank of America*,
(1976) 60 Cal.App.3d 442 ............................................................................... 14

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
(9th Cir. 1982) 688 F.2d 615 .......................................................................... 19

*Palmer v. Pier 1 Imports, Inc.*,
(C.D. Cal., Jan. 9, 2018, No. SACV161120JLSDFMX) 2018 WL 6133692...... 22

*Rodriguez v. West Publishing Corp.*,
(9th Cir. 2009) 563 F.3d 948........................................................................ 19,22

*Sebastian v. Sprint/United Management Company*,
(C.D. Cal., Dec. 5, 2019, No. 818CV00757JLSKES) 2019 WL 13037010 ........ 20

*Staton v. Boeing Co.*,
(9th Cir. 2003) 327 F.3d 938........................................................................ 19,22

*Vandervort v. Balboa Capital Corporation* (C.D. Cal., Nov. 20, 2013, No. 11-
1578-JLS (JPRX)),
2013 WL 12123234............................................................................................. 22

*Vinole v. Countrywide Home Loans, Inc.*,
 (9th Cir. 2009) 571 F.3d 935 .................................................................. 18

*Wal-Mart Stores, Inc. v. Dukes*,
 (2011) 564 U.S. 338 ............................................................................... 12

*Wolin v. Jaguar Land Rover North America, LLC*,
 (9th Cir. 2010) 617 F.3d 1168 ............................................................... 18

## I.   INTRODUCTION

Plaintiffs', on their own behalf and on behalf of the Settlement Class, respectfully submit this memorandum in support of their motion for final approval of the settlement agreement ("Settlement") reached with the DIRECTV Defendants.

The Settlement should be approved because it is fair, reasonable, and adequate. The Settlement requires the DIRECTV Defendants to (1) establish a non-reversionary $9,400,000 fund, for (a) proportional *pro rata* monetary payments to those settlement class members who paid money to Defendant Lonstein Law Offices, P.C., Julie Cohen Lonstein and/or Wayne D. Lonstein ("Lonstein Defendants") on behalf of the DIRECTV Defendants and (b) a flat rate payment to those settlement class members who did not pay money to the Lonstein Defendants or DIRECTV Defendants but who were contacted by the Lonstein Defendants on behalf of the DIRECTV Defendants alleging commercial misuse of DIRECTV services, (2) make significant changes to disclosures to DIRECTV customers regarding the difference between commercial and residential services and accounts. As the following sections demonstrate, this Settlement provides the Settlement Class with substantial monetary consideration and meaningful injunctive relief.

This Settlement was only reached after extensive, arms-length negotiations with well-regarded mediator Judge Carl West (Ret.) for over a year. In Class Counsels' experienced view, the $9,400,000 settlement fund and additional benefits represent an excellent recovery for the Settlement Class. Plaintiffs and Class Counsel are proud to present this settlement agreement to the Court because of its benefits to the Settlement Class and to future DIRECTV consumers. Further, DIRECTV Defendants will modify their account initiation documents to insure customers are aware there is a difference between commercial accounts and residential accounts giving them the opportunity to correct any mistaken designation at the commencement of the service. (Declaration of Katherine J. Odenbreit filed herewith ("Odenbreit Decl."), Ex. 1: Settlement Agreement, ¶¶ 5.1, 5.2.)

Therefore, the Settlement is fair, reasonable and adequate under the governing standards in this Circuit and warrants final approval. Additionally, the Court should grant final certification of the Settlement Class under Rules 23(a) and 23(b)(3). Finally, the Court should find that Plaintiffs' class notice program has been conducted with the Court-approved notice plan and comports with Rule 23 and due process.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Action

Plaintiff filed this class action on August 4, 2016, alleging a RICO scheme on behalf of a class of business owners who were purchased DIRECTV services for their business which were designated by DIRECTV as "residential" accounts, and were subsequently "shaken down" by DIRECTV's lawyers, the Lonstein Law Office ("LLO") for "settlement" of alleged commercial misuse claims, causing them damages. (Dkt. No. 1, Odenbreit Decl., ¶ 4.)

Defendant DIRECTV appealed the Court's denial of its Motion to Compel arbitration (Dkt. No. 40) in May of 2017. (Dkt. No. 43.) The remaining Defendants sought stays of proceedings and extensions to file answers to the Amended Complaint Plaintiff filed on September 1, 2017. (Dkt. Nos. 48-50, 51, 62-65, 69) and continued to seek extensions throughout 2017 (Dkt. Nos. 73-76). After the Ninth Circuit upheld the District Court's order (Dkt. No. 84), Defendants continued to seek stays and extensions (Dkt. Nos. 86, 88, 94) until the Parties stipulated to the filing of a Second Amended Complaint on January 28, 2019. (Dkt. No. 101.)

DIRECTV answered the Complaint (Dkt. No. 105) and the Lonstein and Signal Defendants filed Motions to Dismiss in March of 2019. (Dkt. Nos. 106, 108.) The case remained stayed until the Court denied the Motions to Dismiss (Dkt. No. 133) on July 23, 2019, and formally vacated the stay on July 24, 2019. (Dkt. No. 135.)

/-/-/

The parties commenced written discovery in the summer and fall of 2019. Plaintiff filed a Motion for Leave to File Third Amended Complaint on November 4, 2019. (Dkt. No. 146.) After extensive meet and confer efforts, Plaintiffs filed motions to compel directed to each of the Defendants on December 19, 2019. (Odenbreit Decl., ¶ 10; Dkt. Nos. 155 – 158.) The Court granted Plaintiff's Motion over Defendants' objections on January 15, 2020. (Dkt. No. 179.)

Between January of 2020 until April of 2021, Magistrate Judge McCormick navigated a dizzying array of discovery disputes including, but not limited to, the following:

- garden variety production disputes (Dkt. Nos. 155-58, 391, 392, 441 – 44, 452);

- concerns relating to various privacy statutes and requested protective orders (Dkt. Nos. 162, 164, 167, 183, 305);

- STELA (privacy) notice to potential class members after resolution of issues relating to that notice (Dkt. No. 217, 301, 302);

- requests for forensic inspection of the Plaintiff's phone and countless motions related to the eventual inspection ordered by the Court (Dkt. Nos. 242, 243, 247, 326, 472, 477);

- various disputes regarding third-party subpoenas (Dkt. Nos. 376, 381);

- privilege claims asserted by DIRECTV and LLO's and substantial briefing regarding the crime-fraud exception, privilege log requirements and in-camera inspection requests (Dkt. Nos. 223, 229, 230, 231, 239, 324, 327, 328, 345, 346, 351, 352, 354, 355, 427, 460, 469);

- Defendant's efforts to obtain social media accounts from Plaintiff (Dkt. No. 330, 347, 356, 357, 429);

- A Motion for Sanctions against Defendant LLO to obtain the class contact list. (Dkt. Nos. 461, 518, 561, 576) (Hereinafter the class list is referred to as the "Lonstein List").

On May 4, 2020, the DIRECTV Defendants filed a Motion to Deny Class Certification seeking a finding that Plaintiff Perez was not an adequate class representative and her claims are not typical. (Dkt. No. 278). On July 29, 2020 Plaintiff filed a Motion for Leave to Amend the Scheduling Order, to Add Additional Parties (5 new representative plaintiffs) and for Leave to File a Fourth Amended Complaint (Dkt. No. 368), a request objected to by all Defendants (483-485) but granted by the Court on December 16, 2020. (Dkt. No. 496.)

In August and September of 2020, the Lonstein Defendants' counsel sought to withdraw, then sought *ex parte* relief, further slowing progress on pending discovery issues. (Dkt. Nos. 394, 415, 417, 420, 430 – 36.) The court denied the first *ex parte* request on August 26, 2020 (Dkt. No. 420) and the second request on September 9, 2020. (Dkt. No. 437.) This withdrawal coincided with Plaintiff's attempts to commence depositions, beginning with the deposition of third-party DIRECTV retailer/installer scheduled for August 27, 2020 and continuing with various current and former LLO and SAI employees. (Odenbreit Decl., ¶ 12.)

One issue that permeated the entirety of discovery was the Lonstein Defendant's refusal to produce a class list ("Lonstein List") that was compliant with the Court's orders. (*See, e.g.*, Dkt. Nos. 273, 274, 275, 276, 283, 285, 289). This issue remained unresolved as of September, 2020 and threatened to thwart nascent settlement discussions. (Odenbreit Decl. ¶ 10.) After the Parties began discussing mediation in mid-September, 2020, LLO continued to promise it would provide a corrected Lonstein List, but would not give Plaintiff a timeframe for it to be produced. (Odenbreit Decl. ¶ 10.) After months and months of counterproductive meet and confers, Plaintiff finally filed her Motion for Sanctions on October 19, 2021. (Dkt. No. 461.) Magistrate Judge McCormick appointed a neutral database expert, Charles Platt, to extract LLO's database and put together a list of cases handled by LLO on behalf of DIRECTV. (Dkt. Nos. 518, 561, 576.)

/-/-/

- 4 -

Shortly thereafter the parties sought a stay of the case excepting certain discovery issues for resolution. (Dkt. No. 468.) The Parties attended the first of two scheduled mediation sessions with the Honorable Carl J. West (Ret.) on November 30, 2021. (Odenbreit Decl. ¶ 16.) The session did not result in a settlement but all parties agreed to attend the second scheduled session. (*Id*.)

After extensive briefing on Plaintiff's Motion for Sanctions against LLO, (Dkt. Nos. 463, 471, 473, 476, 478, 479, 480, 481, 505) the Court granted the Motion in part (denying monetary sanctions) and ordered appointment of a neutral ESI liaison on January 25, 2021. (Dkt. 518.) It took nearly six more months and multiple additional orders (Dkt. Nos. 561, 571, 576, 599) from Judge McCormick compelling the Lonstein Defendants' compliance with the underlying Order before Plaintiffs were finally provided with a class list in July of 2021. (Odenbreit Decl., ¶ 16.)

In January of 2021 Signal and the Lonstein Defendants answered Plaintiff's Fourth Amended Complaint (Dkt. Nos. 508, 509) while DirecTV filed a complex combination of answers, motions and counterclaims. (Dkt. Nos. 511 – 515.) DIRECTVs Motions remain unaddressed in light of the continued stays. (See Dkt. Nos. 591, 607, 613.)

The Parties attended the second scheduled mediation session with Judge West on March 2, 2021. (Odenbreit Decl. ¶ 19.) Although the formal sessions did not result in settlement, DIRECTV and Plaintiffs continued to negotiate through Judge West (Odenbreit Decl., ¶ 19) and sought a further stay in April of 2020, a request the Court granted. (Dkt. No. 591.) On September 22, 2021 Plaintiff, DIRECTV and Signal notified the Court of a settlement in principle. (*Id*.; Dkt. No. 607.) In January of 2022 DIRECTV and Plaintiffs notified the Court that a term sheet had been signed. (Dkt. No. 613.) Ultimately, neither the Lonstein Defendants nor Defendant Signal signed the term sheet. (Odenbreit Decl., ¶ 19.)

/-/-/

Plaintiffs and the DIRECTV Defendants spent numerous hours finalizing the Class Action Settlement Agreement. ("Settlement Agreement" or "Settlement") (Odenbreit Decl., ¶ 19, Ex. 1.)

On August 23, 2022, the Court granting preliminary approval of the Settlement. (ECF Dkt. No. 629.)

## III.   THE SETTLEMENT

### A.   Settlement Class

Class Members are defined as follows:

> All businesses and business owners in the United States who had DIRECTV services installed in their commercial establishment; who were subsequently audited by Defendant Signal Auditing, Inc. ("Signal"); and who at any time on or after the day four years prior to the date on which the original Complaint was filed(August 4, 2012) through the date the Court grants preliminary approval of the Settlement, received communications from the Lonstein Law Offices, P.C., Wayne Lonstein and/or Julie Cohen Lonstein on behalf of DIRECTV seeking money for allegedly unauthorized use of DIRECTV licensed programming, including NFL Sunday Ticket or any other DIRECTV-related programming.

(Odenbreit Decl., Ex. 1, ¶ 2.36.)

### B.   Monetary Terms

DIRECTV has agreed to pay nine million, four hundred thousand dollars ($9,400,000.00) ("Total Settlement Fund") to resolve all claims that were alleged in this Action or any subsequent amendment thereto, or that could have been alleged based on the facts alleged in this Action and for Class Members' release of claims described below. (Odenbreit Decl., Ex. 1, ¶ 2.40.) If finally approved by the Court, the proposed Settlement will distribute payments as follows:

1. The "Net Settlement Fund" means the Total Settlement Fund of Nine Million Four Hundred Thousand dollars ($9,400,000.00) minus the payment of:

2. Settlement Administration Costs in the amount not to exceed

- 6 -

ninety-three thousand eight hundred and eighty-seven dollars ($93,887.00)[1] (Declaration of Amy Lechner, Simpluris, Inc., ("Lechner Decl.,"), ¶23; Declaration of Lisa L. Clay ("Clay Decl."), ¶ 23.) The Settlement Administrator will distribute each Settlement Class Members' pro-rata share of the Settlement ("Settlement Award") as set forth below;

3. Plaintiffs' Incentive Awards, described in detail below, for a total of eighty thousand dollars ($80,000.00);

4. Award of attorneys' fees, described in detail below, for a total of three million one hundred thirty-three thousand three hundred thirty-three dollars and thirty-three cents ($3,133,333.33) (Odenbreit Decl., Ex. 1, ¶ 6.1); and

5. Award of litigation costs, described in detail below, for a total of one hundred fifty-five thousand dollars and ninety-four cents ($155,000.00) (Odenbreit Decl., Ex. 1, ¶ 6.1).

**C.    Non-Monetary Terms**

The Parties also agree to the following non-monetary relief:

1.    DIRECTV will agree not to retain the Lonstein Law Office or any of the Lonstein Defendants in any capacity for potential claims of commercial misuse by DIRECTV's customers going forward; and

2.    DIRECTV will agree to include a statement in its order confirmation documentation to customers that highlights that residential service may be used for residential purposes only, and cannot be used in commercial settings.

(Odenbreit Decl., Ex. 1, ¶ 5.1.).

---

[1]  This amount was increased due to unforeseen circumstances as discussed in Section III.D below.

In return for their individual settlement payments, Plaintiffs and Settlement Class Members who do not opt-out of the settlement will release all claims against all Defendants "arising out of, related to, or connected in any way to the allegations contained in this Action and, more specifically, the prosecution of commercial misuse claims against class members by the Lonstein Law Office on behalf of DIRECTV or AT&T, including any auditing performed by Signal Auditing, regardless of whether or not such audit resulted in any action by the Lonstein Law Office that are alleged to have occurred within the Class Period." (Odenbreit Decl., Ex. 1, ¶¶ 8.1, 8.4.) Further, the DIRECTV Defendants provide a release to Plaintiffs and Settlement Class Members who do not opt-out of the settlement for "all such claims by DIRECTV and DIRECTV's attorneys, employees, agents, assignees, parents, subsidiaries, and affiliates to the fullest extent that DIRECTV has authority to release them and DIRECTV represents it has not assigned any rights regarding allegations of commercial misuse or any other allegations related to the factual claims as pled in this Action to any third party, agent or attorney (apart from ordinary collection of debts owed for failure to pay for DIRECTV service)" (Odenbreit Decl. II, Ex. 1, ¶¶ 2.11, 8.3.)[2]

Finally, Settlement Class Members will receive an initial Settlement Benefit equating to approximately 12.7% of their actual loss. (Lechner Decl., ¶8; Lee Decl., ¶ 9 (ECF Dkt. No. 619-5.) However, their anticipated recovery in light of the second distribution could be as much as 40%-50% of their actual loss. (Odenbreit Decl., ¶ 40.) *See Low v. Trump University, LLC,* Nos. 3:10-cv-00940-GPC-WVG, 3:13-cv-02519-GPC-WVG, 2016 WL 7387292, at *2 (S.D. Cal., Dec. 20, 2016) (court

---

[2] This release does not include any other dispute outside of the allegations as alleged and pled in this Action between DIRECTV and Class Members arising out of the customer terms of service provided by DIRECTV or payment to DIRECTV for DIRECTV services provided. Similarly, this release shall not prohibit DIRECTV's ability to use its legally appropriate processes to address Class Members' commercial misuse, if any, through conversion of the Class Members' accounts and/or termination of the account. (Odenbreit Decl., Ex. 1, ¶¶ 2.11, 8.3.)

MEMORANDUM OF POINTS AND AUTHORITIES

approved redistribution of uncashed check funds to class members who cashed checks, increasing actual recovery.)

**D. Notice and Response**

Notice was sent directly to the class members via email and U.S. mail by third-party administrator Simpluris, Inc. (*See generally* Declaration of Amy Lechner ("Lechner Decl.").) On September 2, 2022, the DIRECTV Defendants provided to Simpluris, Inc. 2 Excel files identifying 16,733 Settlement Class businesses with associated contact names, multiple mailing addresses, and multiple email addresses, if any. (Lechner Decl., ¶ 7.) On September 21, 2022, Simpluris received an additional Excel file with supplemental contact information from DIRECTV. (Lechner Decl., ¶ 7.)

Simpluris confirmed that the individual Settlement Benefit for those Class Members who paid money to the Lonstein Defendants for the initial distribution is 12.7%. (Lechner Decl., ¶ 8.) Those Settlement Class Members who paid the Lonstein Defendants less than $25.00 will receive an initial settlement payment of $25.00. (Lechner Decl., ¶8.)

Upon receipt of the data, Simpluris took significant efforts to remove duplications and identify which of the multiple contact information for each class member would be utilized in sending the notice. (Lechner Decl., ¶ 8.) The Parties were informed that each business could have several addresses and emails listed, some of which could be auditors, attorneys or other non-customer contacts. (Clay Decl., ¶ 23.) After significant consultation with counsel Simpluris chose the email addresses most likely to be associated with the business and/or business owners. (*Id.*) Ultimately, there were 3,553 email notices sent by Simpluris after verifying the email addresses selected. (Lechner Decl., ¶ 9.) 208 emails bounced back and Simpluris sent notice by U.S. mail to these Class Members. (Lechner Decl., ¶ 10.)

On October 7, 2022 Simpluris mailed Postcard Notices to 37,267 contacts. (Lechner Decl., ¶ 11.) On October 18, 2022 Simpluris mailed Postcard Notices to

- 9 -

38,025 contacts that included a revised Response Deadline of December 11, 2022. (Lechner Decl., ¶ 13.) This mailing reflected a second distribution to the 37,267 October 7 contacts plus all email contacts that had bounced, less 42 duplicates. (37,267 contacts + 800 bounced emails – 42 duplicates) (Lechner Decl., ¶¶ 13, 16.) The significant additional data analysis and higher number of mailings resulted in a much higher administrative cost to Simpluris. (Lechner Decl., ¶ 27.) Specifically, instead of noticing 16,733 Class Members as originally contemplated, Simpluris mailed nearly 40,000 notices, with a commensurate increase in postage, returned mailings, skip tracing and remailing. (*Id.*) Pursuant to negotiations with Class Counsel, Simpluris has agreed to be paid for the original $75,000.00 in administration fees at the time of first distribution and has requested that additional costs of $18,887.00 be paid from the residual funds. (Lechner Decl., ¶ 27.) Additional compensation can be paid to Simpluris only after the initial class distribution is made, and only to the extent those funds are available from uncashed checks. (Clay Decl., ¶ 23.) Simpluris analyzed the totality of the notices sent in various forms and concluded the following (Lechner Dec., ¶18.):

1. Received mail notice and email notice:   538 Class Members
2. Received mail notice only:                      13,220 Class Members
3. Received email notice only:                     2,278 Class Members
4. No notice received:                                  <u>697 Class Members</u>
                                                                      <u>16,733 Class Members</u>

A website was created by the Settlement Administrator providing the Settlement Class Members with access to key documents filed in the action, the ability to review their Settlement Benefit, and additional detailed information about the Settlement in 5 different languages. ([Perez v. DirecTV Group Holdings, LLC et al - Home (directvperezclasssettlement.com)](directvperezclasssettlement.com)). (Lechner Decl., ¶¶ 19-22.) When Plaintiffs filed their Motion for Attorneys' Fees, Costs and Representative Plaintiff Enhancements, this motion was also posted on the website for class members to

review. (https://directvperezclasssettlement.com/documents/2). Simpluris also maintains a settlement-specific toll-free telephone number that will remain accessible throughout the settlement process. (Lechner Decl., ¶ 23.) Class Members were provided unique login credentials to enable them to check their individual settlement benefit, submit tax forms, review and update contact information and submit an opt-out request. (Lechner Decl., ¶ 21.) The website was published on October 4, 2022 and as of December 8, 2022 had 9,553 unique views with 11,432 page views. (Lechner Decl., ¶22.) The toll-free number received 201 calls as of December 8, 2022. (Lechner Decl., ¶23.)

The Notice was facilitated as directed by the Court in its Order granting preliminary approval and has satisfied the due process requirements of Rule 23. *In re Linkedin User Privacy Litigation* (N.D. Cal. 2015) 309 F.R.D. 573, 585–86.

## IV.   CERTIFICATION OF PROPOSED SETTLEMENT CLASS IS APPROPRIATE

This Court preliminarily certified the settlement class based on findings that the settlement and proposed settlement class met the requirements of Rule 23. (ECF No. 629 at 8-15.) Since then nothing has changed to alter the analysis and settlement class certification remains warranted.

**A. The Proposed Class Meets the Requirements Under Rule 23(a)**

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Arnold v. United Artists Theatre Circuit, Inc.* (N.D. Cal. 1994) 158 F.R.D. 439, 440.  There are an estimated sixteen thousand seven hundred thirty-three (16,733) Class Members. (Lechner Decl., ¶ 7.) Numerosity is plainly met for the proposed Class.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." (Fed. R. Civ. P. 23(a)(2).) "Commonality requires the plaintiff to demonstrate

that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338, 349–50 (citations omitted). The plaintiff must allege that the class's injuries "depend upon a common contention" that is "capable of classwide resolution." *Id.* at p. 350. In other words, the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. The commonality requirement only demands that class members' situations are sufficiently parallel to insure a vigorous and full presentation of the claims for relief. *Cohen v. Trump* (S.D. Cal. 2014) 303 F.R.D. 376, 382. "RICO claims often satisfy the commonality's minimal threshold because schemes that allegedly violate the RICO statute tend to be the central, unifying source of the injury for class members." *Earl v. Boeing Company* (E.D. Tex. 2021) 339 F.R.D. 391, 419 (citations omitted).

Here, Plaintiffs allege that the class members were all victims of a fraudulent scheme perpetrated by the DIRECTV Defendants, the Lonstein Defendants and Signal Auditing through a common pattern of setting up an account in a business establishment as a residential account, on-site audits conducted by Defendant Signal and then subsequent contact by the Lonstein Defendants seeking money for alleged commercial misuse. (*See, generally,* Fourth Amended Complaint, ECF Dkt. No. 498.) Class Members share the same issues such as the common way in which their accounts were established, either by solicitation directly by a DIRECTV representative or requesting specifically from DIRECTV commercial services subsequently installed by a DIRECTV representative. Class Members further were contacted by the Lonstein Defendants seeking money for alleged commercial misuse. Plaintiffs further allege the Defendants engaged in wire and mail fraud through their contacts and receipt of payment from Class Members. (ECF Dkt. No. 498, ¶¶ 8, 52, 60, 67, 134.) Plaintiffs allege Class Members are suffered injuries stemming from the centralized pattern of racketeering activity that satisfies commonality. *Earl,* 339 F.R.D. at 419. Because Defendants' alleged pattern of

racketeering and predicate acts of racketeering activity were uniform across Plaintiffs and the Class, "resolution of these questions will resolve 'in one stroke' issues that are 'central to the validity' of each [C]lass [M]ember's claims." *Guido v. L'Oreal, USA, Inc.* (C.D. Cal. 2012) 284 F.R.D. 468, 477 (citing *Dukes*, *supra*, 564 U.S. at 350). Plaintiffs therefore satisfy the commonality requirement.

### 3.  The Claims or Defenses of the Plaintiffs are Typical of Those of the Class

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[U]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes v. Wal-Mart Stores, Inc.* (9th Cir. 2010) 603 F.3d 571, 613 (en banc) (quoting *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1020.) Further, "[t]ypicality requires that the named plaintiffs be members of the class they represent." *Id*. citing *General Telephone Co. of Southwest v. Falcon* (1982) 457 U.S. 147, 156. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.* (9th Cir. 1992) 976 F.2d 497, 508. Where plaintiffs allege the same fraudulent scheme affected every class members, typicality is readily met. *Cohen*, *supra*, 303 F.R.D. at p. 382.

Here, Plaintiffs' claims, like those of the proposed Settlement Class, are based on their agreement to the installation of DIRECTV services in their commercial establishments; the designation by DIRECTV of their accounts as "residential" rather than "commercial" without their knowledge or consent; surreptitious audit and/or investigation by Signal in their commercial establishments; and the Lonstein Defendants' subsequent extortion of a monetary settlement. (*See,* Rep. Pltf. Decs., ECF Dkt. Nos. 634-3, ¶¶3-10; 634-4, ¶¶3-14; 634-5, ¶¶3-7; 634-6, ¶¶3-9; 634-7,

MEMORANDUM OF POINTS AND AUTHORITIES

¶¶3-8; 634-8, ¶¶3-9.) Plaintiffs' claims and all class members' claims also arise out of the same course of conduct by Defendants, i.e., the same scheme to defraud, entrap, and/or extort. Further, Defendants contend most if not all Class Members entered into "settlement agreements" with the Defendants and contend these settlements prevent Plaintiffs and Class Members from pursuing these claims. (Odenbreit Decl., ¶ 18.) Therefore, the Plaintiffs are not subject to unique defenses which would threaten to become the focus of the litigation, further supporting a finding of commonality. *Cohen, supra* at 383-84. As such, typicality is easily met.

### 4.  Plaintiffs and Their Counsel Have and Will Continue to Fairly and Adequately Protect the Interests of Class Members

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, *supra*, 150 F.3d at p. 1020. The adequacy requirement is met if the class representative and class counsel have no interests adverse to the interests of the proposed class members and are committed to vigorously prosecuting the case on behalf of the class. *Id.*; *McGhee v. Bank of America* (1976) 60 Cal.App.3d 442, 450–51.

### i.  The Class Representatives Are Adequate

Plaintiffs' claims arise out of the same set of facts, allege common injury, and assert the same theories of liability as the claims for the proposed Settlement Class. (Perez Decl., ECF Dkt. No. 634-3 ("Perez Decl."), ¶¶ 3-10; D. Nissen Decl., ECF Dkt. No. 634-5 ("D. Nissen Decl."), ¶¶ 3-7; M. Nissen Decl., ECF Dkt. No. 634-6 ("M. Nissen Decl."), ¶¶ 3-9; Angelo Decl, ECF Dkt. No. 634-4 ("Angelo Decl."), ¶¶ 3-14; LaPlante Decl., ECF Dkt. No. 634-8 ("Laplante Decl."), ¶¶ 3-9; Holt Decl.,

ECF Dkt. No. 634-7 ("Holt Decl."), ¶¶ 3-8.) Therefore, Plaintiffs' interests in obtaining the maximum recovery are coextensive with the interests of the Class Members. (Odenbreit Decl., ¶ 31.) Plaintiffs took on the role as Class Representatives with full knowledge of their duties and fiduciary duties to the class and have no conflicts with class members and have acted in furtherance of the interests of the class. (Perez Decl., ¶ 23; D. Nissen Decl., ¶ 9; M. Nissen Decl., ¶ 11; Angelo Decl., ¶ 16; LaPlante Decl., ¶ 11; Holt Decl. ¶ 10.) The adequacy requirement is met where, as here, the Class Representative's claims are sufficiently interrelated to and not antagonistic to the claims of the class. *Hanlon*, *supra*, 150 F.3d at p. 1020.

At this stage Plaintiffs are unable to determine the difference between the class representative incentive awards and the payments to class members because there will be a second distribution that can substantially increase the Settlement Benefit payment. However, the Court should find the named plaintiffs adequate "in the absence of any apparent actual conflict." *In re Vizio, Inc. Consumer Privacy Litig.*, No. 8:10-cv-92693-JLS-KES, 2019 WL 12966639 at *5 (C.D. Cal. Jan. 4, 2019). These Class Representatives have met this burden.

### ii.  Class Counsel Is Adequate

To find class counsel is adequate to represent the class, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation and the type of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Proposed Class Counsel in this Action are also adequate. Kevin Mahoney and Katherine J. Odenbreit are experienced class action litigators in the subject areas of wage and hour, consumer protection, and data breach. (Odenbreit Decl., ¶¶ 28-39 previously filed Declaration of Kevin Mahoney ("Mahoney Decl.") filed

MEMORANDUM OF POINTS AND AUTHORITIES

concurrently herewith, ¶¶ 4-7.) Further, co-class counsel Lisa Clay is also an experienced class attorney as well as a subject-matter expert in the area of the alleged RICO scheme in the Communication Act context. (Clay Decl., ¶¶ 4-11.) A cursory review of the docket in this case demonstrates that Class Counsel have diligently prosecuted this action. Counsel also dedicated considerable resources to the litigation of this action. (Odenbreit Decl., ¶ 37; Mahoney Decl., ¶ 8; Clay Decl., ¶¶ 12, 13.) Counsel has no known conflicts of interest with the Class and does not represent any Class Members in any matters outside of this case. (Odenbreit Decl., ¶ 39; Mahoney Decl., ¶ 10; Clay Decl., ¶ 15.)

For the reasons provided, Plaintiff maintains that the requirements of Fed. R. Civ. P. 23(a) are met in this matter.

### 5.      The Proposed Class Meets the Rule 23(b)(3) Requirements

Plaintiffs seek certification under Rule 23(b)(3). Under Rule 23(b)(3), a class action may be maintained if: "(1) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. R. 23(b)(3).

When examining a class that seeks certification under Rule 23(b)(3), the Court may consider:

(A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)    the likely difficulties in managing a class action.

*Id*. When assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only. *Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 620. The manageability of trying the case as a class

MEMORANDUM OF POINTS AND AUTHORITIES

action is not a factor for a settlement-only class. *Id.* at 620. For the reasons provided below, the Court should find that Plaintiffs' proposed Settlement Class satisfies both the predominance and superiority requirements.

### i. Common Questions of Law and Fact Predominate

"[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah v. U.S. Sec. Associates, Inc.* (9th Cir. 2013) 731 F.3d 952, 964. "Rule 23(b)(3) requires [only] a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Id*.

Here, as discussed above, Plaintiffs' and Class Members' claims turn on whether Defendants engaged in a scheme to defraud and extort small business owners by facilitating their unwitting commercial misuse of DIRECTV services, then extracting settlement money from them for the alleged commercial misuse through wire and mail fraud. (*See* ECF Dkt. No. 498, ¶ 71.) Plaintiffs assert that the proposed Class in this case is sufficiently cohesive to warrant adjudication by representation as the predicate acts (racketeering activity) alleged against Defendants are common as to all class members. *See Comcast Corp. v. Behrend* (2013) 569 U.S. 27 ("[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members."). As such, the common questions and their corresponding common legal remedies predominate.

### ii. Class Action is the Superior Method for Resolving the Claims in this Action

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, *supra*, 150 F.3d at p. 1023. "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute

resolution." (*Id.*)

Here, there are approximately sixteen thousand seven hundred thirty-three (16,733) class members. (Lechner Decl., ¶7.) Each member of the proposed Settlement Class pursuing a claim individually would burden the judicial system and run afoul of Rule 23's focus on efficiency and judicial economy. *See Vinole v. Countrywide Home Loans, Inc.* (9th Cir. 2009) 571 F.3d 935, 946 ("The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy."). Further, litigation costs would likely exceed potential recovery if each class member litigated individually, especially given the complexity of the claims at issue. (Odenbreit Decl., ¶ 27); *Wolin v. Jaguar Land Rover North America, LLC* (9th Cir. 2010) 617 F.3d 1168, 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Considering the non-exclusive factors under Rule 23(b)(3)(A)-(D), Class Members' potential interests in individually controlling the prosecution of separate actions and the potential difficulties in managing the class action do not outweigh the desirability of concentrating this matter in one litigation. (*See* Fed. R. Civ. P. 23(b)(3).) Therefore, class action is the superior method for resolving the claims in this Action.

### iii.   Class Counsel is Adequate

As described in §IV.(A)(4)(ii) above, under Rule 23(g), "a court that certifies a class must appoint class counsel." (Fed. R. Civ. P. 23(g)(1).) Plaintiffs' counsel is adequate because they have the expertise necessary to adequately and fairly represent the class and have thus far diligently prosecuted this case on behalf of Plaintiffs and Class Members. (*See* Odenbreit Decl., ¶¶ 8-16; Mahoney Decl., ¶¶ 8; Clay Decl., ¶¶ 6-13, 17-20.) As such, the Court should appoint them as Class Counsel in this case.

As the proposed Settlement Class satisfies the elements of Rule 23(a) and Rule 23(b)(3), the Court should certify the Settlement Class for settlement purposes only.

MEMORANDUM OF POINTS AND AUTHORITIES

## V.     FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Legal Standard

Before approving a class action settlement, Federal Rule of Civil Procedure 23 requires the Court to determine whether the settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23 (e)(2). "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and that stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and; (8) the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 959 [citations omitted]. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by the individual case." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco* (9th Cir. 1982) 688 F.2d 615, 625. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton, supra* at 960 (quoting *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1026.)

Moreover, the District's long-standing policy is that "settlement is encouraged in class actions where possible." *Rodriguez v. West Pub. Corp.* (C.D. Cal., Sept. 10, 2007, No. CV05-3222 R (MCX)) 2007 WL 2827379, at *8; *Class Plaintiffs v. City of Seattle* (9th Cir. 1992) 955 F.2d 1268, 1276. After evaluating the "lengthy but non-exhaustive list of [overlapping fairness] factors" the Court should finally approve the settlement agreement because it is fair, reasonable and adequate. *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability*

*Litigation* (9th Cir. 2018) 895 F.3d 597. 610 (2018).

With the exception of response from the class, this criteria was discussed and analyzed at the preliminary approval stage. (*See* ECF Dkt. No. 619, Plaintiffs' Motion for Preliminary Approval of the Settlement.) The Court found the settlement to be fair, just and reasonable making it appropriate for final approval. (ECF Dkt. No. 629, Sect. IV, p. 24.)

### 6. The Reaction from The Class Is Favorable

Notice was sent to the class members in the form and method compliant with the Court's orders. (Lechner Decl., ¶¶ 3-14.) According to Simpluris's most recent reporting, 538 class members received both email and mail notice; 13,200 class members received mail notice only; 2,278 class members received email notice only; and 697 class members did not receive notice. (Lechner Decl., ¶ 14.)

The Representative Plaintiffs submitted declarations summarizing their individual views of the settlement. (*See* ECF Dkt. Nos. 634-3, 634-4, 634-5, 634-6, 634-7, and 634-8.) Plaintiffs' counsel received phone calls from several Settlement Class Members expressing positive views about the settlement. (Odenbreit Decl., ¶41.) To date, only 2 requests for exclusions and two objections have been received from the 16,733 class members. (Lechner Decl., ¶¶ 21, 22, Exs. H & I.)

Given the minimal opt-outs and only 2 objections out of a class of 16,733, the reaction by the class is favorable. An absence of a large number of objections to the proposed settlement raises a strong presumption that the terms are favorable to the class. *Bellinghausen v. Tractor Supply Company* (N.D. Cal. 2015) 306 F.R.D. 245, 258 [citations omitted].) "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Sebastian v. Sprint/United Management Company* (C.D. Cal., Dec. 5, 2019, No. 818CV00757JLSKES) 2019 WL 13037010, at *5, citing *In re Omnivision Technologies, Inc.* (N.D. Cal. 2008) 559 F.Supp.2d 1036, 1043 (citation omitted).

- 20 -

Here there are only two objections and both object only to the individual settlement benefit they will receive. (Lechner Dec., Ex. I.) These objections could be reconsidered when these Class Members learn of the amount of the subsequent payment they may receive after it is determined the amount of the residual after the expiration of the check cashing deadline. Therefore, the response from the class is overwhelmingly positive.

### 7. No Signs of Collusion

In addition to these factors, where "a settlement agreement is negotiated prior to formal class certification," the Court must also satisfy itself that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Products Liability Litigation* (9th Cir. 2011) 654 F.3d 935, 946–47. Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at p. 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id*.

Here there are no signs of collusion. No settlement funds will revert to the DIRECTV Defendants. (Odenbreit Decl., Ex. 1, ¶ 3.1(b).) All of the net settlement proceeds will be distributed to the class on a pro rata basis with even the uncashed check amounts being distributed to those class members who cash their settlement checks. (*Id*.) Second, there will not be a disproportionate distribution of the settlement fund to Class Counsel. Under the Settlement attorneys' fees are to be awarded from the settlement fund. Although the DIRECTV Defendants informed Plaintiffs it will not oppose an application for fees that does not exceed one-third of the $9,400,000 settlement, the Settlement explicitly states the Court is to determine

MEMORANDUM OF POINTS AND AUTHORITIES

the proportion of the settlement fund that will be awarded in attorneys' fees. (Odenbreit Decl., Ex 1, ¶¶6.1-6.3, p. 21.) *See Vandervort v. Balboa Capital Corporation* (C.D. Cal., Nov. 20, 2013, No. 11-1578-JLS (JPRX)) 2013 WL 12123234, at *5 (quoting *Staton*, *supra*, 327 F.3d at p. 970). Even so, where as here, payments are to be made from a capped settlement fund, "clear sailing" provisions do not signal collusion. *Palmer v. Pier 1 Imports, Inc.* (C.D. Cal., Jan. 9, 2018, No. SACV161120JLSDFMX) 2018 WL 6133692, at *10 (citing *Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 961.)

Finally, this settlement was reached after two formal sessions and nearly a year of continued vigorous negotiations with well-regarded mediator Carl J. West (Ret.), a former superior court judge well-versed and experienced in navigating complex class action settlements. (Odenbreit Decl., ¶¶ 16, 19.)

Considering the above, the Court should conclude that the proposed settlement is fair, reasonable and adequate and should grant approval.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Final Approval Order.


Dated:  December 16, 2022


By:   *s/ Katherine J. Odenbreit*
      Katherine J. Odenbreit
      Kevin Mahoney
      Lisa L. Clay
      Attorneys for Plaintiffs Doneyda Perez,
      Danny Nissen, Marlys Nissen, Joseph
      Angelo, Gregory Laplante and Paul Holt

- 22 -