UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONEYDA PEREZ as an individual and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>DIRECTV GROUP HOLDINGS, LLC, a Delaware Corporation, LONSTEIN LAW OFFICES, P.C., a New York Professional Corporation; SIGNAL AUDITING, INC., a New York Corporation, JULIE COHEN LONSTEIN and WAYNE M. LONSTEIN,<br><br>        Defendants. | CASE NO.  8:16-CV-01440-JLS-DFM<br><br><br>**ORDER: (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Doc. 638); and (2) GRANTING IN PART PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND ENHANCEMENT AWARDS (Doc. 634)** |

Before the Court are two Motions filed by Plaintiffs: 1) a Motion for Final Approval of Class Action Settlement; and 2) a Motion for Award of Attorneys' Fees and Costs, and Enhancement Awards (the "Fees Motion").  (Final Approval Mot., Doc. 638; Fees Mot., Doc. 634.)  Defendants DIRECTV, LLC, DIRECTV Group Holdings, LLC, and DIRECTV Holdings, LLC (collectively "DIRECTV") partially opposed the Fees Motion. (Fees Opp., Doc. 637.)  Non-settling Defendants Lonstein Law Offices, P.C., Julie Cohen Lonstein, and Wayne D. Lonstein (collectively the "Lonstein Defendants") filed objections to both Motions.  (Fees Obj., Doc. 636; Final Approval Obj., Doc. 640.)  Plaintiffs have filed responses to the Lonstein Defendants' objections and to DIRECTV's partial opposition to the Fees Motion. (Pls.' Response to Lonstein Defs., Doc. 641; Pls.' Response to DIRECTV, Doc. 642.)  Having reviewed the papers, held a fairness hearing, and taken the matter under submission, the Court GRANTS the Motion for Final Approval of Class Action Settlement and GRANTS IN PART the Motion for Award of Attorneys' Fees and Costs, and Enhancement Awards.

## I.      <u>BACKGROUND</u>

The Court detailed the background facts of this action in its order granting preliminary approval of the class action settlement ("Preliminary Approval Order") and need not repeat them here.  (*See* Preliminary Approval Order, Doc. 629.)  In brief, Plaintiff Doneyda Perez initiated this class action on August 4, 2016, alleging a RICO scheme against a class of business owners who purchased DIRECTV services for their business that were designated by DIRECTV as "residential" accounts, and were subsequently "shaken down" by DIRECTV's lawyers, the Lonstein Law Office ("LLO") for "settlement" of alleged commercial misuse claims, causing them damages.  (Compl., Doc. 1; *see also* Fourth Amended Compl. ("FAC") ¶¶ 2–25, Doc. 498.)  Following the resolution of an appeal in the Ninth Circuit, multiple discovery disputes and extensive motion practice, and multiple appointments of court-appointed experts, Plaintiffs and

DIRECTV reached a settlement agreement.  The Lonstein Defendants were not party to the agreement.

On March 22, 2022, Plaintiffs moved for preliminary approval of the settlement and approval of the form and method of class notice.  (Mot. for Prelim. Approval, Doc. 620; Prelim. Approval Mem., Doc. 619.)  The Court preliminarily approved the Settlement on August 23, 2022.  (Preliminary Approval Order.)  There, the Court conditionally certified the following Rule 23(b)(3) class for settlement purposes:

> All businesses and business owners in the United States who had DIRECTV services installed in their commercial establishment; who were subsequently audited by Defendant Signal Auditing, Inc. ("Signal"); and who at any time on or after the day four years prior to the date on which the original Complaint was filed (August 4, 2012) through the date the Court grants preliminary approval of the Settlement, received communications from the Lonstein Law Offices, P.C., Wayne Lonstein and/or Julie Cohen Lonstein on behalf of DIRECTV seeking money for allegedly unauthorized use of DIRECTV licensed programming, including NFL Sunday Ticket or any other DIRECTV-related programming.

(*Id.* at 4, 8–15.)

Under the Settlement, DIRECTV agreed to provide both monetary and non-monetary relief to the Class Members.  As to monetary relief, DIRECTV will pay $9,400,000.00 (the "Total Settlement Fund") to resolve all claims that were alleged in this action.  (*See* Odenbreit Final Approval Mot. Decl. Ex. 1 ("Settlement Agreement") ¶ 2.40, Doc. 638-1 at 16–62.)  From the Total Settlement Fund, the Settlement will distribute funds as follows:

- Settlement Administration costs in an amount not to exceed $93,887.00.[1]

---

[1] The amount requested for administration costs increased from the amount proposed when Plaintiffs sought preliminary approval of the Settlement due to unforeseen issues, which the Court addresses below.

- Enhancement Awards for the Class Representatives for a total of $80,000.00.
- An award of attorneys' fees in the amount of $3,133,333.33.
- An award of litigation costs in the amount of $155,000.00.
- An initial settlement benefit to each Class Member equating approximately 12.7% of their actual loss, which could increase to 40–50% of their actual loss upon a second distribution.

(*See* Preliminary Approval Order at 4–5, 18; Final Approval Mot. at 7–8; Settlement Agreement ¶ 6.1)  Settlement payments to Class Members will be distributed as follows:

- 8,185 Class Members who were likely contacted by LLO but did not pay any money to LLO or paid less than $20.00 will receive a $25.00 initial Settlement Benefit from the Net Settlement Fund.
- Class Members who paid more than $25.00 will receive an initial Settlement Benefit representing a pro rata share of the remaining Net Settlement Fund based on the amount each paid to LLO.
- Funds remaining after 60 days from the date the initial check expires—*i.e.*, checks that were not cashed by a Member of the Settlement Class and any amounts not awarded by the Court for Class Counsel's attorneys' fees, costs and Class Representatives' Enhancement Awards—will be distributed pro rata to each Settlement Class Member who cashed an initial settlement check in a second distribution.
- Distributions will continue to Settlement Class Members who cashed checks until the funds are depleted or until it becomes economically infeasible to print and mail checks.
- If any funds remain after the subsequent distributions to Settlement Class Members, Plaintiffs and DIRECTV will apply to the Court to have the remainder paid to a *cy pres* recipient.

(Settlement Agreement ¶ 3.1.)

In addition to the above monetary relief, DIRECTV agreed to the following non-monetary relief:

- DIRECTV will not retain LLO or any of the Lonstein Defendants in any capacity for potential claims of commercial misuse by DIRECTV's customers going forward.

- DIRECTV will include a statement in its order confirmation documentation to customers that highlights that residential service may be used for residential purposes only, and cannot be used in commercial settings.

(*See* Preliminary Approval Order at 5; Final Approval Mot. at 7; Settlement Agreement ¶ 5.1.)

During the final approval hearing, the Court raised with the parties its concern that the agreed-upon statement in confirmation documents may fall short as a prospective measure to prevent future instances of the misconduct alleged in this action.  In particular, the Court noted its concern that statements in confirmation documents, which are provided well after DIRECTV representatives have interacted with business owners signing up for service, would be inadequate to avoid the problems at issue in this litigation—namely, the misrepresentation by the sales representative as to the nature of the service at the time it is purchased.  The Court indicated that requiring representatives to provide specific notice to a business owner customer at the time of sale that the service may be used in a commercial setting and agreeing to train representatives not to promote residential services to businesses would better address the issues that gave rise to this action.  In response to the Court's concerns, DIRECTV's counsel indicated that DIRECTV would not agree to commit to more extensive measures than the additional statement in the confirmation documents.  Counsel also noted that further litigation would not result in any greater prospective relief for the class because injunctive relief in private civil RICO actions is not available.

The Court agrees that further litigation would not remedy this concern because injunctive relief would be unavailable.  *See Religious Tech. Ctr. v. Wollersheim*, 796 F.2d

1076, 1077 (9th Cir. 1986.)  Moreover, the Settlement here does not release Defendants from any future liability, so no class member is releasing any claim that may arise from future misrepresentations about the nature of the service being sold.  Accordingly, the Court concludes that its concerns about the adequacy of the non-monetary relief to which DIRECTV has agreed are insufficient to withhold final approval of the Settlement.

In return for the relief described above, Plaintiffs and Settlement Class Members who do not opt out of the Settlement will release all claims against all Defendants "arising out of, related to, or connected in any way to the allegations contained in this Action and, more specifically, the prosecution of commercial misuse claims against class members by the Lonstein Law Office on behalf of DIRECTV or AT&T, including any auditing performed by Signal Auditing, regardless of whether or not such audit resulted in any action by the Lonstein Law Office that are alleged to have occurred within the Class Period."  (Settlement Agreement ¶¶ 8.1, 8.4.)  DIRECTV also releases Plaintiffs and Settlement Class Members who do not opt out of the Settlement for "all such claims by DIRECTV and DIRECTV's attorneys, employees, agents, assignees, parents, subsidiaries, and affiliates to the fullest extent that DIRECTV has authority to release them and DIRECTV represents it has not assigned any rights regarding allegations of commercial misuse or any other allegations related to the factual claims as pled in this Action to any third party, agent or attorney (apart from ordinary collection of debts owed for failure to pay for DIRECTV service)."  (*Id.* ¶¶ 2.11, 8.3.)

The Court's Preliminary Approval Order approved Simpluris as the Settlement Administrator, found Plaintiffs Doneyda Perez, Danny Nissen, Marlys Nissen, Joseph Angelo, Gregory Laplante, and Paul Hold to be adequate Class Representatives, and appointed Kevin Mahoney and Katherine J. Odenbreit of Mahoney Law Group, APC and Lisa L. Clay as Class Counsel.  (Preliminary Approval Order at 11–12, 15, 23, 25.) Moreover, the Court ordered certain changes to Plaintiffs' proposed Email Notice and Postcard Notice, required that opt-outs be allowed to request exclusion electronically, set the final fairness hearing for January 6, 2023, and laid out certain deadlines for filings

related to the final fairness hearing.  (*Id.* at 24–28.)  Class Counsel timely filed the revised Notices (Doc. 632), incorporating the changes ordered by the Court.  On September 6, 2022, the Court approved Plaintiffs' revised Notices for dissemination.  (Doc. 633.)

The Settlement Administrator, Simpluris, sent notice directly to Class Members via email and U.S. mail.  (*See generally* Lechner Decl., Doc. 638-4.)  After receiving contact information for the Class Members from DIRECTV, Simpluris took efforts to remove duplications and identify which of the multiple addresses or emails for each Class Member to use in sending the notice.  (*Id.* ¶ 8.)  On October 4, 2022, Simpluris sent an initial set of 3,553 email notices after verifying the email addresses selected.  (*Id.* ¶ 9.)  208 emails bounced back and Simpluris sent notice by U.S. mail to these Class Members.  (*Id.* ¶ 10.)  On October 7, 2022, Simpluris mailed Postcard Notices to 37,267 contacts.  (*Id.* ¶ 11.)  On October 18, 2022 Simpluris mailed Postcard Notices to 38,025 contacts that included a revised Response Deadline of December 11, 2022.  (*Id.* ¶ 13.)  This mailing was a second distribution to the 37,267 October 7 contacts plus all email contacts that had bounced, minus 42 duplicates.  (*Id.* ¶¶ 13, 16.)

Instead of noticing 16,733 Class Members as originally contemplated, Simpluris mailed nearly 40,000 notices, with a commensurate increase in postage, returned mailings, skip tracing and remailing—which resulted in higher costs in its administration of the Settlement.  (*Id.* ¶ 27.)  After negotiating with Class Counsel, Simpluris has agreed to be paid the originally agreed-upon $75,000.00 in administration fees at the time of first distribution and has requested that additional costs of $18,887.00 be paid from the residual funds.  (*Id.*)  Additional compensation to Simpluris can only be made only to the extent funds are available from uncashed checks.  (Clay Final Approval Mot. Decl. ¶ 23, Doc. 638-3.)

Simpluris created a website providing the Settlement Class Members with access to key documents filed in the action, the ability to review their Settlement Benefit, and additional detailed information about the Settlement in five different languages: Perez v. DirecTV Group Holdings, LLC et al - Home (directvperezclasssettlement.com). (Lechner

7

Decl. ¶¶ 19–22.)  Simpluris also maintains a settlement-specific toll-free telephone number that will remain accessible throughout the settlement process.  (*Id.* ¶ 23.)  Class Members were provided unique login credentials to enable them to check their individual settlement benefit, submit tax forms, review and update contact information and submit an opt-out request. (*Id.* ¶ 21.) The website was published on October 4, 2022 and as of December 8, 2022 had 9,553 unique views with 11,432 page views.  (*Id.* ¶ 22.)  The toll-free number received 201 calls as of December 8, 2022.  (*Id.* ¶ 23.)

As of December 16, 2022, Simpluris calculated that 538 Class Members received both email and mail notice; 13,200 Class Members received mail notice only; 2,278 Class Members received email notice only; and 697 Class Members did not receive notice.  (*Id.* ¶ 14.)  Simpluris received only two requests for exclusion and two objections from the 16,733 class members. (*Id.* ¶¶ 21, 22 & Exs. H, I.)

Simpluris provided notice of the proposed settlement under 28 U.S.C. § 1715(b) to the appropriate state and federal government officials on September 29, 2022.  (Chang Decl. ¶¶ 2–3 & Exs. 1, 2, Doc. 638-5.)

## II.  <u>CONDITIONAL CERTIFICATION</u>

In its Preliminary Approval Order, the Court conditionally certified the Class under Rule 23(b)(3) for settlement purposes.  (*See* Preliminary Approval Order, Doc. 42, at 5–12.)

Nothing since the Preliminary Approval Order counsels the Court to depart from its previous conclusions on the existence of a proper Settlement Class.  The Court therefore incorporates its class certification analysis from the Preliminary Approval Order into the current Order.  (Preliminary Approval Order at 8–15.)

## III.   FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

### A.   Legal Standard

Before approving a class-action settlement, Rule 23 of the Federal Rules of Civil Procedure requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant[2]; and (8) the reaction of the class members to the proposed settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (cleaned up and numbering added).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Just. v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety."  *Staton*, 327 F.3d at 960 (cleaned up).

In addition to these factors, where, as here, "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that the settlement is not "the product of collusion among the negotiating parties."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (cleaned up).  Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have

---

[2] This factor does not apply in this case.

allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947 (citation omitted). Such signs include (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded" (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" *Id.* (cleaned up)

### B.    Discussion

In its Preliminary Approval Order, the Court evaluated each of the factors identified above to determine whether the Settlement Agreement is fair, reasonable, and adequate under Rule 23. (*See* Preliminary Approval Order at 17–21.) The Court determined that the following factors weighed in favor of approval: (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount offered in settlement; (4) the extent of discovery completed, and the stage of the proceedings; and (5) the experience and views of counsel. (*Id.*) The Court was also satisfied that there were no signs of collusion between the parties. (*Id.* at 20.) The Court sees no reason to depart from its previous conclusion as to these factors. The Court therefore incorporates its analysis from the Preliminary Approval Order into the instant Order.

At the time of preliminary approval, the Court did not evaluate Class Members' reactions to the proposed Settlement Agreement. In support of final approval, Plaintiffs submitted the declarations of the Class Representatives summarizing their views of the settlement. (See Perez Decl., Doc. 634-3; Angelo Decl., Doc. 634-4; D. Nissen Decl., 634-5; M. Nissen Decl., Doc. 634-6; Holt Dec., Doc. 634-7; Laplante Decl., Doc. 634-8.) Class Counsel's declaration in support of final approval also states:

>After notice was disseminated, I received calls from several Settlement Class Members expressing their gratitude and satisfaction with the Settlement. These class members expressed relief that DirecTV has discontinued the program and the ability to recoup some of their losses. The class members I spoke with also understood an additional distribution is forthcoming.

(Odenbreit Final Approval Mot. Decl. ¶ 41, Doc. 638-1.)  To date, only two requests for exclusion and two objections were received from the 16,733 Class Members.  (Lechner Decl. ¶¶ 21, 22 & Exs. H, I.)  The low number of opt-outs and objections "raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Sebastian v. Sprint/United Mgmt. Co.*, 2019 WL 13037010, at *5 (C.D. Cal. Dec. 5, 2019) (Staton, J.)  (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)).  The Court considers each of the objections in turn.

First, the Lonstein Defendants object to the Settlement on numerous grounds, which the Court need not address in detail here.  As the Court's Preliminary Approval Order explains, the Lonstein Defendants lack standing to object to the Settlement because they are unable to show that it results in any legal prejudice to them—in fact, they benefit from the Settlement insofar as it extinguishes any claims Class Members may have against them.  (Preliminary Approval Order at 21–22.)  The Lonstein Defendants' filing opposing final approval fails to acknowledge or address the Court's previous ruling on their lack of standing to object.  (*See generally* Final Approval Obj.)  During the final approval hearing, counsel for the Lonstein Defendants failed to articulate what *legal*—as opposed to merely reputational—prejudice results to the Lonstein Defendants from the Settlement.  Yet even if the Lonstein Defendants did have standing to object here, their objections regarding identification of Class Members and the Class Representatives are without merit: there is no reasonable basis to assume that the data for the Class List—which came from LLO and was examined by neutral experts—is unreliable, and the Court has already found the Class Representatives adequate to represent absent Class Members.  This objection is OVERRULED.

Next, the Court addresses Class Members' objections.  Here, Raquel Guzman and Aurelio Moreno have objected on behalf of El Lago Restaurant and Minh Q. Bui has objected on behalf of Café Minh.  (See Lechner Decl. Ex. I, Doc. 638-4 at 112–78.)  Both objectors argue that the amount that they will receive in settlement is too low to compensate for the damages they suffered—that Defendants' misconduct here was such that they are entitled to much more than their Settlement payments.  (*Id.*)  However, the objectors have not demonstrated that this is not a fair, reasonable and adequate settlement overall; rather, they wish their payout had been greater.  However, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (cleaned up)  Given the small number of objections and requests for exclusion, and the Court's consideration of the basis for the objections, the Court concludes that the reaction of the class members weighs in favor of approval.  The Court therefore OVERRULES the objections.

In sum, having weighed the *Staton* factors and considered the Settlement as a whole, the Court finds the proposed settlement is fair, reasonable, and adequate.

## IV.   ADMINISTRATION COSTS

As noted above, Plaintiffs' Motion for Final Approval requests an award of administration costs to the Settlement Administrator, Simpluris, of $93,887.00.  This amount is $18,887.00 higher than the $75,000.00 administration costs award approved by the Court in its Preliminary Approval Order.  (*See* Final Approval Mot. at 7, 10; Preliminary Approval Order at 26.)

Plaintiffs have submitted a declaration from Amy Lechner, Senior Project Manager at Simpluris, that explains the difficulties Simpluris encountered in determining adequate contact information for Class Members and actually contacting the Class Members, which resulted in costs higher than those anticipated when the Court preliminarily approved the

Settlement.  (*See generally* Lechner Decl.)  Furthermore, Class Counsel Lisa Clay states in a declaration submitted with Plaintiffs' Motion for Final Approval that any compensation to Simpluris beyond the $75,000.00 can only be made after the first distribution of payments to the Class Members and only to the extent that funds are available from uncashed checks.  (Clay Final Approval Mot. Decl. ¶ 23.)

Having reviewed Lechner's and Clay's accounts of the complications that resulted in higher-than-anticipated administration costs and in light of the conditions under which Simpluris may receive any funds in excess of the $75,000.00 the Court previously found reasonable, the Court finds that Plaintiffs' request of an increase in the award here is reasonable.  *Cf. Sebastian*, 2019 WL 13037010, at *5 (approving an increased award of administration costs that deviated from the approved settlement but was reasonable in light of unforeseen settlement administration difficulties).

Accordingly, the Court GRANTS the Motion for Final Approval of Class Action Settlement as to this payment.

\*     \*     \*

For the foregoing reasons, Plaintiffs' Motion for Final Approval is GRANTED. The Court now turns to Plaintiffs' Motion for Attorneys' Fees and Costs and Enhancement Awards.

## V.      **ATTORNEYS' FEES**

### A.      **Legal Standard**

Rule 23 permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable,

even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941.  In the Ninth Circuit, the benchmark for a reasonable fee award in common-fund cases is 25% of the recovery obtained.  *See id.* at 942.  Courts must "justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable, including: (1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).  Counsel's lodestar may also "provide a useful perspective on the reasonableness of a given percentage award." *Id.* at 1050.  "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.

Here, Class Counsel seek fees in the amount of one-third (1/3) or 33.33% of the Gross Settlement Amount, or $3,133.333.33.  Plaintiffs argue that the requested fee is reasonable under the percentage-of-the-fund method.  (Fees Mot. at 11–12.)  For the following reasons , the Court finds the requested award reasonable and GRANTS Plaintiffs' request.

**B.     Results Achieved**

Class Counsel achieved a settlement that represents 12.7% of Class Members' maximum potential recovery.  (*See* Preliminary Approval Order at 18.)  Given the complexities inherent in litigating RICO claims, such recovery represents a superior result.  Furthermore, the Court found at the preliminary approval stage that a settlement totaling

14

12.7% of the class's maximum potential recovery was consistent with the range of recovery in other class actions.  (*Id*.)  Further, Plaintiffs and Class Counsel succeeded in obtaining significant non-monetary remedies, including a revision to DIRECTV's order confirmation documents that Plaintiffs and Class Counsel are hopeful will prevent future harm to consumers.  (Final Approval Mot. at 13.)

The Court finds the results here adequate, especially considering the low opt-out rate and low number of objections to the Settlement.  Accordingly, this factor weighs in favor of approval of the requested fee award.

### C.      Risk of Litigation

The Court found that the risks of ongoing litigation in this case were significant in its Preliminary Approval Order: the action has been pending for years, so that many Class Members' businesses no longer operate and locating potential witnesses—whose power to recollect relevant facts would be diminished by the passage of time—would be particularly difficult.  (Preliminary Approval Order at 18.)  The Court also acknowledged that Plaintiffs faced significant risk of unfavorable rulings on class certification, discovery motions, and during trial.  (*Id.*)  Further, proving damages could would be especially challenging.  (*Id.*)  Given the significant risks posed by ongoing litigation here, the Court finds that this factor favors approval of the requested fee award as well.

### D.      Skill Required and Quality of Work

The attorneys at Mahoney Law Group and co-counsel Lisa Clay are experienced class action attorneys and provided skillful, quality work throughout the litigation.  (*See* Preliminary Approval Order at 12; Odenbreit Fees Mot. Decl. ¶¶ 28–39; Clay Fees Mot. Decl., ¶¶ 8–10; K. Mahoney Preliminary Approval Decl., Doc. 619-2.)  The Court also recognizes the tenacity and dedication with which Class Counsel have prosecuted this

15

case.  And the total lodestar amount as of the filing of the present motion, which is discussed in greater detail below, supports Class Counsel's account of hard work on the matter.  *Cf. Sebastian*, 2019 WL 13037010, at *7.

In light of the above and the results achieved, the Court finds that this factor also weighs in favor of granting the requested fee award.

### E.       Contingent Nature of the Fee

Class counsel took this case on a contingency fee basis and invested over 6,997 hours prosecuting and resolving the case.  (Odenbreit Fees Mot. Decl. ¶ 40, Doc. 634-1.) Class Counsel received no payment for their services during the litigation and paid for all litigation costs.  (*Id.* ¶ 42.)  "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates."  *Monterrubio*, 291 F.R.D. at 457 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994)). Given the length of this litigation, the number of hours Class Counsel committed to its prosecution—and the missed opportunities to take on compensating work due to Class Counsel's commitment to this case—the Court finds that this factor also weighs in favor of granting the requested fee award.

### F.       Lodestar Crosscheck

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."  *Vizcaino*, 290 F.3d at 1050.

Here, 17 attorneys from the Mahoney Law Group and solo practitioner Lisa Clay have worked on this matter.  Katherine Odenbreit of Mahoney Law Group has submitted a declaration that sets forth the experience, number of hours billed, hourly rate, and total

estimated fees for each of those 17 attorneys and justifies Mahoney Law Group's rates according to prior awards and the Laffey Matrix. (Odenbreit Fees Mot. Decl. ¶ 42 & Ex. 3.) Below is a summary of the hours billed and rates as set forth in Odenbreit's declaration, correcting for a few minor multiplication errors.

| Name | Practice Years | Hours Billed | Hourly Rate | Total |
|------|---------------|--------------|-------------|-------|
| K. Mahoney | 17 | 18.8 | $750 | $14,100.00 |
| K. Odenbreit | 26 | 2,134.1 | $750 | $1,600,575.00 |
| A. Salusky | 20 | 111.7 | $650 | $72,605.00 |
| E. Kim | 18 | 2.6 | $650 | $1,690 |
| J. Young | 8 | 204.8 | $550 | $112,640.00 |
| K. Blanco | 7 | 595.2 | $550 | $327,360.00 |
| Z. Wright | 7 | 58.8 | $550 | $32,340.00 |
| A. Wilson | 5 | 89.1 | $450 | $40,095.00 |
| D. Hyun | 5 | 523.7 | $550 | $288,035.00 |
| M. Podruski | 5 | 68.4 | $450 | $30,780.00 |
| S. Pardo | 5 | 34.6 | $450 | $15,570.00 |
| D. Guizado | 5 | 12.91 | $550 | $6,455.00 |
| J. Klein | 5 | 1.2 | $450 | $540.00 |
| N. Neal | 5 | 0.5 | $500 | $250.00 |
| L. Tunyan | 2 | 356.6 | $500 | $178,300.00 |
| K. Serrano | 2 | 4.7 | $150–$450 | $1,405.00 |
| L. Theriault | 2 | 7.6 | $400 | $3,040.00 |
|  |  |  |  |  |
| **TOTAL** |  | **4225.31** |  | **$2,725,780.00** |

In her declaration, Odenbreit also accounts for hours worked and hourly rates for Mahoney
Law Group paralegals of varied experience and law clerks.  The billable work performed
by paralegals and law clerks amounts to over $100,000.00 in addition to the $2,725,780.00
figure above.  (Odenbreit Fees Mot. Decl. ¶ 42.)

Lisa Clay has also submitted a declaration sets forth her experience, number of
hours billed, hourly rate, and total estimated fees for this case.  Clay has billed 2234.2
hours working on this matter since June 2017 at an hourly rate of $650, with total fees of
$1,452,230.00 as of November 23, 2022.  (Clay Fees Mot. Decl. ¶ 21 & Ex. 1.)  Clay's
hourly rate is below the suggested Laffey Matrix rate for an attorney with her experience.

The lodestar crosscheck first requires the Court to determine whether the hourly
rates sought by counsel are reasonable.  "[T]he district court must determine a reasonable
hourly rate considering the experience, skill, and reputation of the attorney requesting
fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). This
determination "is not made by reference to rates actually charged [by] the prevailing
party." *Id.*  The fee applicant bears the burden of showing that "the requested rates are in
line with those prevailing in the community for similar services by lawyers of reasonably
comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d
973, 980 (9th Cir. 2008) (cleaned up).  "Affidavits of the plaintiffs' attorney and other
attorneys regarding prevailing fees in the community, and rate determinations in other
cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence
of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896
F.2d 403, 407 (9th Cir. 1990). Courts may also "rely on [their] own familiarity with the
legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).  As a general rule,

the forum district represents the relevant legal community.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

In light of its familiarity with the legal market, the unique challenges posed by this matter, Class Counsel's experience, and the skill and commitment with which they prosecuted the matter, the Court finds that the rates above are reasonable.

Next, the Court finds that the detailed billing records Class Counsel have attached to their declarations offer a satisfactory accounting of the attorney work hours on this case. (*See* Odenbreit Fees Mot Decl. Ex. 2; Clay Fees Mot. Decl. Ex. 1.)  The presence of partners and associates with experience ranging from over 20 years to only two years in practice is of special importance to the Court, as it demonstrates a tendency toward efficient billing.  While the number of attorneys staffing the matter is greater than typically would be justified, the Court notes that the work does seem to be properly concentrated in a reasonable number of mid-level associates.

Last, because the fee requested—$3,133,333.33—is significantly lower than Class Counsel's lodestar—well over $4 million—the Court is satisfied that the requested fees are not a "windfall" for Class Counsel.  *In re Bluetooth*, 654 F.3d 935, 942 (9th Cir. 2011).

Taking into account the *Vizcaino* factors and lodestar crosscheck, the Court GRANTS Plaintiff's request for attorneys' fees.

## VI.    <u>LITIGATION COSTS</u>

Plaintiffs ask the Court to approve reimbursement from the Gross Settlement amount for litigation costs and expenses in the amount of $155,000.00.  (Fees Mot. at 18–19.)  "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."  *Sebastian*, 2019 WL 13037010, at *9 (quoting *In re Omnivision*, 559 F. Supp. 2d at 1048).  Class Counsel have documented filing and service fees, research and travel costs, costs incurred procuring interpretation and translation services, and expert witness fees that they have incurred in litigating this

matter.  (*See* Odenbreit Fees Mot. Decl. ¶ 43 & Ex., 4; Clay Fees Mot. Decl. ¶ 22 & Ex. 2, Doc. 634-2.)  The Court finds the various expenses adequately documented and reasonable.

Accordingly, the Court GRANTS the Motion for Award of Attorneys' Fees as to Plaintiffs' request for litigation costs.

## VII.   CLASS REPRESENTATIVE ENHANCEMENT AWARDS

Plaintiffs seek Class Representative enhancement awards as follows: $30,000.00 to Plaintiff Doneyda Perez and $10,000.00 each to Plaintiffs Danny Nissen, Marlys Nissen, Joseph Angelo, Gregory Laplante, and Paul Holt.  (Fees Mot. at 19–22.)  Service awards are "discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (cleaned up).  "To assess whether an incentive payment is excessive, district courts balance 'the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'"  *Monterrubio*, 291 F.R.D. at 462 (quoting *Staton*, 327 F.3d at 977).  Courts "must 'evaluate [such] awards individually' to detect 'excessive payments to named class members' that may indicate 'the agreement was reached through fraud or collusion.'"  *Monterrubio*, 291 F.R.D. at 462 (quoting *Staton*, 327 F.3d at 975, 977).

The Court addresses Perez's requested award first, then addresses the other Class Representatives' awards collectively.

## A.    Perez Award

Plaintiffs argue that a $30,000.00 enhancement award for Perez is warranted on the
following grounds.  First, Perez has committed approximately 200 hours to actively
participating in the prosecution of this case, which include sitting for two day-long in-
person depositions.  (Fees Mot. at 19–20; Perez Fees Mot. Decl. ¶¶ 12, 21.)  Furthermore,
Perez came under unusually extensive scrutiny on account of her role in this matter: the
content of her social media accounts and cellphone were subject to forensic examination,
and private investigators visited her former home and business.  (Fees Mot. at 20; Perez
Fees Mot. Decl. ¶¶ 16–19.)  Class Counsel attests that Perez remained strong in her resolve
to continue to seek to represent the class in spite of the privacy and reputational costs that
entailed.  (Odenbreit Fees Mot. Decl. ¶ 51.)

DIRECTV argues that Perez should be denied an enhancement award altogether or
be awarded a lower award than she has requested on the grounds that Perez deleted
discoverable material from her cellphone—a spoliation of evidence that resulted in more
protracted litigation and higher costs, calling into question Perez's adequacy as a Class
Representative.  (Fees Opp.)  In response to DIRECTV's contention that she should be
denied an enhancement award, Plaintiffs argue that Perez did not delete any relevant
evidence and that "after reviewing over 94,000 files and images, the only photograph
potentially relevant to this case located was one of [her] in her backyard with a satellite
dish in the distant background[,] which DIRECTV already had in its possession during
[her] deposition."  (Pls.' Response to DIRECTV at 1.)

As stated in the Preliminary Approval Order, the Court will not condone conduct
that amounts to spoliation of evidence.  (Preliminary Approval Order at 12.)  But absent a
formal finding of spoliation, and having considered Plaintiffs' and Class Counsel's account
of events, the Court finds that denying Perez's requested award outright would be a grossly
disproportionate response.  The Court has already found Perez to be an adequate Class

Representative and recognized her sacrifices in vigorously prosecuting this matter over six years.  (*Id.*)  A substantial enhancement award is no doubt warranted here.

Nevertheless, the Court finds that a $30,000.00 award is excessive and a reduction is appropriate.  Although the Court is not persuaded that Perez intended to delete evidence from her cellphone, her actions were improvident and prejudicial to absent Class Members, as they unduly lengthened the litigation and jeopardized Class Members' prospects for relief.  Taking into account all circumstances, the Court finds that a reduced award of $20,000 is appropriate here.

### B.    Other Class Representatives' Awards

Plaintiffs argue that $10,000.00 enhancement awards for the remaining Class Representatives are warranted because even though they were "aware of the harsh and unwarranted scrutiny Ms. Perez endured, each of the additional Plaintiffs knowingly agreed to lend their name, time and resources to this action, which required taking significant time away from their respective businesses."  (Fees Mot. at 21.)  Each of the additional Class Representatives contributed significant time to investigating and substantiating the claims alleged in this action and put themselves at risk of unwanted scrutiny and reputational harm in doing so.  (*Id.*)  Each of the additional Class Representatives has submitted a declaration attesting to their contributions in this matter.

Angelo attests that he spent between 30 and 35 hours being actively involved in prosecution of the case.  (Angelo Decl. ¶ 15.)  Danny and Marlys Nissen attest that each of them respectively spent between 45 and 50 hours and between 50 and 60 hours assisting Class Counsel in prosecuting this case.  (D. Nissen Decl. ¶ 8; M. Nissen Decl. ¶ 10.)  Holt attests that he spent approximately 55 hours working with Class Counsel on this matter.  (Holt Decl. ¶ 9.)  Last, Laplante attests that he spent approximately 75 hours actively pursuing the case.  (Laplante Decl. ¶ 10.)  In each of their declarations, the Class Representatives set forth the nature and extent of their involvement in the case with some

detail, and the Court has no reason to doubt that their efforts in this litigation were substantial and took time away from the Class Representatives' businesses and lives.

That said, the Court is concerned that a combined $50,000.00 in enhancement awards to the additional Class Representatives is disproportionate in light of their overall contributions to the prosecution of this action.  Although enhancement awards of $10,000 are not unusual, the Court is not satisfied that they are warranted in a case where there are six—rather than one or two—Class Representatives.   Accordingly, the Court finds that a reduced award of $7,500 for each of the additional Class Representatives—Angelo, the Nissens, Holt, and Laplante—is appropriate.

## VIII.  **CONCLUSION**

The Court finds the settlement to be fair, adequate, and reasonable.  Accordingly, the Court GRANTS the Motion for Final Approval of Class Action Settlement.  The Court also GRANTS IN PART the Motion for Award of Attorneys' Fees and Costs and Enhancement Awards as follows:

- The Court GRANTS an award of attorneys' fees in the amount of $3,133,333.33.
- The Court GRANTS Doneyda Perez a Class Representative enhancement award of $20,000.00.
- The Court GRANTS Class Representative enhancement awards of $7,500 each to Joseph Angelo, Danny Nissen, Marlys Nissen, Paul Holt, and Gregory Laplante.

Having approved the Settlement, the Court sets the following deadlines for its administration:

- The Effective Date of the Settlement shall be the latest of either: (a) 31 days after the entry of the Final Approval Order if no objections are filed or if objections are filed and overruled and no appeal is taken from the Final

Approval Order and Judgment; or (b) if a timely appeal is made, three business days after the date of the issuance of the mandate from the Court of Appeals affirming the Final Approval Order and Judgment in all respects and that affirmance is no longer subject to further appeal or review.

- Simpluris is ORDERED to distribute the Net Settlement Fund as follows:

  o Settlement Benefits are to be distributed to the Settlement Class Members within 30 days of the Effective Date.

  o Class Representative enhancement awards are to be distributed to the Class Representatives within 30 days of the Effective Date.

  o Attorneys' fees and costs are to be distributed to Class Counsel within 30 days of the Effective Date.

  o The initial payment of $75,000.00 in administration costs is to be distributed to Simpluris within 30 days of the Effective Date.

- Within 30 days of the expiration of the Settlement Benefit checks, Simpluris shall determine the total amount of uncashed checks and determine a pro rata distribution to those Settlement Class Members who cashed checks after deduction for the additional administration costs of $18,887.00. ("Remainder Distribution") and provide the proposed distribution to Class Counsel and counsel for DIRECTV.

- Within 30 days following Class Counsel and DIRECTV's authorization of the Remainder Distribution calculation, the Administrator will mail the Remainder Distribution to Settlement Class Members who cashed the initial distribution.

- Between 120 and 150 days after the Remainder Distribution checks have been mailed, Plaintiffs and DIRECTV will meet and confer, and if a *cy pres* recipient cannot be agreed upon, will advise the Court of any dispute regarding the *cy pres* recipient and request a ruling from the Court ordering a *cy pres* recipient, if one is needed.  If any funds remain in the Net Settlement

Amount 180 days after mailing of the Remainder Distribution, those funds will be distributed to a *cy pres* recipient pursuant to a final accounting order from this Court.

- The Court will hold a final accounting hearing on May 24, 2024, at 10:30 a.m.
  - o No later than 15 days before the hearing, Class Counsel will file with the Court a declaration from the Settlement Administrator summarizing the distribution of the funds and detailing the total number and collective amounts of uncashed checks from the Remainder Distribution and the proposed payment to the Court-approved *cy pres* recipient, if one is appointed.
  - o No later than 15 days before the hearing, DIRECTV will file an exemplar of the order confirmation document referenced in the Settlement Agreement, and a declaration explaining when and how the documentation is provided to customers.

The Court shall retain jurisdiction to effectuate the terms of the Settlement Agreement and to consider all further applications arising out of or in connection with the Settlement Agreement.

DATED: January 23, 2023

HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE